IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| NEIGHBORS LEGACY HOLDINGS, INC., | § § § | CASE NO. 18-33836-H1-11 (Chapter 11) |
| Debtor. | § § | |
| INFINITY EMERGENCY MANAGEMENT GROUP, LLC, Individually and as Class B Non-Voting Members on Behalf of NHS Emergency Centers, LLC Series 114 - Eastside and NHS Emergency Centers, LLC Series 115 – Zaragoza, | § § § § § § § § § | |
| *Plaintiff,* | § § | |
| VS. | § § | ADV. P. NO. 18-3276 |
| NEIGHBORS HEALTH SYSTEM, INC.; NEIGHBORS HEALTH, LLC; NEIGHBORS INVESTMENT GROUP, LLC; NEIGHBORS GP, LLC; SETUL G. PATEL, M.D., Individually and in his capacity as officer and director; PAUL ALLEYNE, M.D., Individually and in his capacity as officer and director; CYRIL GILLMAN, M.D., Individually and in his capacity as officer and director; MICHAEL CHANG, M.D., Individually and in his capacity as officer and director; ANDY CHEN, M.D., Individually and in his capacity as officer and director; QUANG HENDERSON, M.D., Individually and in his capacity as officer and director; HITESH PATEL, M.D., Individually and in his capacity as officer and director; AND DHARMESH PATEL, M.D., Individually and in his capacity as officer and Director, | § § § § § § § § § § § § § § § § § § § § § § § § § § | |
| *Defendants.* | § § | |

**PLAINTIFF'S THIRD AMENDED COMPLAINT**

1

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

COMES NOW, INFINITY EMERGENCY MANAGEMENT GROUP, LLC, Individually and as Class B Non-Voting Members on behalf of NHS Emergency Centers, LLC Series 114 – Eastside and NHS Emergency Centers, LLC Series 115 – Zaragoza ("Plaintiff"), Plaintiff in the above styled adversary, and files this Plaintiff's Third Amended Complaint, and for cause of action would show as follows:

## I.

### Jurisdiction and Venue

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b). The claims in the adversary are "related to" claims, not "core." Pursuant to 28 U.S.C. § 157(c)(1), the bankruptcy judge may hear the proceeding and submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matter to which any party timely objects.

## II.

### Parties

2. Plaintiff Infinity Emergency Management Group, LLC is a Texas limited liability company, with its principal place of business located in El Paso, El Paso County, Texas.

3. Defendant Neighbors Health System, Inc. ("Neighbors") is a Texas corporation that has answered and appeared and may be served by and through its counsel of record Clay Steely, Porter Hedges, LLP, 1000 Main Street, Suite 3600, Houston, Texas 77002.

4. Defendant Neighbors Health, LLC ("Neighbors Health") is a Texas limited liability company that has answered and appeared and may be served by and through its counsel of record Clay Steely, Porter Hedges, LLP, 1000 Main Street, Suite 3600, Houston, Texas 77002.

5. Defendant Neighbors Investment Group, LLC ("Neighbors Investment") is a Texas limited liability company that has answered and appeared and may be served by and through its counsel of record, Staton M. Childers, Adams and Reese, LLP, 1221 McKinney, Suite 4400, Houston, Texas 77010.

6. Defendant Neighbors GP, LLC ("Neighbors GP") is a Texas limited liability company that has answered and appeared and may be served by and through its counsel of record Clay Steely, Porter Hedges, LLP, 1000 Main Street, Suite 3600, Houston, Texas 77002.

7. Defendant Setul G. Patel, M.D. ("S. Patel"), in his capacity as an officer and director, is an individual who has answered and appeared and may be served by and through his counsel of record Paul D. Flack, Pratt and Flack, LLP, 4306 Yoakum Blvd., Suite 500, Houston, Texas 77006.

8. Defendant Paul Alleyne, M.D. ("Alleyne"), in his capacity as an officer and director, is an individual who has answered and appeared and may be served by serving his counsel of record Millard A. Johnson, Johnson DeLuca Kennedy & Kurisky, P.C., 1221 Lamar, Suite 1000, Houston, Texas 77002.

