## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | **Chapter 11** |
| | § | |
| **NEIGHBORS LEGACY HOLDINGS, LLC,** | § | **Case No. 18-33836** |
| | § | |
| **Debtors.** | § | |
| | § | |
| **INFINITY EMERGENCY** | § | |
| **MANAGEMENT GROUP, LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **Adversary No. 18-03276** |
| **v.** | § | |
| | § | |
| **NEIGHBORS HEALTH SYSTEMS, INC.,** | § | **MOTION TO DISMISS FOR** |
| **NEIGHBORS HEALTH, LLC,** | § | **LACK OF STANDING,** |
| **NEIGHBORS INVESTMENT GROUP, LLC,** | § | **FAILURE TO STATE A CLAIM** |
| **NEIGHBORS GP, LLC,** | § | **UPON WHICH RELIEF CAN BE** |
| **SETUL G. PATEL, M.D.,** | § | **MAY BE GRANTED, OR IN THE** |
| **PAUL ALLEYNE, M.D.,** | § | **ALTERNATIVE, MOTION FOR** |
| **MICHAEL CHANG, M.D.,** | § | **MORE DEFINITE STATEMENT** |
| **ANDY CHEN, M.D.,** | § | |
| **CYRIL GILLMAN, M.D.,** | § | |
| **QUANG HENDERSON, M.D.,** | § | |
| **DHARMESH PATEL, M.D., AND** | § | |
| **HITESH PATEL, MD.,** | § | |
| | § | |
| *Defendant.* | § | |

---

## DEFENDANTS, DHARMESH PATEL AND NEIGHBOR'S INVESTMENT GROUP, LLC'S MOTION TO DISMISS FOR LACK OF STANDING, FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, OR IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT

1.      Plaintiff, Infinity Emergency Medical Group LLC's ("Infinity's" or "Plaintiff's") Complaint against Defendants, Dharmesh Patel, M.D. And Neighbors Investment Group, LLC should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because it lacks standing under Article III and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  In the alternative, Defendants move this Court to require Plaintiff to amend its pleading to provide a more definite statement, under Federal Rule of Civil Procedure 12(e).

## I
## INTRODUCTION

2.      This is an adversary proceeding brought by Plaintiff Infinity Emergency Management Group, LLC ("Plaintiff") against several Neighbors debtor entities, a non-bankrupt entity that only acted as a Member in the Series (Neighbors Investment Group, LLC) and eight (8) directors or past directors of the bankrupt estate.  While Plaintiff asserts that the individual defendants are directors and officers of all the bankrupt entities, it does not attach any evidence to support this claim.

3.      Each Neighbors Emergency Center business was operated under a limited partnership and the current limited partnerships at issue are NEC Eastside Emergency Center, LP ("Eastside") and NEC Zaragoza Emergency Center, LP ("Zaragoza"), which share similar corporate structures. Eastside is comprised of one limited partner, NHS Emergency Centers, LLC Series 114 and one general partner, Neighbors GP, LLC. Zaragoza is comprised of one limited partner, NHS Emergency Centers, LLC Series 115 and one general partner, Neighbors GP, LLC. Each series limited liability company is managed by Neighbors Health System, Inc. Dkt. No. 17 at ¶ 21.

1

4.      Plaintiff has a membership interest in the NHS Emergency Centers, LLC Series 114 and 115 (collectively "Series"). Dkt. No. 17 at ¶ 20. This membership interest gave Plaintiff the right to share profits of both Series with Neighbors Investment Group, LLC, another member Series. Dkt. No. 17 at ¶¶ 18, 20. Both Series were managed by Neighbors Health Systems, Inc. Dkt. No. 17 at ¶ 21.

5.      The Defendants are as follows:

    A.  **Neighbors Health System, Inc.:**  This entity was appointed as the Manager of the Series 114 and 115 Series LLC's. It was also contractually agreed to by both Series 114 and 115 through a Series Management and Administrative Services Agreement. However, as the manager of each series, it had very little power since each series was only a limited partner for each business location.

    B.  **Neighbors Health, LLC:**  This entity has no ties to Series 114 or 115. Plaintiff's Third Amended Complaint does not address why this entity was sued, nor does it make any allegations regarding any injury or damage this entity caused Plaintiff. Upon information and belief, this entity is an improper party.

    C.  **Neighbor's Investment Group, LLC**: This entity was the Class A Shareholder in Series 114 and 115. This entity was a Member of the Series LLC's and did not owe any fiduciary duties to the Plaintiff by virtue of being a Member of both Series; Plaintiff's Third Amended Complaint does not address why this entity was sued, nor does it make any allegations regarding any injury or damage this entity caused Plaintiff.

    D.  **Neighbors GP, LLC:**  This entity is wholly owned by Neighbors Health Systems, Inc. This is not the entity that sold Plaintiff's their shares (that entity was not sued

but is NHS Emergency Centers, LLC).  Neighbors GP, LLC is not a party to any contract with Plaintiff.   Plaintiff's Third Amended Complaint does not address why this entity was sued, nor does it make any allegations regarding any injury or damage this entity caused Plaintiff;

E. **Individual Defendants:**  These parties are: Setul G. Patel, M.D., Paul Alleyne, M.D., Cyril Gilman, M.D., Michael Chang, M.D., Andy Chen, M.D., Quang Henderson, M.D., Hitesh Patel, M.D., and Dharmesh Patel, M.D. They each owned a membership interest in Series Member, Neighbors Investment Group, LLC.  Plaintiff refers to them as the Officers and Directors of Neighbors Health System, LLC. (the Manager of both Series), but does not produce any evidence to support this conclusory statement; Plaintiff's Third Amended Complaint does not allege any specific act each director did or make any allegations regarding any injury or damage any individual defendant specifically caused Plaintiff;

6.     Plaintiff brought this suit complaining about (1) leases and agreements that were entered into for Eastside and Zaragoza that were above market rates; (2) transfers of money among other series entities; and (3) the encumbrance of property belonging to Eastside and Zaragoza for the benefit of all series. Dkt. No. 17 at ¶¶ 23–25.  Plaintiff has not pled out the actual monetary amount of damages sought.  The only injuries that Plaintiff alleges are due to lost profits and distributions.

## II
## BACKGROUND[1]

7.      In 2014, Plaintiff purchased Class B non-voting membership units in Series 114 and 115

for $500,000.00 per series, for a total investment of $1,000,000.00.  In conjunction with the sale

of the shares, Plaintiff executed: (1) the Series Agreement between NHS Emergency Centers,

LLC (as the Member), Neighbors Investment Group, LLC (as the Class A shareholder and

Member), and Infinity Emergency Management Group (as the Class B shareholder and Member)

for their respective ownership interests in NHS Emergency Centers, LLC's Series 114 and 115;

(2) the Management Agreement between Neighbors Health Systems, Inc., (as the Manager) and

NHS Emergency Centers, LLC's Series 114 and 115 (as the Company); and (3) the Series

Interest Purchase Agreement between NHS Emergency Centers, LLC (as the Seller) and Plaintiff

(as the Purchaser).   None of these documents are attached to Plaintiff's Third Amended

Complaint, but should have been attached.