9. Defendant Cyril Gillman, M.D. ("Gillman"), in his capacity as an officer and director, is an individual who has answered and appeared and may be served by serving his counsel of record Millard A. Johnson, Johnson DeLuca Kennedy & Kurisky, P.C., 1221 Lamar, Suite 1000, Houston, Texas 77002.

10. Defendant Michael Chang, M.D. ("Chang"), in his capacity as an officer and director, is an individual who has answered and appeared and may be served by serving his counsel of record Jay Munisteri, Foley Gardere, 1000 Louisiana, Suite 2000, Houston, Texas 77002.

11. Defendant Andy Chen, M.D. ("Chen"), in his capacity as an officer and director, is an individual who has answered and appeared and may be served by serving his counsel of record Jay Munisteri, Foley Gardere, 1000 Louisiana, Suite 2000, Houston, Texas 77002.

12. Defendant Quang Henderson, M.D. ("Henderson") in his capacity as an officer and director, is an individual who has answered and appeared and may be served by serving his counsel of record Jay Munisteri, Foley Gardere, 1000 Louisiana, Suite 2000, Houston, Texas 77002.

13. Defendant Hitesh Patel, M.D. ("H. Patel") in his capacity as an officer and director, is an individual who has answered and appeared and may be served by serving his counsel of record Jay Munisteri, Foley Gardere, 1000 Louisiana, Suite 2000, Houston, Texas 77002.

14. Defendant Dharmesh Patel, M.D. ("D. Patel") in his capacity as an officer and director, is an individual who has answered and appeared and may be served by serving his counsel of record Christina Minshew Lewis, Moyer Patton, 11767 Katy Freeway, Suite 990, Houston, Texas 77079.

15. Neighbors, Neighbors Health, Neighbors Investment, and Neighbors GP are hereinafter collectively referred to as the "Neighbors Defendants".

16. Alleyene, Gillman, Chang, Chen, Henderson, S. Patel, H. Patel, and D. Patel are hereinafter collectively referred to as the "Neighbors O&Ds"

## III.

## Background Facts

17. NHS Emergency Centers, LLC, a Texas series limited liability company ("NHS Emergency") is in the business of owning and operating stand-alone emergency centers in and around the State of Texas. To structure the operation of its business, NHS Emergency formed separate series businesses for each emergency center it opened and operated.

18. In 2014, Jermaine Bowen ("Bowen"), on behalf of Plaintiff, entered into discussions with certain of the Neighbors O&Ds, in their capacity as directors and officers of NHS Emergency and the Neighbors Defendants, to open two emergency centers in the El Paso area. The Neighbors O&Ds proposed to have an affiliate of NHS Emergency purchase the real property needed and construct a stand-alone emergency room center on the property. The Neighbors O&Ds further proposed to have Neighbors Health manage the separate series businesses that would be created to own and operate the two El Paso emergency centers. Bowen's group would staff the emergency centers. The membership interests in the series would be owned by an entity to be formed by Bowen's group and an entity to be formed by the Neighbors O&Ds. The net profits would be split between these two members. The Neighbors O&Ds, in their capacity as officers and directors of NHS Health, represented that the finances of the series companies that would be created and of which Plaintiff would be a member would be run separate and apart from any of the other series companies of NHS Emergency. The parties agreed to enter into the venture.

19. The Neighbors O&Ds were directors and officers of the Neighbors Defendants at all times that the Neighbors O&Ds were discussing the creation of the El Paso emergency centers and at all times after.

20. In late 2014, NHS Emergency formed NHS Emergency Centers, LLC Series 114 - Eastside ("Eastside") and NHS Emergency Centers, LLC Series 115 - Zaragoza ("Zaragoza"). Bowen and a group of doctors formed Infinity Emergency Management Group, LLC in order to purchase its membership interests in Eastside and Zaragoza from NHS Emergency. The Neighbors O&Ds formed Neighbors Investment in order to purchase its membership interests in Eastside and Zaragoza from NHS Emergency. Plaintiff paid NHS Emergency $500,000.00 to purchase 6,500 Class B non-voting series membership interests in Eastside and another $500,000.00 to purchase 6,500 Class B non-voting series membership interests in Zaragoza. These interests represented a total of 65% of the series interests in Eastside and Zaragoza. Neighbors Investment and the individual Defendants paid NHS Emergency a total of $35,990.00 to purchase Class A voting series membership interests in Eastside and Zaragoza representing a total of 34% of the series interests in Eastside and Zaragoza.[1] Neighbors Health paid NHS Emergency a total of $10.00 for 1% of the series interests in Eastside and Zaragoza as manager of those series.