8.      Plaintiff acknowledged in the Series Agreement that NHS Emergency Centers, LLC had

permission to enter into loans on behalf of the Series.  Ex.  1, Series Agreement, page 1, Section

H.[2]  There was also a term in the Series Agreement that clearly informed Plaintiff that mandatory

---

[1] For purposes of this motion alone, Defendants will assume the truth of the factual allegations (but not the mere conclusions) contained in the Complaint, as required under the Federal Rules of Civil Procedure. Defendants reserve the right to challenge Plaintiff's allegations should this motion be denied in any respect.

[2] Plaintiff failed to attach any exhibits to their Third Amended Complaint, even though relevant documents are referred to in the pleading.  Further, all the documents attached to this Motion were filed for record by the Plaintiff is all of their state court pleadings. When ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, "[a] court is permitted ... to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir.

distributions could be restricted by bank covenants or other contractual restrictions.  Ex. 1, Page 15, Section H.  Plaintiff continually misrepresents in its petition that its distributions were caused by acts of the defendants with absolutely no evidence to support this statement. In fact, Plaintiff were informed that the distributions stopped due to a breach of the bank covenant.  While Plaintiff also misrepresents to the Court that they had no knowledge that a bank loan encumbered this Series, the documents clearly indicate that Plaintiff knew there was a bank loan and agreed to it in the Series Agreement.

9.      Plaintiff also agreed that the management of the Series' would be conducted by Neighbors Health System, Inc.  Ex. 2, Management Agreement.  The Management Agreement contractually waived all fiduciary duties of the Manager, and instead made the relationship purely contractual in nature.  Ex. 2, Page 4, Section 7.  This was in part done because the Manager was charged with managing all the various Series, which all had different shareholders. It would be difficult to manage different Series with different shareholders, administratively, without making the relationship strictly contractual in nature.

10.     Plaintiff also acknowledged and represented in the Series Interest Purchase Agreement that they "did not rely on the Company's evaluation of the shares and Purchaser decision to purchase same on the terms and conditions set forth herein is not based on any representation, statement, financial statement or projection or, other inducement of any nature, written or oral,

---

2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)). Second, "[a] written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *Taylor v. Deutsche Bank AG,* 2014 U.S. Dist. LEXIS 199324, *5-6.

whatsoever except the statements, representations of the warranties" [contained in the Series Purchase Agreement]. Ex. 3, page 3, Section 4(a).

11.     Plaintiff also acknowledged and represented in the Series Interest Purchase Agreement that they were a sophisticated investor capable of evaluating the risks of the sale, was afforded the opportunity to meet with the manager, ask questions, and review information contained within the books and records of the Company, is financially able to risk the loss of the entire purchase, and read the operating agreement and the Series agreement with counsel and has unequivocally agreed to be bound thereto.   Ex. 3, page 3, Section 4(b)-(e).

12.     Plaintiff was informed, along with the Neighbors Investment Group, LLC, who it now sues, that a bank covenant was breached, and that no distributions would be able to pay out until the breach was cured.   In fact, the breach was not cured, and the Chapter 11 bankruptcy followed.  Both Plaintiff and the individual defendants are unsecured creditors of the bankrupt entity.

13.     From the time of purchase until the bank covenant breach, Plaintiff received $2,224,940.00 in profit distributions related to its ownership in Series 114 and 115.  This means that at the time of the suit, Plaintiff received $1,224,940.00 more than the cost of the purchase of the shares.  Plaintiff filed suit in state court before the bankruptcy. The case was later removed to this Honorable Court after the bankruptcy was filed.

### III.
### SUMMARY OF THE ARGUMENT

14.     Neither Plaintiff nor its attorneys have the right or ability to bring derivate claims against any of the Defendants. Upon information and belief, the Joint Plan will vest this authority in the Unsecured Creditors Trustee, who has already been identified.

15.     Plaintiff assumes that all the defendants owe them a fiduciary duty.  However, Plaintiff purposely agreed that Series 114 and 115 were not a partnership, joint venture, agent with any of the Neighbors entities or their directors.  In fact, the Management Agreement specifically waives any fiduciary duties in Paragraph 7 for Neighbors Health Systems, Inc. and its officers, directors, shareholders, employees, and representatives.  Thus, if the fiduciary duties were waived, Plaintiff has no ability to assert tort causes of action that require the defendant to have a duty to the Plaintiff.  When the Plaintiff executed all relevant documents to this transaction, they agreed that the rights of the defendants were contractual in nature.  Thus, even if they could attach a duty, the economic loss rule would prevent recovery for injuries that clearly stem from contractual rights.

16.     Finally, the sale of the Class A membership units occurred in 2014.  There is a three (3) year statute of limitations.  Since this claim was just made in 2018, limitations expired and dismissal is warranted.  Further, violations of the Texas Security Act are also considered derivative actions that belong to the bankrupt estate.  Thus, Plaintiff has no standing to bring them.  Further, all the arguments Plaintiff makes deal with alleged actions or failure to do something by the defendants that occurred two years after the shares were sold.  There is no information that Plaintiff discovered that would lead anyone to believe Defendants violated the Texas Securities Act.  On the contrary, it is doubtful Plaintiff would succeed on a claim for violations of the security act even if the claim was not barred by the applicable statute of limitations.  This is because Plaintiff made over $1,200,000.00 in profit over and above the price for the shares.  Thus, all the acts complained of in the Third Amended Compliant did not occur before the shares were purchased.  Therefore, Plaintiff has not identified any acts or misinformation that would have caused them to not purchase the shares.  In fact, it is

highly unlikely that the Plaintiff would want their shares rescinded, because Plaintiff received their more than twice the original investment. Dismissal is warranted.

## IV.
## LEGAL STANDARD

### A. Rule 12(b)(1) Standard.

17.     Under Rule 12(b)(1), a claim must be dismissed for lack of subject-matter jurisdiction. FRCP 12(b)(1).  Where a plaintiff does not have standing to complain of the alleged acts and to seek the requested relief, the Court lacks subject-matter jurisdiction.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *ODonnell v. Harris Cnty.*, 227 F. Supp. 3d 706, 723 (S.D. Tex. 2016) ("Federal Rule of Civil Procedure 12(b)(1) applies to challenges to a plaintiff's standing.").

18.     "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation and internal quotation marks omitted).  "A court lacks power to decide a claim that a plaintiff lacks standing to bring. The plaintiff has the burden of demonstrating that subject-matter jurisdiction exists."  *O'Donnell v. Harris Cty.*, 227 F. Supp. 3d 706, 723 (S.D. Tex. 2016) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)).