21. On November 4, 2014, Neighbors Health entered into the Series Management and Administrative Services Agreement (the "Management Agreement") with Zaragoza and Eastside.[2] Under the Management Agreement, Neighbors Health agreed to manage the operations and finances of Eastside and Zaragoza for a fee. The Neighbors O&Ds, in their capacity as officers and directors of Neighbors Health, made all decisions as manager of Eastside and Zaragoza. As officers and directors of Neighbors Health, they owed a fiduciary duty to

---

[1] S. Patel paid $123.75, D. Patel paid $5,123.75, Gilman paid $5,123.75, Alleyne paid $5,123.75, Chen paid $5,123.75, Chang paid $5,123.75, Henderson paid $5,123.75, H. Patel paid $5,123.75, and Neighbors GP, LLC paid $10.00.

[2] There was a separate, but identical, agreement entered into with Eastside and Zaragoza, but they are referred to herein as the "Management Agreement."

Plaintiff. Neighbors Health, as manager of Eastside and Zaragoza, owed a fiduciary duty to Plaintiff.

22. The Eastside emergency center and the Zaragoza emergency center were both constructed and opened for business in 2015. Both centers operated profitably. Neighbors Health, by and through its officers and directors, the Neighbors O&Ds, managed the finances of Eastside and Zaragoza, including maintaining the bank accounts, depositing Eastside's and Zaragoza's funds from operations into their bank accounts, and paying Eastside's and Zaragoza's expenses from their bank accounts. The Neighbors O&Ds actions were in the course and scope of their duties as directors and officers of Neighbor's Health.

23. Neighbors Health and the Neighbors O&Ds did not share details of the finances of the Eastside and Zaragoza emergency centers with Plaintiff. Unknown to Plaintiff, S. Patel, in his capacity as officer and director of Neighbors Health, caused Eastside and Zaragoza to enter into lease agreements for lease of the real property and improvements used for the emergency centers at rental rates far above the market rent rates for the areas.

24. The Neighbors O&Ds, in their capacity as officers and directors of Neighbors Health and NHS Emergency, had knowledge of the finances of other series companies of NHS Emergency, including knowledge that a number of those series companies were suffering losses and needed capital to continue operations. To provide the needed infusions of capital into these series companies that were experiencing financial losses, beginning in the third quarter of 2016 the Neighbors O&Ds, in their capacity as officers and directors of Neighbors Health, caused Neighbors Health to transfer large sums of money out of the bank accounts of Eastside and Zaragoza into the bank accounts of the other series companies of NHS Emergency for no consideration. The Neighbors O&Ds failed to disclose the transfers to Plaintiff. The Neighbors

7

O&Ds knew that they were obligated to hold Eastside and Zaragoza's net profits in trust for Eastside and Zaragoza so that the funds would be available for distribution to its members, Plaintiff and Neighbors Investment. The diversion of Eastside's and Zaragoza's funds by the Neighbors O&Ds, in their capacity as officers and directors of Neighbors Health, continued throughout 2016 and 2017, denuding Eastside and Zaragoza of their profits, causing Plaintiff substantial damages in the form of lost distributions of profit.

25. In addition, the Neighbors O&Ds, acting in their capacity as officers and directors of NHS Health, cooperated with and assisted NHS Emergency, unbeknownst to Plaintiff, in obtaining additional financing secured by essentially all of the assets of all of the series companies of NHS Emergency, including Eastside and Zaragoza, causing Plaintiff substantial damages.