19.     "To survive a motion to dismiss under [Rule] 12(b)(1) for lack of standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Kaiser v. Cascade Capital, LLC*, No. 3:16-cv-00744-AC, 2018 U.S. Dist. LEXIS 51845, at *1 (D. Or. Mar. 28, 2018).  Further, "Plaintiff bears the burden of proof and must clearly allege facts demonstrating each element."  *Id.*  If claims are derivative to the debtor, they are property of the

debtor's estate.  In re Educators Grp. Health Trust, 25 F.3d 1281, 1284 (5th Cir. 1994); In re

Black Elk Energy Offshore Operations, LLC, 2016 Bankr. LEXIS 2708, 2016 WL 4055044, at

*2 (Bankr. S.D. Tex. 2007) (J. Isgur).  If a claim belongs to the estate, the Trustee has exclusive

standing to assert it.  Schertz-Cibolo—Universal City, Indep. Sch. Dist. v. Wright (In re

Educators Grp. Health Trust), 25 F.3d 1281, 1285 (5th Cir. 1994).

### B.  Rule 12(b)(6) Standard.

20.     To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "enough

facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S.

544, 570 (2007).  A claim "has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged.  Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S.

662, 678 129 S. Ct. 1937 (2009)).  The court is not "bound to accept as true a legal conclusion

couched as a factual allegation."  Iqbal, 556 U.S. at 678.  Labels, conclusions, or a "formulaic

recitation of a cause of the elements of a cause of action" do not withstand a motion to dismiss.

Norris v. Hearst Tr., 500 F.3d 454, 464 (5th Cir. 2007) (citing Twombly, 550 U.S. at 555).

### C.  Rule 12(e) Standard.

21.     When a plaintiff's complaint fails to state a claim, the court should generally give the

plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the

action with prejudice.  Fed. R. Civ. P. 15(a); Great Plains Trust Co v. Morgan Stanley Dean

Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002) ("District courts often afford plaintiffs at least

one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the

defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend

in a manner that will avoid dismissal."); United States ex rel. Adrian v. Regents of the Univ. of

*Cal.,* 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." The Court should deny leave to amend if it determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Proc. § 1487 (2d ed. 1990).

22.      Under Rule 12(e), a party may move for a more definite statement of a pleading to which a responsive pleading is allowed, but which is so vague or ambiguous that the party cannot reasonably prepare a response.  Fed. R. Civ. P. 12(e).  The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.  Id.  If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.  *Id.*

23.      Motions for more definite statement are "used to remedy an unintelligible pleading; they are not used to clarify a pleading that lacks detail, and they are not intended to serve as a substitute for discovery."  *Allstate Ins. Co. v. Donovan,* Civ. A. No. H-12-0432, 2012 U.S. Dist. LEXIS 92401 (S.D. Tex. July 3, 2012) (*citing Mitchell v. E-Z Way Towers, Inc., 269* F.2d 126, 132 (5th Cir. 1959)).  The court has considerable discretion in deciding whether to grant such a motion.  *Ditcharo v. United Parcel Service, Inc.,* 376 Fed. Appx. 432, 440 n.9 (5th Cir. 2010) (*citing Old Time Enterprises, Inc. v. International Coffee Corp., 862* F.2d 1213, 1217 (5th Cir. 1989)).  As discussed supra, Plaintiff failed to allege sufficient facts with clarity to put Defendant on notice of Plaintiff's claims, and if not dismissed, Plaintiff's pleadings should be amended.

D.      **Rule 9(b) Standard.**

24.      Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead "with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). Articulating the elements of fraud with particularity "requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Williams*, 112 F.3d at 179). "A complaint can be long-winded, even prolix, without pleading with particularity ... [i]ndeed, such a garrulous style is not an uncommon mask for an absence of detail." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (citing *Williams*, 112 F.3d at 178).

E.  **Rule 23.1 Pleading Standard for Derivative Proceedings.**

25.      Federal Rule of Civil Procedure 23.1(b), addressing pleading requirements for derivative actions, imposes a higher pleading standard than Rule 12(b)(6).  A shareholder derivative action allows individual shareholders of a corporation to file suit on the corporation's behalf as "a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991); *Aztec Oil and Gas, Inc. v. Fisher*, 152 F. Supp.3d 832, 839 (S.D. Tex. 2016). "To discourage abuse of this remedy, courts require that shareholders who wish to initiate a derivative action must first 'demonstrate that the corporation itself has refused to proceed after suitable demand,

unless excused by extraordinary conditions."' *Hanson v. Odyssey Healthcare, Inc.*, No. 04–CV–2751–N, 2007 WL 5186795, at *2 (N.D. Tex. Sept. 21, 2007), *citing Kamen*, 500 U.S. at 95; *Aztec Oil and Gas*, 152 F. Supp.3d at 839.

26.     As an initial matter, Plaintiff has failed to verify its pleading as required by Rule 23.1. Additionally, Plaintiff fails to allege facts sufficient to show that it will "fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1(a). Instead, Plaintiff summarily states "Plaintiff will adequately and fairly represent the interest of Eastside and Zaragoza in enforcing and prosecuting its rights." (Dkt. No. 17 at ¶ 28). As explained in greater detail below, only the Trustee—not the Plaintiff—can adequately represent the interests of the other shareholders or members who are similarly situated.

**V.**
**ARGUMENT AND ANALYSIS**

   **A. Plaintiff Lacks Standing to Bring the Derivative Claims Asserted in the Third Amended Complaint, thus, Dismissal is Warranted.**

29.     Under Section 1123(b)(3)(B), a party other than the debtor or the trustee that seeks to enforce a claim must show (1) that it has been appointed, and (2) that it is a representative of the estate. *Retail Marketing Co. v. King (In re Mako, Inc.),* 985 F.2d 1052, 1054 (10th Cir.1993); *In re  Hunt,* 136 Bankr. 437, 444 (Bankr.N.D.Tex.1991). "The primary concern is whether a successful recovery by the appointed representative would benefit the debtor's estate and particularly, the debtor's unsecured creditors." *Id.* at 1327. The reason for the emphasis on unsecured creditors is that the proceeds recovered in an avoidance action satisfy the claims of priority and general unsecured creditors before the debtor benefits. *Id.*

27.     Applying this test, (1) Plaintiff's attorneys have not been appointed to handle claims of the unsecured creditors, and (2) are not a representative of the estate. *Id.*  Thus, the derivative claims should be dismissed as a matter of law.  Fed. R. Civ. P. 12(b)(1).

i.      **Undisputed Derivative Causes of Action Should be Dismissed for Lack of Standing and are Derivative, thus belong to the Estate.**

28.     With respect to Plaintiff's causes of action for abuse of control, gross mismanagement, and waste of corporate assets, Plaintiff judicially admits these causes of action are indirect and derivative.  Third Amended Complaint, pages 11-12.  Thus, Plaintiff claims for abuse of control, gross mismanagement, and waste of corporate assets should be dismissed based upon (1) lack of standing and (2) they are derivative in nature, thus belong to the estate as a matter of law.  *King,* 985 F.2d at 1054; *In re Hunt,* 136 Bankr. at 444 (standing); *see also, In re Black Elk Energy Offshore Operations, LLC*, 2016 Bankr. LEXIS 2708, 2016 WL 4055044, at *4–5; (derivative claims belong to the estate).