26. This is in part a derivative action brought by Plaintiff as a Class B non-voting member of Eastside and Zaragoza on behalf of Eastside and Zaragoza against the Neighbors O&Ds' for breach of fiduciary duty, abuse of control, grossly negligent mismanagement, and waste of series assets. The Neighbors O&Ds have engaged in a pattern of neglect, failed to properly oversee both the operations and finances of Eastside and Zaragoza, and failed to have the basic systems in place to protect the assets of Eastside and Zaragoza. This has caused material damage to Eastside's and Zaragoza's financial position and reputation. Plaintiff has standing to bring this action under Tex. Bus. Org. Code, §101.463, which applies to Plaintiff and these claims. Both Eastside and Zaragoza are closely held series, thus no pre-suit demand is required. Further, any pre-suit demand on Neighbors Health, Neighbors Investment, or the Neighbors O&Ds would be a futile act. They are all entrenched and marred with conflicts of interest. Their failure to keep the assets and funds of Eastside and Zaragoza separate and

preserved and subsequent transfer of the funds over an extended period of time is evidence that they will not take any action against themselves or their colleagues. To remedy the Neighbors O&Ds breach of fiduciary duty, Plaintiff brings this action on behalf of Eastside and Zaragoza to cause Defendants to account for the damage caused to Eastside and Zaragoza and to recover such damages for its benefit.

## IV.

## Claims and Causes of Action

### Derivative Allegations

27. Plaintiff brings this action in part derivatively in the right and for the benefit of Eastside and Zaragoza to redress injuries suffered, and to be suffered, by Eastside and Zaragoza as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment, as well as aiding and abetting of it, by the Neighbors O&Ds. Eastside and Zaragoza are named as nominal defendants solely in a derivative capacity.

28. Plaintiff will adequately and fairly represent the interests of Eastside and Zaragoza in enforcing and prosecuting its rights.

29. Plaintiff is and was an owner of the Class B non-voting membership interests in Eastside and Zaragoza during times relevant to the wrongful conduct alleged here, and remains a member of Eastside and Zaragoza. In this case, justice requires that the Court treat this derivative action as a direct action brought by Plaintiff, as member, for its own benefit, and that the recoveries be paid directly to Plaintiff. Tex. Bus. Org. Code, § 101.463.

30. The manager of Eastside and Zaragoza was Neighbors Health, which was in turn controlled by the Neighbors O&Ds. Plaintiff has not made any demand on Neighbors Investment, Neighbors Health, or the Neighbors O&Ds to institute this action because such a

demand would be futile, wasteful, and useless. Demand would be futile for the following reasons:

   a. As a result of their access to and review of internal corporate documents; conversations and connections with corporate officers, employees, and directors; and attendance at management and Board meetings, each of the defendants knew the adverse non-public information regarding the false and misleading financial statements;

   b. The Neighbors Defendants are insiders of Eastside and Zaragoza and they have received substantial monetary compensation and other benefits. Accordingly, they are legally incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action;

   c. The Neighbors O&Ds are insider directors of the manager of Eastside and Zaragoza and their principal professional occupation was their employment with the Neighbors Defendants, pursuant to which they have received substantial monetary compensation and other benefits. Accordingly, the Neighbors O&Ds are legally incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action;

   d. The Defendants are entrenched and have multiple conflicts of interest and entangling business relationships that preclude them from being disinterested and vigorously prosecuting the wrongdoing alleged in this complaint;

   e. The Neighbors O&Ds are not disinterested or independent and served on the Board of Eastside's and Zaragoza's manager during the time of the wrongdoing and participated in the wrongs complained of here. Pursuant to their specific duties as Board members, each was charged with directing the management of Eastside and Zaragoza and their business affairs. Each breached the fiduciary duties that they owed to Eastside and Zarazgoza and its members in that they failed to properly supervise Eastside's and Zaragoza's finances and operations, failed to protect and preserve the funds of Eastside and Zaragoza, and transferred or allowed the transfer of the funds of Eastside and Zaragoza. The majority of the directors have served on the Board for several years and are, therefore, well aware of Eastside's and Zaragoza's finances and operations and the transfers and decisions to transfer funds. Yet, the Neighbors O&Ds either knew and caused the transfers of funds to be made or ignored the fact that the transfers were being made. Further, the Neighbors O&Ds either knew of the inflated operations expenses paid to affiliate companies or ignored the fact that the payments were being made. Because they abdicated their oversight responsibilities, these directors are personally liable for the conduct alleged here. Eastside and Zaragoza, therefore, cannot exercise independent objective judgment in deciding whether to bring this action, or whether to vigorously prosecute this action, because its members are interested personally in the outcome, as it is their actions

      that have denuded Eastside and Zaragoza of millions of dollars in funds and assets.