ii.     **Disputed Derivative Causes of Action Should be Dismissed for Lack of Standing and are Derivative, thus belong to the Estate.**

29.     Although not plead as derivative causes of action, Plaintiff's causes of action for (1) aiding and abetting breach of fiduciary duties and (2) conspiracy to breach fiduciary duties, and aiding are considered derivative in nature, because the injury Plaintiff alleges, i.e, loss of profits and distributions, is a harm that befell all of the Series LLC's equally.  *Smith v. Waste Mgmt. Inc.,* 407 F.3d 381, 385 (5th Cir. 2005); *See also, Tooley*, 845 A.2d at 1033, 1035, 1039. Stated differently, the misconduct alleged by Plaintiff did not injure it or any other shareholders directly, but instead only injured them indirectly as a result of their ownership of NES Emergency Centers, LLC.  *Id.*

30.     Any claims for breach of fiduciary duty against an officer, director, or professional for an event causing injury to a debtor are property of the estate.  *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 382, 386 (5th Cir. 2009) (By definition then, a cause of action for breach of fiduciary duty owed to the corporation that is property of the corporation at commencement of the chapter 11 case becomes property of the debtor's estate, regardless of whether outside of bankruptcy the case was more likely to be brought by the corporation directly or by a shareholder or creditor through a derivative suit."); *Torch Liquidating Trust,* 561 F.3d 377 at 386; *see also La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 245 (5th Cir. 1988); *Floyd v. CIBC World Markets Inc.*, 426 B.R. 622, 635 (S.D. Tex. 2009).

31.     As such, Plaintiff cannot prove its injury without also simultaneously proving an injury to the company.  *Id.*  Accordingly, Plaintiffs' claims for Smith's claims abetting breach of fiduciary duties and (2) conspiracy to breach fiduciary duties are derivative under Texas law.  *Id.*  Thus, Plaintiff lacks standing to bring these claims.  *See In re Mortgage America Corp*., 714 F.2d 1266, 1276 (5th Cir. 1983) (citing 4 COLLIER ON BANKRUPTCY P 541.10[8](15th ed. 1983)); In re E.F. Hutton SW Props. II, Ltd., 103 B.R. 808, 812-13 (Bankr. N.D. Tex. 1989) (quoting Pepper v. Litton, 308 U.S. 295, 306-07, 60 S. Ct. 238, 84 L. Ed. 281 (1939)("While normally that fiduciary obligation [(of a director to a corporation)] is enforceable directly by the corporation, or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation enforceable by the trustee.").  Dismissal is proper.  Fed. R. Civ. P. 12(b)(1).

**B.  Plaintiff also Lacks Standing to Bring a Claim for Violations of the Texas Securities Code, because it is also Derivative.**

32.     The Court should still dismiss Plaintiffs' claim for Violations of the Texas Securities Act, because this claim is derivative in nature and Plaintiff lacks standing to bring same. *McVey v. Johnson* (*In re SBMC Healthcare, LLC*), 519 B.R. 172, 184 (Bankr. S.D. Tex. 2014).

Specifically, Plaintiff alleges that, as a result of Neighbor's bankruptcy filing, Plaintiff lost the opportunity receive more distributions by virtue of its stock ownership.  Inasmuch as the Complaint quantifies the harm suffered by Plaintiff as the loss of value to its Series shares, it is not distinct from harm suffered by Neighbors, the corporation.  *Id.*

33.     A claim of loss for devaluation of stock is a derivative cause of action that belongs exclusively to the bankruptcy estate.  *Id.*  Thus, Plaintiff, as an individual stockholder, has no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of its stock. *Id; (quoting, Wingate*, 795 S.W.2d at 719; *see also See Whalen v. Carter*, 954 F.2d 1087, 1091 (5th Cir. 1992) (holding that a shareholder lacks standing to bring a suit based on loss in value to his or her shares as this injury derives from, and thus is not distinct from, the injury to the corporation). Because the causes of action based on devaluation of SBMC stock are derivative, they belong exclusively to SBMC's estate and should be dismissed for lack of standing.  *Id.*  Thus, dismissal of the cause of action should be dismissed for either statute of limitations or standing.

**Plaintiff's Claims for Violations of the Texas Security Act Should be Dismissed as they are barred by the Applicable Statute of Limitations.**

34.     Plaintiff purchased the Class B membership units in both Series in November 2014.  The applicable statute of limitations is three (3) years that accrues when the Plaintiff discovers or, in the exercise of reasonable diligence, should have discovered the "nature of the injury." *Childes v. Haussecker,* 974 S.W.2d 31, 40-41 (Tex. 1998); *see also, Baxter v. Gardere Wynne Sewell, LLP,* 182 S.W.3d 460, 463 (Tex. App.—Dallas, 2006, pet. denied).  In this case, Plaintiff asserted violations for the TSA in 2018.  None of the earlier pleadings alleged this cause of action; thus, the look-back rule and tolling does not apply.

35.     If the Plaintiff made any allegations regarding any material misrepresentation or omission made by Defendants that occurred <u>before</u> the sale of the membership units in 2014, the discovery rule would apply to when Plaintiff learned of those statements.     *Baxter,* 182 S.W.3d at 463. However, Plaintiffs' factual allegations as plead in their Third Amended Complaint allege misrepresentations and improper accounting practices that occurred at least two (2) years <u>after</u> the securities were purchased.  Given the fact that the securities purchased yielded over two (2) times the amount of the sale of shares after the purchase, Plaintiff has no damages for the purchase of the shares.  Any discrepancies of the accounting practices or whether or not money was improperly transferred from the Series after the sale would not be violations of the Texas Security Act.  *See* Tex. Rev. Civ. Stat. Ann. art. 581-33(A)(2); *Duperier v. Tex. State Bank*, 28 S.W.3d 740, 745 (Tex. App.—Corpus Christi 2000, pet. dism'd by agr.); *see also Quest Med., Inc. v. Apprill*, 90 F.3d 1080, 1091 (5th Cir. 1996).  Any cause of action for a violation of the securities code would have had to be brought by 2017.  Since there is no evidence that any of the defendants made any misrepresentations before the sale of the securities in 2014 and it is doubtful there were any because the stock yielded more than twice the amount of the share purchase price, Plaintiff has no damages that stem from the purchase of the shares.  Thus, dismissal is warranted.

**C. Violations of the Texas Security Act should be Dismissed Because Plaintiff Fails to Factually Allege any Misstatements by any Defendant Occurred before the Sale of the Membership Units.**

36.     Even if the Court does not agree that the cause of action for violations of the Texas Securities Act ("TSA") should not be based on the fact that it is derivative or barred by the applicable statute of limitations, this Court should still dismiss, because Plaintiff fails to allege any misstatements by any defendant that occurred before the 2014 sale.  *See* Tex. Rev. Civ. Stat.