    f. Each of the Neighbors O&Ds knew or directly benefited from the wrongdoing alleged in this complaint;

    g. The Neighbors O&Ds participated in efforts to conceal or disguise these wrongs from Eastside's and Zaragoza's members or recklessly or negligently disregarded the wrongs alleged in this complaint and are, therefore, not disinterested parties;

    h. In order to bring this suit, all of the directors of the manager of Eastside and Zaragoza and the voting member Neighbors Investment would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thus excusing demand;

    i. The acts alleged in this complaint constitute violations of the fiduciary duties owed by Eastside's and Zaragoza's manager's officers and directors, and these acts are incapable of ratification;

    j. Each of the Neighbors O&Ds authorized or permitted the issuance and making of various of the false and misleading statements, and are principal beneficiaries of the wrongdoing alleged here, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them.

31. The Neighbors O&Ds have failed and refused to seek to recover for Eastside and Zaragoza for any of the wrongdoing alleged by Plaintiff even though the Neighbors O&Ds know of the claims and causes of action raised in this complaint.

## Request for Accounting

32. The Plaintiff requests a full accounting from Neighbors Health of Eastside and Zaragoza's business operations of, among other things, all sources and uses of cash and money.

## Derivative Claim of Abuse of Control

33. The Neighbors O&Ds' and Neighbors Health's misconduct alleged above constituted an abuse of their ability to control and influence Eastside and Zaragoza, for which they are legally responsible. As a direct and proximate result of Neighbors Health's and the Neighbors O&Ds' abuse of control, Eastside and Zaragoza have sustained significant damages, including,

but not limited to, damages associated with Eastside's and Zaragoza's legal costs, potential legal liability, loss of customers, loss of revenues, and loss of credibility in the market.  As a result of the misconduct alleged here, the Neighbors O&Ds and Neighbors Health are liable to Eastside and Zaragoza.  Plaintiff on behalf of Eastside and Zaragoza has no adequate remedy at law.

### Derivative Claim of Gross Mismanagement

34. By their actions alleged above, the Neighbors O&Ds and Neighbors Health abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Eastside and Zaragoza in a manner consistent with the operations of a closely held company.  As a direct and proximate result of Neighbors Health's and the Neighbors O&Ds' gross mismanagement and breaches of duty alleged here, Eastside and Zaragoza have sustained significant damages, including, but not limited to, damages associated with Eastside's and Zaragoza's legal costs, potential legal liability, loss of customers, loss of revenues, and loss of credibility in the market.  As a result of the misconduct and breaches of duty, the Neighbors O&Ds and Neighbors Health are liable to Eastside and Zaragoza.  Plaintiff on behalf of Eastside and Zaragoza has no adequate remedy at law.

### Derivative Claim of Waste of Corporate Assets

35. As a result of their improper actions, and by failing to properly consider the interests of Eastside and Zaragoza and its members by failing to conduct proper supervision, the Neighbors O&Ds and Neighbors Health have caused Eastside and Zaragoza to waste valuable corporate assets by paying inflated operations expenses to affiliates.  As a result of the waste of corporate assets, the Neighbors O&Ds and Neighbors Health are liable to Eastside and Zaragoza. Plaintiff on behalf of Eastside and Zaragoza has no adequate remedy at law.

### Direct Claim of Negligence and Gross Negligence

36. The Neighbors O&Ds had a duty to Plaintiff to exercise reasonable care in performing their duties as officers and directors of Neighbors Health in maintaining and preserving the profits of Eastside and Zaragoza for distribution to Plaintiff. The Neighbors O&Ds breached that duty by entering into rental and marketing agreements, with Affiliates, for Eastside and Zaragoza at above-market rates and transferring the funds of Eastside and Zaragoza to other entities without consideration. Their breach of their duty of care owed to the Plaintiff was the proximate direct and consequential cause of harm to the Plaintiff. Further, their misconduct rose to the level of gross negligence. Plaintiff, therefore, seeks recovery of exemplary and punitive damages.