Ann. art. 581-33(A)(2); *Duperier v. Tex. State Bank*, 28 S.W.3d 740, 745 (Tex. App.—Corpus

Christi 2000, pet. dism'd by agr.); *see also Quest Med., Inc. v. Apprill*, 90 F.3d 1080, 1091 (5th

Cir. 1996). Specifically, the TSA provides:

> A person who offers or sells a security . . . by means of *an untrue statement of a*
> *material fact or an omission to state a material fact necessary in order to make*
> *the statements made, in the light of the circumstances under which they are made,*
> *not misleading*, is liable to the person buying the security from him, who may sue
> either at law or in equity for rescission, or for damages if the buyer no longer
> owns the security.

Tex. Rev. Civ. Stat. Ann. art. 581-33(A)(2) (emphasis added).

37.     Thus, to recover under the TSA, a buyer of a security must prove that the security was

sold by means of (1) an untrue statement of material fact or (2) an omission to state a material

fact that is necessary in order to make the statements made not misleading. *Id.*; *Sandefer*, 58

S.W.3d at 776; *see also Crescendo Invs., Inc. v. Brice*, 61 S.W.3d 465, 475 (Tex. App.—San

Antonio 2001, pet. denied) (plaintiff must introduce evidence of material misrepresentation or

omission related to security and induced its purchase).

38.     An omission or misrepresentation is material "if there is a substantial likelihood that a

reasonable investor would consider it important in deciding to invest." *Sandefer*, 58 S.W.3d at

776 (internal quotations omitted); *see also Duperier*, 28 S.W.3d at 745; *Weatherly v. Deloitte &*

*Touche*, 905 S.W.2d 642, 649 (Tex. App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.).

However, an investor is not required to prove that he would have actually acted differently but

for the omission or misrepresentation. *Sandefer*, 58 S.W.3d at 776; *Weatherly*, 905 S.W.2d at

649. The focus of the TSA is on the conduct of the seller or issuer of securities, i.e., whether they

made a material misrepresentation or omission, not on the conduct of the buyers. *Sandefer*, 58

S.W.3d at 776; *Weatherly*, 905 S.W.2d at 649; *see also Gaiser*, 2007 Tex. App. LEXIS 2364,

2007 WL 906328, at *5 ("The TSA is to be construed to protect investors."); *Duperier*, 28

S.W.3d at 745 (statute merely requires proof of misrepresentation or omission by seller). Generally, statements of opinion, including opinions regarding the value of the securities, are not actionable under TSA article 581-33(A)(2). *Sandefer*, 58 S.W.3d at 776 ("puffing" or "dealers' talk," such as prediction of increased share price, generally not actionable misrepresentation); *Duperier*, 28 S.W.3d at 749; *Paull v. Capital Res. Mgmt., Inc.*, 987 S.W.2d 214, 218-19 (Tex. App.—Austin 1999, pet. denied) (characterization of investment as "low risk" and prediction of "large revenues for a long time" constituted statements of opinion not actionable under fraud provision of TSA where investors had equal access to information on which opinions based (internal quotations omitted)).

39.     Plaintiff fails to cite one act or omission made by any defendant that occurred by the sale of the membership units.  *Id.*  The allegations Plaintiff made to support this cause of action clearly occurred two (2) years after the sale.  Thus, the claim should be dismissed because it is barred under the applicable statute of limitations.  Tex. Rev. Stat. Ann. 581-33(H)(2).

### D. Plaintiff's Claims for Violations of the Texas Securities Act Should also be Dismissed as the Pleading Does Not Comply with Fed. R. Civ. P. 9(b).

40.     Federal pleading standards, including Rule 9(b), apply to claims premised on the Texas Securities Act if the claims are asserted in federal court. *Billitteri v. Sec. Am., Inc.*, No. 3:09-CV-1568-F, 2010 WL 6785484, at *5 (N.D. Tex. July 26, 2010) ("[a] plaintiff alleging a violation of 'Texas securities fraud under the TSA,' that is, a violation of article [581-33] of the TSA, must satisfy the heightened pleading requirements of Rule 9(b), but need not plead scienter") (citing *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 344 (5th Cir. 2008)); *see also Melder v. Morris*, 27 F.3d 1097, 1100 (5th Cir. 1994) ("Rule 9(b) requires certain minimum allegations in a securities fraud case, namely the specific time, place, and contents of the false representations, along with the identity of the person making the misrepresentations and what the person obtained

thereby."). Article 581–33(A)(2) of the Texas Securities Act "imposes liability on [a] person who offers or sells a security ... by means of an untrue statement of a material fact or an omission to state a material fact." *Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.*, 161 S.W.3d 482, 485-86 (Tex. 2005) (internal citations omitted).

41.     "An omission or misrepresentation is material if there is a substantial likelihood that proper disclosure would have been viewed by a reasonable investor as significantly altering the total mix of information made available." *Duperier v. Texas State Bank*, 28 S.W.3d 740, 745 (Tex. App.–Corpus Christi 2000, no pet.). "In other words, the issue is whether a reasonable investor would consider the information important in deciding whether to invest." *Id.* To show that the purchase was consummated by means of untrue statements, the "plaintiff must show [that] the untrue statements were made before the sale occurred." *Pitman v. Lightfoot*, 937 S.W.2d 496, 531 (Tex. App.–San Antonio 1996, writ denied). Once again, Plaintiff improperly group pleads its allegations against all the Neighbors O&Ds. Plaintiff must demonstrate *on a director-by-director* basis, that each director made untrue statements, before the sale occurred, that induced Plaintiff to buy securities. *Duperier*, 28 S.W.3d at 745; *Pitman*, 937 S.W.2d at 531. Plaintiff's Third Amended Complaint globally alleges that "NHS Emergency represented to the Plaintiff that the finances of Eastside and Zaragoza would be maintained separate and apart from the other series emergency centers of NHS Emergency, and so long as Eastside and Zaragoza were profitable, that the year-end profits would be distributed to Plaintiff according to its ownership interest." *Id.* at ¶ 43.

42.     Allegations that "lump all defendants together, failing to segregate the alleged wrongdoing of one from those of another," do not satisfy the requirements of Rule 9(b). *USA ex rel. Barrett v. Johnson Controls, Inc.*, No. 3:01-CV-1641-M, 2003 WL 21500400, at *10 (N.D. Tex. Apr. 9, 2003). The allegations against the Neighbors D&O Defendants require additional specificity to satisfy Rule 9(b). The petition names twelve separate defendants,

including eight directors in both their individual and capacity as officer and directors. The petition then vaguely alleges that all Neighbors D&O Defendants, "represented" the finances of Eastside and Zaragoza would be maintained separately without any particularity as to who made the specific misrepresentations/omissions. *See In re Urcarco Sec. Litig.*, 148 F.R.D. 561, 569 (N.D. Tex. 1993), *aff'd sub nom. Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994) (finding that the plaintiff's "lumping together" of the "thirteen named defendants, three of which are supposed to represent a defendant class of fifty firms" simply as "defendants" failed to "segregate the alleged wrongdoing of one from those of another do not meet the requirements of Rule 9(b)").