### Direct Negligent Misrepresentations

37. The Neighbors O&Ds, in their capacity as officers and directors, had a duty to exercise reasonable care in making their statements and representations and in having their agents make their statements and representations to Plaintiff in connection with the sale of the membership interests of Eastside and Zaragoza to Plaintiff and in connection with maintaining and preserving the Plaintiff's share of profits in those entities. The Neighbors O&Ds failed to exercise that care in making or having their agents make statements and representations that were false or misleading when they knew or should have known that Plaintiff was relying on these statements and representations. In particular, S. Patel and Alleyene made representations to the Plaintiff that it knew or had reason to know were false and/or misleading. In particular, S. Patel and Alleyene represented to the Plaintiff that the finances of Eastside and Zaragoza would be maintained separate and apart from the other series emergency centers of NHS Emergency, and so long as Eastside and Zaragoza were profitable, that the year end profits would be distributed

to Plaintiff according to its ownership interest. S. Patel and Alleyene knew that the assets of Eastside and Zaragoza would be pledged as collateral to secure the loan(s) of NHS Emergency and that if other units were not profitable, Alleyene and S. Patel would, in their capacity as officers and directors of Neighbors Health, cause operating funds of Eastside and Zaragoza to be transferred to the non-profitable emergency centers. The other Neighbors O&Ds knew and were complicit in S. Patel and Alleyen's false and/or misleading statements.

38. As a direct consequence and proximate result of the acts of the Neighbors O&Ds, the Plaintiff has been damaged. The Neighbors O&Ds' conduct also rises to the level of gross negligence. Therefore, Plaintiff seeks recovery of exemplary and punitive damages.

## Direct Aiding and Abetting Breach of Fiduciary Duties

39. Neighbors Health, as agent and manager of Eastside and Zaragoza, owed fiduciary duties to Plaintiff. The Neighbors O&Ds were the officers and directors of Neighbors Health and directed Neighbor's Health's actions in that capacity. They owed fiduciary duties to Plaintiff. Neighbors Health and the Neighbors O&Ds had an obligation to: (1) act fairly and equitably with respect to its management of the Plaintiff's finances and operations and preserve its profits for distribution, (2) make reasonable use of the confidence that the Plaintiff placed in the it, (3) act in the utmost good faith and exercise the most scrupulous honesty toward the Plaintiff, (4) place the interests of the Plaintiff before its own and not use the advantage of its position to gain any benefit for itself at the expense of the Plaintiff, and (5) fully and fairly disclose all important information to the Plaintiff concerning the financial management work.

40. Neighbors Health and the Neighbors O&Ds failed to comply with these duties to the Plaintiff by causing or allowing Eastside and Zaragoza to enter into lease and marketing agreements and obligations at costs that were substantially above market cost. Further,

Neighbors Health failed to comply with these duties by transferring Eastside's and Zaragoza's operating funds to other business units of NHS Emergency. The Neighbors O&Ds, in their capacity as officers and directors of Neighbors Health, aided and abetted Neighbors Health in this breach of fiduciary duties. Their acts proximately caused substantial damages to Plaintiff.

41. The breaches of duties proximately caused the Plaintiff to suffer injuries and damages, including but not limited to distributions of profit and lost profits. The Plaintiff now seeks actual damages, both direct and consequential. Further, the breaches of duty were committed knowingly and with conscious disregard for the rights and welfare of the Plaintiff. Therefore, the Plaintiff is entitled to recover exemplary damages from the Neighbors Health and the Neighbors O&Ds, which it now seeks.