43.     Plaintiff's Third Amended Complaint fails to address "where" of "when" the misrepresentations/omissions were made. The Third Amended Complaint wholly fails to elaborate on where or when the events occurred. (doc. 1-3 at 190, 202-03.) In the context of this suit, Plaintiff's Third Amended Complaint is insufficient because it does not even include a generalized place or time frame. *See U.S. ex rel. King*, 232 F.R.D. at 570-72 (dismissing fraud claim under Rule 9(b) because the plaintiff "fail[ed] to identify a single specific date on which a false claim was made and, instead, claims that the fraudulent activity occurred on or before January 1, 1998, to present"). Plaintiff's Third Amended Complaint fails to provide fair notice of the "where" and "when" of the claims against the Neighbors D&O Defendants. *See Siragusa v. Arnold*, No. 3:12-CV-4497-M, 2014 WL 3512988, at *5 (N.D. Tex. July 16, 2014) (dismissing fraud and fraudulent inducement claims under Rule 9(b) because of Plaintiff's failure to allege when or where misleading statements were made); *see also Atl. Cas. Ins. Co.*, 2016 WL 1322235, at *4 (dismissing claim under Rule 9(b) because "[a]lthough [the plaintiff] alleges that misrepresentations were made, it does not specify any of the other particulars that Rule

9(b) requires, such as when the representations were made, where the representations were made, or the specific identity of the person making the representations").

44.     Plaintiff's Third Amended Complaint fails to explain "how" the Neighbors D&O Defendants made the misrepresentations/omissions. The Third Amended Complaint vaguely states that the Neighbors D&O Defendants "represented" the finances of Eastside and Zaragoza would be maintained separately. Plaintiff does not allege whether that representation was made in writing or orally, at general meeting or in person, whether it was made to the general public or just Plaintiff.

45.     The lack of information of exactly who made the alleged misrepresentation, when it was made, where it was made and how it was made fails to state a claim with the sufficient particularity required under Rule 9(b). *See DT Apartment Grp., L P v. CW Capital, LLC*, No. 3:12-CV-0437-D, 2012 WL 6693192, at \*7 (N.D. Tex. Dec. 26, 2012) (dismissing collective allegations under Rule 9(b) because the complaint failed to plead specifically that "any particular defendant misrepresented any material fact," and omitted the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation"). Plaintiff's Third Amended Complaint fails to sufficiently state claims under the Texas Securities Act with particularity against the Neighbors D&O Defendants and must be dismissed.

46.     Even if the Court permitted Plaintiff to lump the Neighbors D&O Defendants together as "control persons," the claim is still deficient because a control-persons claim is a secondary claim dependent upon a primary violator. "Both control persons and aiders are jointly and severally liable with the primary violator 'to the same extent as if [they] were' the primary violator." *Darocy v. Abildtrup*¸ 345 S.W.3d 129, 137 (Tex. App.—Dallas 2011, no pet.)

(quoting *Sterling Trust Co. v. Adderley,* 168 S.W.3d 835, 839 (Tex. 2005)). Because secondary liability is derivative liability for another person's securities violation, before a party can be held secondarily liable, there must first be a primary violation. *Id. See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1021 n.8 (5th Cir. 1996) ("Because the Plaintiffs have failed to state a claim for any predicate securities fraud offense under § 10(b), Plaintiffs have necessarily failed to state a claim against [Defendant] for 'controlling person' liability under § 20(a).").

47. To state a control-person claim, the allegations must demonstrate that a putative controlling person has "actual power or influence over the controlled person." *Abbott v. Equity Group*, 2 F.3d 613, 620 (5th Cir. 1993); *see also In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 885 (S.D. Tex. 2004) (a securities fraud plaintiff "needs to allege some facts beyond a defendant's position or title to show that the defendant had actual power or control over the controlled person."). Merely holding a position or title, without more, is insufficient to find that person liable as a controlling person." *Cameron v. Outdoor Resorts of Am., Inc.*, 608 F.2d 187, 195 (5th Cir. 1980).

48. Plaintiff has alleged no facts demonstrating that each of the Neighbors O&Ds had "actual power" to control NHS Emergency, or that either of them could control any other person or entity that is alleged to have committed an underlying securities violation. Plaintiff summarily alleges that the Neighbors D&O Defendants are "control persons" that controlled NHS Emergency. Plaintiff should be required to plead specific facts, on a director-by-director basis, *See Moore v. Payson Petroleum Grayson, LLC*, No. 3:17-CV-1436-M-BH, 2018 WL 793800, at *5-6 (N.D. Tex. Jan. 22, 2018) (requiring Plaintiff to plead specific allegations with respect to each individual Defendant, despite the fact Plaintiff alleged Defendants were "control persons"); *SEC v. Couch*, No. 3:14-CV-1747-D, 2014 WL 7404127, at *5 (N.D. Tex. Dec. 31,

2014) (finding sufficient particularity when global allegations were made *because the one entity defendant, COG, was a corporation controlled by the one individual defendant*, and COG could only act through the individual defendant officer). *Ricupito v. Indianapolis Life Ins. Co.*, No. 3:09-CV-2389-B, 2010 WL 3855293, at *4 (N.D. Tex. Sept. 30, 2010) (requiring the plaintiffs to identify the corporate agents who allegedly made false statements, because the complaint "strongly implies that the parties communicated in-person on multiple occasions" and the plaintiffs presumably knew the identities of the speakers).

49.     Because Plaintiff failed to plead a claim against the purported primary violator and has failed to plead facts as to how each Neighbors O&Ds "had actual power or control" over a primary violator, the control-person claims must be dismissed.  Fed. R. Civ. P. 9(b).

**E.  Any Causes of Action that Require a Breach of a Duty Should be Dismissed, as the Parties contractually agreed to waive all fiduciary duty obligations by sophisticated parties in an Arms-Length Transaction.**

50.     The Class A and B shareholders agreed that Series 114 and 115 would be managed by Neighbors Health System, Inc.  Ex.  3, Management Agreement.  The Management Agreement provides that the manager is an "independent contractor."  *Id.* at ¶ 7, page 4. The Parties agreed that,

> Management and Company shall not be and are not intended by their execution of this Agreement to become, partners, members, shareholders, affiliates, associates, parent or subsidiary to one another, and the relationship of the parties is purely contractual and does not establish any agency, fiduciary, or other type of relationship except as provided herein.

*Id.*

51.     Because the Defendants actions that Plaintiff complains of were all taken in the capacity as Managing Manager, the waiver of fiduciary duties in the Management Agreement forecloses those claims.  *Strebel v. Wimberly*, 371 S.W.3d 267 (Tex. App.—Houston [1st Dist.] 2012, pet.

denied*); see also, Jochec v. Clayburne*, 863 S.W.2d 516, 520 (Tex. App.—Austin 1993, writ denied) (holding trial court erred by refusing to recognize that trustee's fiduciary duties had been contractually limited); *Kline v. O'Quinn,* 874 S.W.2d 776, 787 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (holding that contract between lawyers defined scope of their duties to each other, and refusing to impose fiduciary duties in addition to the duties expressly provided for in contract).