### Direct Claim of Violations of Securities Act

42. The Neighbors O&Ds are liable as control persons of NHS Emergency for violations of Tex. Rev. Civ. Stat. Ann., § 581-33A(2). The Neighbors O&Ds were all persons who controlled NHS Emergency, which was the seller of the securities in Eastside and Zaragoza to Plaintiff. NHS Emergency and the Neighbors O&Ds, in their capacity as officers and directors of NHS Emergency, offered and sold securities of Eastside and Zaragoza to Plaintiff by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

43. In particular, NHS Emergency represented to the Plaintiff that the finances of Eastside and Zaragoza would be maintained separate and apart from the other series emergency centers of NHS Emergency, and so long as Eastside and Zaragoza were profitable, that the year-end profits would be distributed to Plaintiff according to its ownership interest. NHS Emergency

15

knew that the assets of Eastside and Zaragoza would be pledged as collateral to secure the loan(s) of NHS Emergency and that if other units were not profitable, NHS Emergency, through its control by way of the Neighbors O&Ds, in their capacity as officers and directors of NHS Emergency and Neighbors Health, would cause operating funds of Eastside and Zaragoza to be transferred to the non-profitable emergency centers. NHS Emergency failed to state to Plaintiff that Neighbors Health may transfer funds from Eastside and/or Zaragoza to other NHS Emergency units in order to keep those other units from suffering losses and failing as businesses.  This was a material fact that was necessary in order to make the statements made, in the light of the circumstances under which they were made by NHS Emergency, not misleading.

44. The Neighbors O&Ds are liable for this violation of the Texas Securities Act, section 33A(2), as control persons of NHS Emergency under section 33F.  As actual damages under section 33D of the Texas Securities Act, the Plaintiff is entitled to, and now seeks, the consideration it paid for the securities plus interest at the lawful rate.

## Direct Claim of Conspiracy to Breach Fiduciary Duties

45. The Neighbors O&Ds, in their capacity as officers and directors of Neighbors Health and NHS Emergency, conspired with Neighbors Health and NHS Emergency to cause Neighbors Health to breach its fiduciary duties to Plaintiff, which was a proximate cause of damages to Plaintiff.  The Plaintiff now seeks those damages.

## V.

## Jury Demand

46. The Plaintiff demands a trial by jury as to all issues in this case.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, INFINITY EMERGENCY MANAGEMENT GROUP, LLC, Individually and as Class B Non-Voting Members on behalf of NHS Emergency Centers, LLC Series 114 – Eastside and NHS Emergency Centers, LLC Series 115 – Zaragoza, prays that after trial it be awarded judgment as follows:

1. Actual damages, including direct and consequential damages;
2. Statutory damages;
3. Exemplary or punitive damages;
4. Prejudgment and post-judgment interest as allowed by law; and
5. Costs of court.

Respectfully submitted,

**WAUSON ♦ PROBUS**

By: ___/s/ Matthew B. Probus____
    **Matthew B. Probus**
    TBA# 16341200
    Fed. I.D. # 10915
    **John Wesley Wauson**
    TBA # 20988200
    Fed. I.D. # 1866

One Sugar Creek Center Blvd., Suite 880
Sugar Land, Texas 77478
(281) 242-0303 telephone
(281) 242-0306 facsimile

*ATTORNEYS FOR PLAINTIFF,*
*INFINITY MANAGEMENT GROUP, LLC*

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing has been forwarded by electronic delivery through the ECF/PACER system and via United States regular mail, first class postage prepaid, to the parties listed below on this the 14th day of December, 2018:

John F Higgins, IV
Clay Steely
Porter Hedges LLP
1000 Main Street, Suite 3600
Houston, TX 77002-6336
jhiggins@porterhedges.com

Staton M Childers
Adams and Reese, LLP
LyondellBasell Tower
1221 McKinney, Suite 4400
Houston, Texas  77010
Staton.childers@arlaw.com

Paul D Flack
Pratt and Flack LLP
1331 Lamar Street, Suite 1250
Houston, TX 77010
pflack@prattflack.com

Millard A Johnson
Johnson DeLuca Kennedy & Kurisky, P.C.
1221 Lamar, Suite 1000
Houston, TX 77010
mjohnson@jdkglaw.com

James G Munisteri
Foley Gardere
1000 Louisiana, Suite 2000
Houston, TX 77002
jmunisteri@foley.com

Christina Minshew Lewis
Moyer Patton
11767 Katy Freeway, Suite 990
Houston, TX 77079
clewis@moyerpatton.com

                                                    __/s/ Matthew Probus_____
                                                        Matthew Probus