52.     Texas courts honor the contractual terms that parties use to define the scope of their obligations and agreements, including limiting fiduciary duties that might otherwise exist. *Strebel,* 371 S.W.3d at 284  (citing Nat'l Plan Adm'rs, Inc., 235 S.W.3d at 703); *see* Tex. Bus. Orgs. Code Ann. § 152.002(b)(2) (West Supp. 2015). This is especially true when the contractual limitation arises from an arms-length business transaction between sophisticated businessmen.  *Id.* This principle adheres to Texas' public policy of freedom of contract. *El Paso Field Servs., L.P. v. Mastec N. Am., Inc.,* 389 S.W.3d 802, 811-12 (Tex. 2012); *see FPL Energy, LLC v. TXU Portfolio Mgmt. Co.,* 426 S.W.3d 59, 67 (Tex. 2014).

53.     Accordingly, Plaintiff's causes of action for abuse of control, gross mismanagement, waste of corporate assets, negligence, gross negligence, negligent Misrepresentation, aiding and abetting breach of fiduciary duties and conspiracy to breach fiduciary duties should all be dismissed. This is because all of these causes of action need to impose some duty on the Defendants.  Since Plaintiffs were sophisticated investors in an arms-length transaction (and admit same in the Series Purchase Agreements) and waived the fiduciary duties by contract, the claims must be dismissed as a matter of law.  Ex. 3, page 3, Section 4(b)-(e).

**F.  Plaintiff's Fiduciary-Related Claims Are Barred by the Business-Judgment Rule.**

54.     "The business judgment rule in Texas generally protects corporate officers and directors, who owe fiduciary duties to the corporation, from liability for acts that are within the honest exercise of their business judgment and discretion." *Sneed v. Webre*, 465 S.W.3d 169, 173 (Tex. 2015). One important outgrowth of the business judgment rule is that courts will not interfere with decisions made by a corporation's officers or directors based on allegations of mismanagement, neglect, or abuse of discretion. *Id.* at 186. Courts typically do not intervene in corporate affairs unless officers or directors commit acts that are *ultra vires*, fraudulent, or oppressive to minority shareholder rights. *Id.*

55.     Plaintiff offers no persuasive explanation for why the decisions that the Neighbors O&Ds made in their capacity as officers and directors are not covered by the business-judgment rule. *See Sneed*, 465 S.W.3d at 186. Plaintiff concedes that Neighbors Health and Neighbors O&D were responsible for managing the operations and finances of Eastside and Zaragoza. Thus, assuming, *arguendo*, Plaintiff's allegations are true, the executives may have judged that the best way to maintain the goodwill associated with the brand and safeguard against future losses for Eastside and Zaragoza (i.e. if Eastside or Zaragoza suffered a financial downturn, it would benefit from a larger corporate structure that could prop it up during difficult economic times). And during a time of potential insolvency, maintaining balanced books across all corporate entities may be the best way to revitalize the corporation. Likewise, the Neighbors O&Ds may have determined that it was in the best interest of Eastside and Zaragoza to enter into the lease and marketing agreements complained of in the Third Amended Complaint. Ultimately, Plaintiff failed to plead with plausibility that the transfer of money between related series entities

constituted a fiduciary duty breach by any Officer or Director. Thus, dismissal is warranted. Fed. R. Civ. P. 12(b)(6).

### G. The Economic Loss Rule Bars Plaintiff from Recovering Under the Tort Causes of Action Plead in the Third Amended Complaint.

56.     Plaintiffs' negligence, gross negligence, and negligent misrepresentation claims are barred by the economic loss rule.   *See Sw. Bell Tele. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). The economic loss rule precludes recovery in tort when the loss is the subject matter of a contract between the parties. *Id.* In deciding whether the economic loss rule applies to Plaintiff's claims for negligence, gross negligence, and negligent misrepresentation, the Court must "examine the source of the defendant's duty and the nature of the claimed injury." *Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 288 (Tex. App.—Dallas 2015, no pet.). The Texas Supreme Court has established the following framework for distinguishing between an action that sounds in tort and one that sounds in contract:

> If the defendant's conduct—such as negligently burning down a house—would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct—such as failing to publish an advertisement—would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract. In determining whether the plaintiff may recover on a tort theory, it is also instructive to examine the nature of the plaintiff's loss. When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract.

*Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998) (quoting *DeLanney*, 809 S.W.2d at 494).

57.     Here, Plaintiffs have not alleged that they have suffered any loss independent of the contracts between the parties (i.e., the Series Agreement, Operating Agreement, and the Management Agreement); their claim is based on purported representations regarding the how the Series LLC were operated by the Manager- which is which is a right provided in the

Management Contract.  Ex. 1.  Because there is no indication that Defendant's conduct "would give rise to liability independent of the fact that a contract exists between the parties," the economic loss rule precludes Plaintiff's negligence, gross negligence, and negligent representation claims, as well as Plaintiff's other tort claims grounded in similar allegations. *See Hayes v. Bank of Am., N.A.*, 4:13-CV-760-A, 2014 U.S. Dist. LEXIS 10019, 2014 WL 308129, at *5 (N.D. Tex. Jan. 27, 2014) (concluding that the economic loss rule bars tort claims based on defendant's representations regarding the modification of a loan, the effects of such modification, and the delay of foreclosure, as all these claims "flow solely from the note and deed of trust.").

58.     In the case at bar, the individual defendants, NIG Investment Group, LLC, and Neighbors Health Systems, Inc. were all in privity of contract with Plaintiffs.  Further, the Defendants specifically waived all fiduciary duties in the Management Agreement and agreed and acknowledged that the relationship between the parties was strictly contractual in nature.  Ex. 1, page 4, Section 7.   Texas Courts typically apply the economic loss rule to claims similar to the one asserted here, and it has concluded that the rule bars tort claims that "are rooted in that contractual relationship." *Obuekwe v. Bank of Am., N.A.*, No. 4:11-CV-762-Y, 2012 U.S. Dist. LEXIS 55053, 2012 WL 1388017, at *8 (N.D. Tex. Apr. 19, 2012).  Defendants also assert that, contrary to Plaintiff's allegations, they did not owe Plaintiff a duty apart from its contractual obligations, as evidenced in the Management Agreement.  *Id.*

59.     Therefore, Defendant did not owe Plaintiff a duty of care outside of its contractual obligations, which adds to the pertinence of the economic loss doctrine and calls for the dismissal of this negligence claim.  Further, if the Court looks to the facts, injuries, and theories of recovery, it is easy to discern that the Plaintiff is reaching for some cause of action to trigger

an independent theory of recovery that does not belong to the estate.  In this case, Plaintiff may have a breach of contract claim or a fraud claim, but it is not a tort because the injuries complained of arise from contract, and Plaintiff did not suffer any loss outside of the contracts between the parties.  Thus, dismissal is proper. Fed. R. Civ. P. 12(b)(6).

**H. There is no factual allegation against Neighbor's Investment Group, LLC that show a right to relief is plausible.**

60.     Plaintiff's Third Amended Complaint does not address why Neighbor's Investment was sued, nor does it make any allegations regarding any injury or damage Neighbor's Investment caused Plaintiff.  Plaintiff's only factual allegation related to Neighbors Investment is that it was formed to purchase the membership interest of the Individual Defendants in Eastside and Zaragosa from NHS Emergency. Dkt. No. 17 at PP 18, 20.  Plaintiff asserts no cause of action against Neighbors Investment. Neighbors Investment is a non-bankrupt entity that only acted as a Member in the Series.  Members of a Series LLC do not owe fiduciary duties to other members.  *In Federal Insurance Company v. Rodman*, 2011 WL 5921529 (N.D. Tex. 2011), *Mullen v. Jones (In re Jones),* 445 B.R. 677 (Bankr. N.D. Tex. 2011).  Thus, dismissal of Neighbor's Investment Group, LCC, is proper.  Fed. R. Civ. P. 12(b)(6).

**I. Even if the Court Does Not Dismiss all of Plaintiff's Claims, Plaintiff Should be Required to Provide a More Definite Statement for all of the Causes of Actions Not Dismissed.**

61.      This is Plaintiffs' third attempt at re-pleading.  However, if the Court is disinclined from dismissing all of one of the causes of action plead, Plaintiff should be required to plead a more definite statement for any cause of action this Court does not dismiss.  Fed. R. 12(b)(7).

62.     In this case, Plaintiff improperly group pleads its allegations against all the individual defendants—former and current directors and officers (referred to collectively as the "Neighbors O&Ds" in the Third Amended Complaint)—in a blatant effort to distract from its threadbare

pleadings. Plaintiffs' allegations include extensive references to "Neighbors O&Ds," but fail to allege, on a director-by-director basis, any actionable conduct.  Indeed, Plaintiff fails to attribute any actionable conduct to Cyril Gilman, M.D., Michael Chang, M.D., Andy Chen, M.D., Quang Henderson, M.D., Hitesh Patel, M.D., and Dharmesh Patel, M.D. All such allegations asserted generally against "Neighbors O&D's" should be re-plead by the Plaintiffs, to allege what each individual did, the duty the director had to the Plaintiff, and the harm the Plaintiff suffered. *Fin. Acquisition,* 440 F.3d at 287; *Southland,* 365 F.3d at 365; *see Barrie,* 397 F.3d at 261.

63.     Plaintiffs' Third Amended Complaint alleges claims for abuse of control, gross mismanagement, and waste of corporate assets. The claims, however, are not independent causes of action and instead are a mere repackaging of a fiduciary duty claim. *Freuler v. Parker*, 803 F. Supp. 2d 630, 634 (S.D. Tex. 2011). Even if these claims could stand on their own, Plaintiff has failed to plead sufficient detail to make such claims plausible under *Iqbal*. 556 U.S. at 678. Accordingly, Plaintiffs' claims for abuse of control, gross mismanagement, and waste of corporate assets fail and should be dismissed.  Likewise, Plaintiffs' claims for aiding and abetting breach of fiduciary duty and conspiracy to breach of fiduciary duty fail because they are dependent claims, and the underlying tort of breach of fiduciary duty has not been alleged.

64.     First, group pleads allegations against the Neighbors O&Ds and fails to distinguish between the different roles and responsibilities of the Neighbors O&Ds. The Court cannot reasonably infer which defendants are liable for the alleged misconduct, so the Plaintiffs' claims lack facial plausibility. *See Iqbal*, 556 U.S. at 678.

65.     Second, with respect to each fiduciary-related claim, the Plaintiff has failed to plead any facts explaining the basis for said claims. Plaintiff makes conclusory allegations that the Neighbors O&Ds and Neighbors Health "abuse[d] their ability to control and influence Eastside

and Zaragoza" (Dkt. No. 17 at ¶ 33), "abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Eastside and Zaragoza in a manner consistent with the operations of a closely held company," (Dkt. No. 17 at ¶ 34) and "by failing to properly consider the interests of Eastside and Zaragoza and its members by failing to conduct proper supervision, the Neighbors O&Ds and Neighbors Health have caused Eastside and Zaragoza to waste valuable corporate assets by paying inflated operations expenses to affiliates" (Dkt. No. 17 at ¶ 35). Even at the pleading stage, Plaintiff still needs to state claims with specificity—conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

66.     Here, however, Plaintiff only asserts conclusory allegations. Plaintiff does not explain which Neighbors O&D did what act that constitutes an abuse of control. Dkt No. 17 at ¶ 33. Defendants are left to guess as to what exactly they did that would constitute an "abuse of their ability to control or influence Eastside and Zaragoza. *Id.* at ¶ 33. Similarly, Plaintiff does not explain who abandoned or abdicated what responsibility or fiduciary duty.  *Id.* at ¶ 34. Likewise, Plaintiff does not which Neighbors O&D failed to conduct proper supervision and exactly how the Neighbors O&Ds wasted corporate assets. Thus, even if Plaintiffs' claims for abuse of control, gross mismanagement, and waste of corporate assets were viable under Texas law, *see infra* Section II(B), Plaintiff has not alleged sufficient facts to make such claims plausible under *Iqbal* and *Twombly*.  If the Court does not dismiss the causes of actions, Defendant respectfully request that the Plaintiff be required to provide a more definite statement to apprise each individual defendant with enough information to be able to answer Plaintiffs Complaint.  Fed. R. Civ. P. 12(b)(e).

## VI.
## CONCLUSION

67.     For the foregoing reasons, Plaintiffs' Complaint must be dismissed.  If the Court is disinclined to grant full dismissal, the Plaintiff should be required to provide a more definite statement on any causes of action that survive dismissal so that the complaint identifies each defendant, what they did, said, or how they breached, what duty they had to the Plaintiffs at the time of the action complained of, how the injury complained of is a direct action, and they amount of damages for each cause of action that survives dismissal.

        Dated this 13th day of February, 2019.


                                        Respectfully submitted,

                                        MOYER, LEWIS, & PATTON, LLP

                                        */s/ Christina Minshew Lewis*
                                        Christina Minshew Lewis
                                        SBN: 24013170
                                        clewis@mlpllp.com
                                        11767 Katy Fwy Suite #990
                                        Houston, Texas 77079
                                        T: 832.327.1180 x204
                                        F: 832.327.1187


                                        Adams & Reese, LLP

                                        */s/ Staton Childers*
                                        Staton Childers
                                        SBN: 00796348
                                        Federal Bar No. 20599
                                        1221 McKinney Street, Suite 4400
                                        Houston, Texas 77010
                                        **main** 713.652.5151
                                        **efax** 713.308.4034  |  **fax** 713.652.5*152*

**Certificate of Service**

The undersigned hereby certifies that all Parties of record were duly served with this

Motion via ECF/CMF delivery on February 13, 2019,

>                                        */s/ Christina Minshew Lewis*
>                                        Christina Minshew Lewis