**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **In Re:** | § | **Chapter 11** |
| | § | |
| **NEIGHBORS LEGACY HOLDINGS,** | § | **Case No. 18-33836** |
| **LLC,** | § | |
| | § | |
| Debtors. | § | |
| | § | |
| **INFINITY EMERGENCY** | § | |
| **MANAGEMENT GROUP, LLC,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | **Adversary No. 18-03276** |
| **v.** | § | |
| | § | |
| **NEIGHBORS HEALTH SYSTEMS, INC.,** | § | **MOTION TO DISMISS** |
| **NEIGHBORS HEALTH, LLC,** | § | |
| **NEIGHBORS INVESTMENT GROUP, LLC,** | § | |
| **NEIGHBORS GP, LLC,** | § | |
| **SETUL G. PATEL, M.D.,** | § | |
| **PAUL ALLEYNE, M.D.,** | § | |
| **MICHAEL CHANG, M.D.,** | § | |
| **ANDY CHEN, M.D.,** | § | |
| **CYRIL GILLMAN, M.D.,** | § | |
| **QUANG HENDERSON, M.D.,** | § | |
| **DHARMESH PATEL, M.D., AND** | § | |
| **HITESH PATEL, MD.,** | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................. 3

III.    LEGAL STANDARDS ....................................................................................... 6

        A.      Rule 12(b)(1) Standard. .......................................................................... 6

        B.      Rule 12(b)(6) Standard. .......................................................................... 6

        C.      Rule 9(b) Standard. ................................................................................. 7

        D.      Rule 23.1 Pleading Standard for Derivative Proceedings. ...................... 8

IV.     ARGUMENTS & ANALYSIS .............................................................................. 9

        A.      Plaintiff Lacks Standing to Bring its Claims. ......................................... 9

                1.      Plaintiff's undisputed derivative claims .................................... 10

                2.      Plaintiff's "direct" claims for negligence and fiduciary-duty are
                        derivative and should be dismissed ........................................... 11

        B.      Plaintiff's Improper Group Pleading Does Not State a Claim For Which
                Relief Can Be Granted. ......................................................................... 15

        C.      Plaintiff's Fiduciary-Duty Claims Fail as a Matter of Law. .................. 16

                1.      Texas does not recognize independent claims for abuse of control,
                        gross mismanagement, and waste of corporate assets. .............. 16

                2.      Plaintiff's Fiduciary-Duty Claims Lack Sufficient Specificity. .............. 17

                3.      Plaintiff's Fiduciary-Related Claims Are Barred by the Business-
                        Judgment Rule. ......................................................................... 19

        D.      Plaintiff's Fraud-Based Claims Fail to Satisfy Rule 9(b). .................... 20

                1.      Fed. R. Civ. P. 9(b) Apply. ...................................................... 20

                2.      Plaintiff's Texas Securities Act Claims Lack Rule 9(b) Specificity ......... 21

                3.      Plaintiff does not allege a viable control-persons claim. .......... 24

        E.      Plaintiff's Negligence-Based Claims Fail ............................................. 25

                1.      Plaintiff's Cannot Establish an Independent Legal Duty of
                        Reasonable Care ....................................................................... 25

2.      Business-Judgment Rule Bars Plaintiff's Negligence and Gross Negligence Claim............................................................................ 26

3.      Plaintiff has not pleaded sufficient facts for a negligent misrepresentation claim. ................................................................ 26

F.      Plaintiff's Own Documents Defeat Plaintiff's Claims.......................................... 27

a.      The Court Can, and Should, Consider the Exhibits to Plaintiff's Prior Petitions........................................................................................................ 27

b.      The Series Interest Purchase Agreements Belie Plaintiff's Claims that it Relied on Some Alleged Oral Representations...................................................... 30

c.      The Series Agreements also Belie Plaintiff's Claim that It Thought Its Series Finances Would be Separate and Not Pledged as Collateral. .................... 31

G.      The Records of the Neighbors Bankruptcy Also Belie Plaintiff's Claim of an Above-Market Lease. ......................................................................................... 32

H.      The Court Should Dismiss the Third Amended Complaint with Prejudice.......... 32

V.      CONCLUSION................................................................................................. 33

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abbott v. Equity Grp.*,
    2 F.3d 613 (5th Cir. 1993) ...................................................................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................ *passim*

*Atl. Cas. Ins. Co. v. Primelending, a Plainscapital Co.*,
Civil Action No. 3:15-CV-1475-D, 2016 WL 1322235, at *4 (N.D. Tex. April 5,
    2016) ......................................................................................................................22

*Aztec Oil and Gas, Inc. v. Fisher*,
    152 F. Supp.3d 832 (S.D. Tex. 2016) ....................................................................8

*USA ex rel. Barrett v. Johnson Controls, Inc.*,
    No. 3:01-CV-1641-M, 2003 WL 21500400 (N.D. Tex. Apr. 9, 2003) ..................21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................ *passim*

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*,
    343 F.3d 719 (5th Cir. 2003) ..........................................................................7, 20

*Bhatia v. Dischino*,
    Civil Action No. 3:09-CV-1086-B, 2010 WL 1236406 (ND Tex. 2010)...............27

*Bhatia v. Dischino*,
    Civil Action No. 3:09-CV-1086-B, 2011 WL 3820825 (ND Tex. 2011)...............27

*Billitteri v. Sec. Am., Inc.*,
    No. 3:09-CV-1568-F, 2010 WL 6785484 (N.D. Tex. July 26, 2010) ....................19

*In re Black Elk Energy Offshore Operations, LLC*,
    CASE No:15-34287, 2016 WL 4055044 (Bankr. S.D. Tex. 2007) ...................6, 10

*Carter v. Target Corp.*,
    541 Fed.Appx. 413 (5th Cir. 2013)..................................................................28, 29

*Cameron v. Outdoor Resorts of Am., Inc.*,
    608 F.2d 187 (5th Cir. 1980) ................................................................................24

*City of Clinton v. Pilgrim's Pride Corp.*,
    632 F.3d 148 (5th Cir. 2010) ..................................................................................7

*Clark v. Lacy,*
    376 F.3d 682 (7th Cir. 2004) ...............................................................................17

*Collins v. Morgan Stanley Dean Witter,*
    224 F.3d 496 (5th Cir. 2000) ...............................................................................28

*Del Castillo v. PMI Holdings N. Am. Inc.,*
    Civil Action No. 4:14CV3435, 2015 WL 3833447 (S.D. Tex. June 22, 2015)..............2, 7, 15

*In re Dexterity Surgical, Inc.,*
    365 B.R. 690 (Bankr. S.D. Tex. 2007) ...................................................................9

*Dorsey v. Portfolio Equities, Inc.,*
    540 F.3d 333 (5th Cir. 2008) ...............................................................................20

*DT Apartment Grp., L P v. CW Capital, LLC,*
    No. 3:12-CV-0437-D, 2012 WL 6693192 (N.D. Tex. Dec. 26, 2012)....................................23

*In re Dynegy, Inc. Sec. Litig.,*
    339 F. Supp. 2d 804 (S.D. Tex. 2004) ...............................................................4, 32

*In re Educators Grp. Health Trust,*
    25 F.3d 1281 (5th Cir. 1994) ...........................................................................6, 10, 11

*Floyd v. CIBC World Mkts. Inc.,*
    426 B.R. 622 (S.D. Tex. 2009) ..........................................................................11, 15

*Freuler v. Parker,*
    803 F. Supp. 2d 630 (S.D. Tex. 2011) .................................................................16, 17

*Goldstein v. MCI WorldCom,*
    340 F.2d 238 (5th Cir. 2003) ...............................................................................32

*Gonzalez v. Kay,*
    577 F.3d 600 (5th Cir. 2009) ...............................................................................7

*Hanson v. Odyssey Healthcare, Inc.,*
    No. 04–CV–2751–N, 2007 WL 5186795 (N.D. Tex. Sept. 21, 2007) .....................................8

*Home Builders Ass'n of Miss., Inc. v. City of Madison,*
    143 F.3d 1006 (5th Cir. 1998) ...............................................................................6

*Kamen v. Kemper Fin. Servs., Inc.,*
    500 U.S. 90 (1991)..............................................................................................8

*In re Katrina Canal Breaches Litig.,*
    495 F.3d 191 (5th Cir. 2007) ...............................................................................27

*Kaye v. Lone Star Fund v. (U.S.), LP.*,
    453 B.R. 645 (N.D.Tex.2011) ................................................................................. 19

*U.S. ex rel. King v. Alcon Laboratories, Inc.*,
    232 F.R.D. 568 (N.D. Tex. 2005) .......................................................................... 22

*La. World Exposition v. Fed. Ins. Co.*,
    858 F.2d 233 (5th Cir. 1988) ................................................................................. 15

*Lovelace v. Software Spectrum Inc.*,
    78 F.3d 1015 (5th Cir. 1996) ......................................................................... 23, 28

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................. 6

*In re Lyondell Chemical Co.*,
    491 B.R. 41 (Bankr. S.D. N.Y. 2013) ......................................................... 27, 28, 29

*Melder v. Morris*,
    27 F.3d 1097 (5th Cir. 1994) ................................................................................. 20

*Mendoza v. J.P. Morgan Mortg. N.A.*,
    No. 7:17-CV-180, 2017 WL 2778250 (S.D. Tex. June 27, 2017) ........................... 15

*Moore v. Payson Petroleum Grayson, LLC*,
    No. 3:17-CV-1436-M-BH, 2018 WL 793800 (N.D. Tex. Jan. 22, 2018) ................ 24

*In re Morrison*,
    419 B.R. 314 (S.D. Tex. 2009) .............................................................................. 20

*In re Mortgage Am. Corp.*,
    714 F.2d 1266 (5th Cir. 1983) ............................................................................... 10

*Norris v. Hearst Tr.*,
    500 F.3d 454 (5th Cir. 2007) ................................................................................... 7

*Notinger v. Costa (In re Robotic Vision Systems, Inc.)*,
    374 B.R. 36 (Bankr. D.N.H. 2007) ........................................................................ 19

*O'Donnell v. Harris Cnty.*,
    227 F. Supp. 3d 706 (S.D. Tex. 2016) ..................................................................... 6

*Paterson v. Weinberger*,
    644 F.2d 521 (5th Cir. 1981) ................................................................................... 6

*Reed v. Linehan (In re Soporex)*,
    463 B.R. 344 (Bankr. N.D. Tex.2011) ................................................................... 19

*Ricupito v. Indianapolis Life Ins. Co.*,
No. 3:09-CV-2389-B, 2010 WL 3855293 (N.D. Tex. Sept. 30, 2010) ...................................24

*Schertz-Cibolo—Universal City, Indep. Sch. Dist. v. Wright (In re Educators Grp. Health Trust)*, 25 F.3d 1281 (5th Cir. 1994) ................................................................6

*In re Schimmelpenninck*,
183 F.3d 347 (5th Cir. 1999) ...............................................................................11

*SEC v. Couch*,
No. 3:14-CV-1747-D, 2014 WL 7404127 (N.D. Tex. Dec. 31, 2014)...................................24

*In re Seven Seas Petroleum, Inc.*,
522 F.3d 575 (5th Cir. 2008) ...............................................................................11

*In re Sharp Intern. Corp.*,
302 B.R. 760 (E.D.N.Y. 2003) ...............................................................................20

*Siragusa v. Arnold*,
No. 3:12-CV-4497-M, 2014 WL 3512988 (N.D. Tex. July 16, 2014)...................................22

*In re Skyport Global Commc'ns, Inc.*,
No. 08-36737, 2011 WL 111427 (Bankr. S.D. Tex. Jan. 13, 2011) ......................................13

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
365 F.3d 353 (5th Cir. 2004) ...........................................................................7, 32

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998).........................................................................................6

*In re Think3, Inc.*,
529 B.R. 147 (Bankr. W.D. Tex. 2015)...............................................................................19

*Torch Liquidating Trust v. Stockstill*,
561 F.3d 377 (5th Cir. 2009) ...............................................................................15

*In re Urcarco Sec. Litig.*,
148 F.R.D. 561 (N.D. Tex. 1993), .......................................................................21

*Wardiman v. Hammon*,
Civil Action No. 3:05-CV-2114-N, 2006 WL 8437663 (N.D. Tex. July 6, 2006) .......................................................................................................17

*Ware v. U.S. Bank Nat. Ass'n*,
No. 3:13CV387DPJ-FKB, 2013 WL 6805153 (S.D. Miss. Dec. 20, 2013) ...........................15

*Wesolek v. Layton*,
871 F.Supp.2d 620 (S.D. Tex.2012) .......................................................................12

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) ......................................................................................7

*In re Zoran Corp. Deriv. Litig.*,
    511 F.Supp.2d 986 (N.D. Cal. 2007) .......................................................................17

**State Cases**

*Darocy v. Abildtrup*,
    345 S.W.3d 129 (Tex. App.—Dallas 2011, no pet.)..............................................23

*Duperier v. Tex. State Bank*,
    28 S.W.3d 740 (Tex. App. —Corpus Christi 2000, no pet.) ............................20, 21

*Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*,
    51 S.W.3d 573 (Tex. 2001)......................................................................................14

*Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.*,
    161 S.W.3d 482 (Tex. 2005)....................................................................................20

*Leitch v. Hornsby*,
    935 S.W.2d 114 (Tex. 1996)....................................................................................25

*Linegar v. DLA Piper, LLP (US)*,
    495 S.W.3d 276 (Tex. 2016)....................................................................................12

*Nauslar v. Coors Brewing Co.*,
    170 S.W.3d 242 (Tex. App.—Dallas 2005, no pet.)..............................................12

*Pitman v. Lightfoot*,
    937 S.W.2d 496 (Tex. App.—San Antonio 1996, writ denied)..............................21

*Sneed v. Webre*,
    465 S.W.3d 169 (Tex. 2015)..............................................................................18, 26

*Sterling Trust Co. v. Adderley*,
    168 S.W.3d 835 (Tex. 2005)....................................................................................23

*Swank v. Cunningham*,
    258 S.W.3d 647 (Tex. App.—Eastland 2008, pet denied) .....................................12

*Tilton v. Marshall*,
    925 S.W.2d 672 (Tex. 1996)....................................................................................14

*Wingate v. Hajdik*,
    795 S.W.2d 717 (Tex. 1990)....................................................................................12

**Federal Statutes**

Fed. R. Civ. P. 23.1 ..............................................................................................8

Federal Rule of Civil Procedure 9(b) ...................................................... *passim*

Federal Rule of Civil Procedure 12(b)(1) .............................................. *passim*

Federal Rule of Civil Procedure 12(b)(6) .............................................. *passim*

**State Statutes**

Texas Business and Organizations Code § 101.622 ....................................8

Texas Business Organizations Code § 101.463 .........................................10

Texas Securities Act ............................................................................. *passim*

Texas Securities Act Article 581–33(A)(2) ...............................................20

Plaintiff Infinity Emergency Medical Group LLC's ("Infinity's" or "Plaintiff's") Complaint against Defendants Setul G. Patel, M.D. ("Dr. S. Patel"), Paul Alleyne, M.D. (Dr. Alleyne"), Cyril Gilman, M.D. ("Dr. Gilman"), Michael Chang, M.D. ("Dr. Chang"), Andy Chen, M.D. ("Dr. Chen"), Quang Henderson, M.D. ("Dr. Henderson"), and Hitesh Patel, M.D. (Dr. H. Patel") (collectively wit Dharmesh Patel, M.D., the "Neighbors O&Ds") should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because it lacks standing under Article III, Federal Rule of Civil Procedure 9(b) because Plaintiff's Texas Securities Act claim is not pled with sufficient specificity, and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## I.  INTRODUCTION

This is an adversary proceeding brought by Plaintiff against several Neighbors debtor entities and the eight Neighbors O&Ds.

Plaintiff has a limited interest in Series 114 Eastside, LLC ("Eastside") and Series 115 Zaragoza, LLC ("Zaragoza"). Dkt. No. 17 at ¶ 20. In the bankruptcy proceeding, Plaintiff and the Neighbors O&Ds are unsecured creditors. NHS Emergency Centers, LLC, the series LLC for Eastside and Zaragoza, is a debtor. Plaintiff's limited interest provided Plaintiff with the right to share profits of Eastside and Zaragoza with Neighbors Investment Group, LLC.  Dkt. No. 17 at ¶¶ 18, 20.  Eastside and Zaragoza were managed by Neighbors Health, LLC ("Neighbors Health").[1] Dkt. No. 17 at ¶ 21.

Plaintiff brought this suit complaining about purported (1) leases and agreements that were entered into for Eastside and Zaragoza at above market rates; (2) transfers of money among other

---

[1] Although not addressed in this Motion, and not relevant for the purposes of this Motion, Plaintiff appears to have confused Neighbors Health System, Inc., the party to the Management Agreement, and Neighbors Health, LLC.

series entities; and (3) the encumbrance of property belonging to Eastside and Zaragoza for the benefit of all series. Dkt. No. 17 at ¶¶ 23–25.

Most of the claims asserted are derivative claims belonging to the estate, and for which Plaintiff lacks standing. Thus, Plaintiff's derivative claims must be dismissed for lack of standing, which deprives this Court of subject-matter jurisdiction.

Additionally, Plaintiff's Third Amended Complaint is Plaintiff's fourth attempt to plead viable causes of action. Plaintiff's fourth attempt, however, still falls well-short of satisfying the pleading standards of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Plaintiff must plead specific facts tying *each Defendant* to an actionable cause of action, misstatement, or omission. Courts routinely reject group allegations. *Del Castillo v. PMI Holdings North America Inc.*, Civil Action No. 4:14-CV-3435, 2015 WL 3833447, at * 6 (S.D. Tex. June 22, 2015). Plaintiff's allegations here are woefully inadequate and do not state a claim against the Neighbors O&Ds. The claims should therefore be dismissed for the following reasons:

- *Improper Group Pleading:* Plaintiff improperly lumps all of the "Neighbors O&Ds" together and does not allege with particularity, on a director-by-director basis, what is alleged with respect to them individually. In fact, Plaintiff makes only two vague allegations against Drs. S. Patel and Alleyne and makes no allegations specifically attributable to Drs. Gilman, Chang, Chen, Henderson, H. Patel, and D. Patel.

- *Texas Does Not Recognize Independent Claims for Abuse of Control, Gross Mismanagement, and Waste of Corporate Assets*: Texas courts have held that such claims are a mere repackaging of a fiduciary duty claim and not an independent cause of action.

- *Fiduciary-Duty Claims Fail:* Plaintiff's fiduciary claims lack specificity as they do not allege specific facts on a director-by-director basis and are barred by the business-judgment rule.

- *Plaintiff's Claims Under the Texas Securities Act Do Not Meet the Heightened Pleading Standard of Rule 9(b):* Plaintiff fails to allege the necessary who, what, where, when, and how with respect to its Texas Securities Act Claim.

- *Plaintiff's Negligence Based Claims Fail* – Plaintiff has not alleged an independent legal duty sufficient to state a plausible claim against the directors individually.

- *Plaintiff's Claims are Belied by Documents Plaintiff Signed* – Documents Plaintiff signed and attached as exhibits to its own petitions in this case prove Plaintiff's claims are false.

For these reasons, detailed below, the Neighbors O&Ds respectfully request that Plaintiff's claims be dismissed with prejudice.

## II. BACKGROUND[2]

*The Parties*

In its Third Amended Complaint, Plaintiff names four Neighbors entities (each of whom are debtors in the bankruptcy) and the Neighbors O&Ds, who are current or prior officers and directors of those entities. The Defendants are as follows:

A. **Neighbors Health System, Inc. ("Neighbors"):**  Aside from the style and party allegations, Neighbors is not mentioned in the Third Amended Complaint and Plaintiff does not allege factual allegations or assert claims against this entity;

B. **Neighbors Health, LLC ("Neighbors Health"):**  Plaintiff claims that this entity entered the Management Agreement and owed Plaintiff a fiduciary Duty;[3]

C. **Neighbors Investment Group, LLC ("Neighbors Investment"):** Plaintiff claims that Neighbors Investment invested in Eastside and Zaragoza. Plaintiffs' Third Amended Complaint, however, does not allege any causes of action against this entity;

D. **Neighbors GP, LLC ("Neighbors GP"):** Aside from the style and party allegations, Neighbors GP is not mentioned in the Third Amended Complaint and Plaintiff does not allege factual allegations or assert claims against this entity;

E. **Individual Defendants (collectively "Neighbors O&Ds"):** The Third Amended Complaint collectively refers to the individual defendants as the "Neighbors O&Ds," and movants have continued this naming convention for the purpose of this Motion. As discussed below, Plaintiff's Third Amended Complaint group

---

[2] For purposes of this motion alone, the Neighbors O&Ds will assume the truth of the factual allegations (but not the mere conclusions) contained in the Complaint, as required under the Federal Rules of Civil Procedure. Defendants reserve the right to challenge Plaintiff's allegations should this motion be denied in any respect.

[3] As mentioned *supra* in note 1, Plaintiff appears to have confused Neighbors Health System, Inc. and Neighbors Health, LLC.

pleads all factual allegations against the Neighbors O&Ds and does not allege specific allegations with respect to each director.

*The Investment*

Plaintiff claims that in 2014, it entered into discussions with certain Neighbors O&Ds to open two emergency centers in the El Paso area.  Plaintiff further claims that the Neighbors O&Ds proposed to have an affiliate of NHS Emergency purchase the real property needed and construct a stand-alone emergency room center on the property.

Plaintiff alleges that the Neighbors O&Ds further proposed to have Neighbors Health manage the separate series businesses that would own and operate the two centers, while Plaintiff would staff the centers. The membership interests in the series would be owned by Plaintiff and Neighbors Investment and the net profits would be split between these two members.

Plaintiff claims that the Neighbors O&Ds, in their capacity as officers and directors of NHS Health, represented that the finances of the series companies, Eastside and Zaragoza, would be kept separate from the other NHS Emergency series companies.

Plaintiff alleges that in 2014 it paid NHS Emergency $500,000.00 to purchase 6,500 Class B non-voting series membership interests in each Eastside and Zaragoza (collectively $1 million). These interests represented a total of 65% of the series interests in Eastside and Zaragoza. Plaintiff claims Neighbors Investment, via the Neighbors O&Ds, paid NHS Emergency a total of $35,990.00 to purchase Class A voting series membership interests in Eastside and Zaragoza, representing 34% of the series interests in Eastside and Zaragoza. Neighbors Health then paid NHS Emergency $10.00 for 1% of the series interests in Eastside and Zaragoza as manager.

*The Operation of Eastside and Zaragoza*

Plaintiff claims that Neighbors Health entered into the Series Management and Administrative Services Agreement (the "Management Agreement") with Zaragoza and Eastside. Plaintiff claims that under the Management Agreement, Neighbors Health agreed to manage the operations and finances of Eastside and Zaragoza for a fee. Plaintiff claims that as officers and directors of Neighbors Health, the Neighbors O&Ds owed a fiduciary duty to Plaintiff. The Management Agreement, however, states specifically that an independent contractor relationship exists between Plaintiff and Neighbors Health.

Eastside and Zaragoza began operating in 2015.  Plaintiff alleges that Neighbors Health and the Neighbors O&Ds did not share details of the finances of Eastside and Zaragoza with Plaintiff, and that Dr. S. Patel, in his capacity as officer and director of Neighbors Health, caused Eastside and Zaragoza to enter into lease agreements for the real property and improvements at rates above the market rate for the area.

Plaintiff asserts that by the third quarter of 2016, the Neighbors O&Ds caused Neighbors Health to transfer large sums of money out of Eastside and Zaragoza's respective bank accounts to other NHS Emergency series companies for no consideration to provide needed capital infusions for those series. Plaintiff claims the Neighbors O&Ds failed to disclose the transfers to Plaintiff. Plaintiff asserts that the diversion of Eastside's and Zaragoza's funds caused Plaintiff substantial damages in the form of lost distributions of profit.

Plaintiff additionally claims that the Neighbors O&Ds cooperated with and assisted NHS Emergency in obtaining financing secured by essentially all of the assets of all of the series companies, including Eastside and Zaragoza, causing Plaintiff substantial damages.

### III.  LEGAL STANDARDS

#### A.  Rule 12(b)(1) Standard.

Under Rule 12(b)(1), a claim must be dismissed if the court lacks subject-matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  When a plaintiff lacks standing to complain of the alleged acts and to seek the requested relief, the Court lacks subject-matter jurisdiction.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *O'Donnell v. Harris Cnty.*, 227 F. Supp. 3d 706, 723 (S.D. Tex. 2016) ("Federal Rule of Civil Procedure 12(b)(1) applies to challenges to a plaintiff's standing.").

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation and internal quotation marks omitted).  "A court lacks power to decide a claim that a plaintiff lacks standing to bring.  The plaintiff has the burden of demonstrating that subject-matter jurisdiction exists."  *O'Donnell*, 227 F. Supp. 3d at 723 (S.D. Tex. 2016) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)).

If claims are derivative to a debtor, they are property of the debtor's estate.  *In re Educators Grp. Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994); *In re Black Elk Energy Offshore Operations, LLC*, CASE No:15-34287, 2016 WL 4055044, at *2 (Bankr. S.D. Tex. 2007) (Isgur, J.).  If a claim belongs to the estate, the Trustee has exclusive standing to assert it.  *Schertz-Cibolo—Universal City, Indep. Sch. Dist. v. Wright (In re Educators Grp. Health Trust)*, 25 F.3d 1281, 1285 (5th Cir. 1994).

#### B.  Rule 12(b)(6) Standard.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 129 S. Ct. 1937 (2009)).  The court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.  Labels, conclusions, or a "formulaic recitation of a cause of the elements of a cause of action" do not withstand a motion to dismiss. *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

### C.  Rule 9(b) Standard.

Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead "with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). Articulating the elements of fraud with particularity "requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Williams*, 112 F.3d at 179). "A complaint can be long-winded, even prolix, without pleading with particularity ... [i]ndeed, such a garrulous style is not an uncommon mask for an absence of detail." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (citing *Williams*, 112 F.3d at 178).

Furthermore, group pleading is not permitted.  Plaintiff must plead facts sufficient to inform each defendant of their particular part in the allege fraud.  *Del Castillo v. PMI Holdings N. Am. Inc.*, No. 4:14CV3435, 2015 WL 3833447, at *6 (S.D. Tex. June 22, 2015) ("A complaint

does not satisfy the requirements of *Iqbal* and *Twombly* by lumping together all defendants, while providing no factual basis to distinguish their conduct.").

### D.  Rule 23.1 Pleading Standard for Derivative Proceedings.

Federal Rule of Civil Procedure 23.1(b), addressing pleading requirements for derivative actions, imposes a higher pleading standard than Rule 12(b)(6).  A shareholder derivative action allows individual shareholders of a corporation to file suit on the corporation's behalf as "a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991); *Aztec Oil and Gas, Inc. v. Fisher*, 152 F. Supp.3d 832, 839 (S.D. Tex. 2016). "To discourage abuse of this remedy, courts require that shareholders who wish to initiate a derivative action must first 'demonstrate that the corporation itself has refused to proceed after suitable demand, unless excused by extraordinary conditions.'" *Hanson v. Odyssey Healthcare, Inc.*, No. 04–CV–2751–N, 2007 WL 5186795, at *2 (N.D. Tex. Sept. 21, 2007), *citing Kamen*, 500 U.S. at 95; *Aztec Oil and Gas*, 152 F. Supp.3d at 839.

As an initial matter, Plaintiff has failed to verify its pleading as required by Rule 23.1. Additionally, Plaintiff fails to allege facts sufficient to show that it will "fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association." FED. R. CIV. P. 23.1(a). Instead, Plaintiff summarily states "Plaintiff will adequately and fairly represent the interest of Eastside and Zaragoza in enforcing and prosecuting its rights." Dkt. No. 17 at ¶ 28. As explained in greater detail below, only the Trustee—not the Plaintiff—can adequately represent the interests of Eastside and Zaragoza.

## IV.   ARGUMENTS & ANALYSIS

### A.  Plaintiff Lacks Standing to Bring its Claims.

Series entities are not separate legal entities. TEX. BUS. ORG. CODE § 101.622. Accordingly, a series entity cannot exist without a parent limited liability company. *Id.* There is little to no case law analyzing the relationship of a series entity to its parent limited liability company, especially in the context of a bankruptcy proceeding. But because the series entity is not a legally separate entity that can exist independent of its parent limited liability company, the bankruptcy court must treat the series entity as part of the limited liability company for purposes of the bankruptcy. Both Eastside and Zaragoza are a series entity of NHS Emergency Centers, LLC, a debtor in this case.

Plaintiff's derivative claims belong to the estate as a matter of law.  Plaintiff admits that its claims for abuse of control, gross mismanagement, and waste of corporate assets are derivative. Plaintiff's claims for negligence, aiding and abetting breach of fiduciary duty, and conspiracy to breach fiduciary duties are also derivative claims despite Plaintiff labelling them as "direct."  All of Plaintiff's derivative claims[4] must be dismissed under Rule 12(b)(1) because the Plaintiff lacks standing to bring such claims.

The dispositive question for claim ownership is "whether the causes of action … are direct claims belonging to [movant] or claims which should be brought in a derivative suit."  *In re Dexterity Surgical, Inc.*, 365 B.R. 690, 695 (Bankr. S.D. Tex. 2007). "[I]f the claims are derivative to the corporation—the claims will belong to the estate." *Id*.

Texas Business Organizations Code section 101.463, which provides that a derivative proceeding brought by a member of a closely held limited liability company may be treated by a court as a direct action brought by the member for the member's own benefit, "does not convert

---

[4] The claims excluded from this 12(b)(1) analysis are negligent misrepresentation and violations of the Texas Securities Act.

derivative claims into direct clams such that they would not be included in a debtor's [] bankruptcy estate."  *In re Black Elk Energy Offshore Operations, LLC*, CASE NO: 15-34287, 2016 WL 4055044, at *4–5 (Bankr. S.D. Tex. 2007) (Isgur, J.).

Instead, "[i]n determining whether a claim is derivative, courts look to state law to determine if the debtor could have raised the claim at the commencement of its case." *Id.* (citing *In re Educators Grp. Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994); *In re Mortgage Am. Corp.*, 714 F.2d 1266, 1276 (5th Cir. 1983)).  "If the claim could have been raised, the claim is derivative and belongs to the estate."  *Id.* (citing *In re Dexterity Surgical, Inc.*, 365 B.R. 690, 695 (Bankr. S.D. Tex. 2007) ("[I]f the claims are derivative to the corporation—the claims will belong to the estate.")).

### 1.  *Plaintiff's undisputed derivative claims.*

In this case, Plaintiff openly asserts derivative claims for abuse of control, gross mismanagement, and waste of corporate assets.  Dkt. No. 17 at ¶¶ 33–35.  Plaintiff does not have standing to bring derivative claims as a matter of law.

The admitted derivative nature of these claims is fatal to Plaintiff's standing, based on *In re Black Elk Energy*, 2016 WL 4055044, at *6.  Specifically, this Court has held section 101.463 does not deprive the trustee of exclusive standing to bring derivative claims belonging to the debtor.  *Id.* ("In certain circumstances, the Texas statute offers procedural benefits to members of limited liability companies, allowing them to pursue derivative actions for their personal benefit.  However, the statute does not convert derivative claims into direct claims such that they would not be included in a debtor LLC's bankruptcy estate.").  These claims should be dismissed as they belong to the estate as a matter of law. *Id.*

Accordingly, Plaintiff's derivative claims for abuse of control, gross mismanagement, and waste of corporate assets must be dismissed under Rule 12(b)(1) because only the trustee has standing to bring them.

## 2. Plaintiff's "direct" claims for negligence and fiduciary-duty are derivative and should be dismissed.

In addition to the admitted derivative claims, Plaintiff asserts "direct" claims for negligence, aiding and abetting breach of fiduciary duties, and conspiracy to breach fiduciary duties. Dkt. No. 17 at ¶¶ 36, 39–41, 45. Despite being labelled as "direct" claims, these claims are derivative because the alleged harm to Plaintiff is only by virtue of harm to the debtor.

"If a cause of action does not explicitly or implicitly allege harm to the debtor, the cause of action could not have been asserted by the debtor as of the commencement of the case." *Floyd v. CIBC World Mkts.*, Inc., 426 B.R. 622, 635 (S.D. Tex. 2009) (citing *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 583 (5th Cir. 2008); *In re Schimmelpenninck*, 183 F.3d 347, 359 (5th Cir. 1999) ("A trustee can assert the general claims of creditors, but is precluded from asserting those creditor claims that are personal.")). "However, if a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate." *Id.* (quoting *Educators Group Health Trust*, 25 F.3d. at 1284) (internal quotation marks omitted). "Whether a specific cause of action belongs to a bankruptcy estate is . . . a matter of law that [the Court] decides by reference to the facial allegations in the complaint." *In re Seven Seas*, 522 F.3d at 583.

In Texas, a cause of action "for injury to the property of a corporation, or the impairment or destruction of its business, is vested in the corporation, as distinguished from its stockholders, even though it may result indirectly in loss of earnings to the stockholders." *Wingate v. Hajdik*,

795 S.W.2d 717, 719 (Tex. 1990); *Wesolek v. Layton*, 871 F.Supp.2d 620, 632 (S.D.Tex.2012);

*Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 249 (Tex. App.—Dallas 2005, no pet.)  A cause

of action that alleges only indirect harm to a creditor by virtue of harm to the debtor, is a derivative

claim owned by the debtor.  *Swank v. Cunningham*, 258 S.W.3d 647, 662 (Tex. App.—Eastland

2008, pet denied).  While this general rule does not preclude a stockholder from recovering

damages for wrongs done to the stockholder individually, provided the wrongdoer violated a duty

owed directly by the wrongdoer to the stockholder, in order to recover individually the stockholder

must prove a personal cause of action and personal injury.  *Linegar v. DLA Piper, LLP (US)*, 495

S.W.3d 276, 279–80 (Tex. 2016) (citing *Wingate v. Hajdik*, 795 S.W.2d 717 (Tex. 1990)).

Here, Plaintiff has no individual harm for these claims and has only plead alleged injuries

that result indirectly from harm to the company.  Specifically, Plaintiff's Third Amended

Complaint makes the following factual recitations in support of its claims:

- "The membership interests in the series [Eastside and Zaragoza] would be owned by [Plaintiff] and an entity to be formed by the Neighbors O&Ds.  The net profits would be split between these two members." Dkt. No. 17 at ¶ 18.

- "Unknown to Plaintiff, S. Patel, in his capacity as officer and director of Neighbors Health, caused Eastside and Zaragoza to enter into lease agreements for lease of the real property and improvements used for the emergency centers at rental rates far above the market rent rates for the area." Dkt. No. 17 at ¶ 23.

- "To provide the needed infusions of capital into these series companies that were experiencing financial losses, … the Neighbors O&D's … caused Neighbors Health to transfer large sums of money out of the bank accounts of Eastside and Zaragoza into the bank accounts of the other series companies…" Dkt. No. 17 at ¶ 24.

- "The Neighbors O&Ds knew that they were obligated to hold Eastside and Zaragoza's net profits in trust for Eastside and Zaragoza so that the funds would be available for distribution to its members." Dkt. No. 17 at ¶ 24.

- "The diversion of Eastside's and Zaragoza's funds … denud[ed] Eastside and Zaragoza of their profits, causing Plaintiff substantial damages in the form of lost distribution of profit."  Dkt. No. 17 at ¶ 24.

- In addition, the Neighbors O&Ds … cooperated with and assisted NHS Emergency … in obtaining additional financing secured by essentially all of the assets of all of the series companies of NHS Emergency, including Eastside and Zaragoza, causing Plaintiff substantial damages…" Dkt. No. 17 at ¶ 25.

In sum, Plaintiff's claims are based on three general alleged actions: (1) entering leases and agreements that were above market rates; (2) transferring money among the series entities; and (3) encumbering property of Eastside and Zaragoza for the benefit of all series.  The only harm that *could* flow from these allegations, if taken as true, is harm to Eastside and Zaragoza.

The specific allegations in each of these "direct" claims also do not allege any personal injury not flowing from an alleged injury to the companies.  Under Texas law, any claim that requires a "demonstration of harm to the corporation in order to succeed" is a derivative claim owned only by the entity, not its shareholders.  *In re Skyport Global Commc'ns, Inc.*, No. 08-36737, 2011 WL 111427, at *25 (Bankr. S.D. Tex. Jan. 13, 2011).

### i.   *Plaintiff's claim for negligence.*

Plaintiff's claim for negligence is based on the Neighbors O&Ds' failure in "preserving the profits of Eastside and Zaragoza for distribution to Plaintiff," breach of duties by "entering into rental and market agreements … for Eastside and Zaragoza at above-market rates," and "transferring the funds of Eastside and Zaragoza to other entities without consideration."  Dkt. No. 17 at ¶ 36.   Any harm flowing from these allegations was suffered first by the company, then by Plaintiff through reduced, or no, distributions.

Accordingly, this claim is derivative and must be dismissed for lack of standing.

ii.  *Plaintiff's aiding and abetting and conspiracy claims based on breach of fiduciary duty.*

While there is no breach of fiduciary duty claim asserted against the alleged fiduciary—Neighbor's Health—Plaintiff asserts claims against the Neighbors O&Ds for aiding and abetting breach of fiduciary duties and conspiracy to breach fiduciary duties.  These claims are based on allegations that the Neighbors O&D's assisted in Neighbors Health's breach of fiduciary duties by "causing or allowing Eastside and Zaragoza to enter into lease and marketing agreement and obligations at costs that were substantially above market cost," and "by transferring Eastside's and Zaragoza's operating funds to other business units."   Dkt. No. 17 at ¶ 40.  As a result of these alleged actions, Plaintiff claims it suffered injuries, "including but not limited to distributions of profits and lost profits."  Dkt. No. 17 at ¶ 41.

Conspiracy and "aiding and abetting" are theories of participatory liability used to establish joint and several liability for those who participate in an agreement to commit a tort. These principles depend on underlying tort alleged.  *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 (Tex. 2001) (holding that conspiracy and "aiding and abetting" were dependent on the underlying fraud claim and thus, summary judgment on the fraud claim necessarily disposed of conspiracy and aiding and abetting); *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) ("[A] defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable.").  Here, Plaintiff's claims for conspiracy and aiding and abetting are based on allegations of some breach of fiduciary duties by Neighbors Health that Plaintiff does not allege. For that reason alone, the aiding and abetting claims must be dismissed.

Even if the aiding and abetting claim had been properly alleged, it would still be derivative. A claim for breach of fiduciary duty against an officer, director, or professional for an event

causing injury to a debtor is property of the estate.  *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 382, 386 (5th Cir. 2009) (By definition then, a cause of action for breach of fiduciary duty owed to the corporation that is property of the corporation at commencement of the chapter 11 case becomes property of the debtor's estate, regardless of whether outside of bankruptcy the case was more likely to be brought by the corporation directly or by a shareholder or creditor through a derivative suit."); *see also La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 245 (5th Cir. 1988); *Floyd v. CIBC World Mkts. Inc.*, 426 B.R. 622, 635 (S.D. Tex. 2009).

Accordingly, because claims for breach of fiduciary duties owed to the debtor company belong to the estate, and because Plaintiff's alleged harm is suffered only indirectly from the company, these claims are derivative.  As derivative claims, Plaintiff lacks standing and the claims must therefore be dismissed.

### B.  Plaintiff's Improper Group Pleading Does Not State a Claim For Which Relief Can Be Granted.

A complaint does not satisfy the requirements of *Iqbal* and *Twombly* if it "Group pleads" by lumping together all defendants and not providing factual basis to distinguish their conduct. *Del Castillo v. PMI Holdings North America Inc.*, Civil Action No. 4:14-CV-3435, 2015 WL 3833447, at * 6 (S.D. Tex. June 22, 2015); *Mendoza v. J.P. Morgan Mortg. N.A.*, No. 7:17-CV-180, 2017 WL 2778250, at *3 (S.D. Tex. June 27, 2017) ("Plaintiffs have not presented any facts to differentiate the conduct of JPMC and SPS. Ultimately, Plaintiffs tender naked assertions without any additional factual support and fail to allege any particular liability of JPMC that differs from SPS as required by this Court."); *Ware v. U.S. Bank Nat. Ass'n*, No. 3:13CV387DPJ-FKB, 2013 WL 6805153, at *4 (S.D. Miss. Dec. 20, 2013) (dismissing claims without prejudice and noting that plaintiffs "should avoid lumping the defendants together and should instead separately

allege the scope of any duties owed and conduct alleged to have breached those duties as to each defendant").

Here, Plaintiff improperly group pleads its allegations against all the "Neighbors O&Ds" in a blatant effort to distract from its threadbare pleadings. Plaintiff's allegations include extensive references to "Neighbors O&Ds," but fail to allege, on a director-by-director basis, any actionable conduct. Indeed, except for listing them as part of the "Neighbors O&D" group, and stating in a footnote the amount each of them invested, the Third Amended Complaint contains not a single reference to anything that Drs. Gilman, Chang, Chen, Henderson, H. Patel, and D. Patel did, actionable or otherwise.

Accordingly, all allegations asserted collectively against "Neighbors O&D's" should be ignored, and the claims based thereon dismissed, for improper group pleading.

### C. Plaintiff's Fiduciary-Duty Claims Fail as a Matter of Law.

Plaintiff's Third Amended Complaint alleges claims for abuse of control, gross mismanagement, and waste of corporate assets. Texas law recognizes no such causes of action. At best, these claims are a mere repackaging of a fiduciary duty claim. *Freuler v. Parker*, 803 F. Supp. 2d 630, 634 (S.D. Tex. 2011). Even if these claims could stand on their own, Plaintiff has failed to plead sufficient detail to make such claims plausible under *Iqbal*. 556 U.S. at 678. Moreover, Plaintiff's claims for aiding and abetting breach of fiduciary duty and conspiracy to breach fiduciary duty fail because they are barred by the business-judgment rule.

> #### 1. *Texas does not recognize independent claims for abuse of control, gross mismanagement, and waste of corporate assets.*

Claims for abuse of control, gross mismanagement, and waste of corporate assets all arise from fiduciary duties. Courts have therefore recognized that these claims merely repackage the same issue under different causes of action rather than as separate torts. *Freuler*, 803 F. Supp. 2d

at 634 (citing *Clark v. Lacy*, 376 F.3d 682, 686–87 (7th Cir. 2004) (applying Delaware law); *In re Zoran Corp. Deriv. Litig.*, 511 F.Supp.2d 986, 1019 (N.D. Cal. 2007)); *see also Wardiman v. Hammon*, Civil Action No. 3:05-CV-2114-N, 2006 WL 8437663, at \*2 (N.D. Tex. July 6, 2006) (questioning whether abuse of control, gross mismanagement, and waste of corporate assets are causes of action under Texas law). Accordingly, the Court should dismiss these "claims" because they are not stand alone causes of action.

### 2. *Plaintiff's Fiduciary-Duty Claims Lack Sufficient Specificity.*

First, Plaintiff group pleads allegations against the Neighbors O&Ds and fails to distinguish between the different roles and responsibilities of the Neighbors O&Ds. The Court cannot reasonably infer which defendants are liable for the alleged misconduct, so the Plaintiff's claims lack facial plausibility. *See Iqbal*, 556 U.S. at 678.

Second, there is no fiduciary relationship that arises from the Management Agreement.[5] The Management Agreement provides that the manager is an "independent contractor." Ex. 3, the Management Agreement at ¶ 7, page 4. The Parties agreed that,

> Management and Company shall not be and are not intended by their execution of this Agreement to become, partners, members, shareholders, affiliates, associates, parent or subsidiary to one another, and the relationship of the parties is purely contractual **and does not establish any agency, fiduciary, or other type of relationship** except as provided herein.

*Id.* (emphasis added). It follows that if the manager, Neighbors Health, does not owe a fiduciary relationship to Zaragoza and Eastside, then neither do the directors and officers of Neighbors Health. Moreover, Plaintiff has not sufficiently pleaded anything that would give rise to any common law fiduciary relationship.

---

[5] Plaintiff attached a copy of the Management Agreement as Exhibit 3 to Plaintiff's Original Petition. Plaintiff's Original Petition is attached hereto as Exhibit A. For simplicity, when referencing herein exhibits attached to Plaintiff's Original Petition, Defendants use the same exhibit references used by Plaintiff in its Original Petition.

Third, for each fiduciary claim, the Plaintiff has failed to plead any facts explaining the basis for those claims. Plaintiff makes conclusory allegations that the Neighbors O&Ds and Neighbors Health "abuse[d] their ability to control and influence Eastside and Zaragoza" (Dkt. No. 17 at ¶ 33), "abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Eastside and Zaragoza in a manner consistent with the operations of a closely held company," (Dkt. No. 17 at ¶ 34) and "by failing to properly consider the interests of Eastside and Zaragoza and its members by failing to conduct proper supervision, the Neighbors O&Ds and Neighbors Health have caused Eastside and Zaragoza to waste valuable corporate assets by paying inflated operations expenses to affiliates" (Dkt. No. 17 at ¶ 35). Even at the pleading stage, Plaintiff still needs to state claims with specificity—conclusory allegations will not suffice. *See Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Here, however, Plaintiff only asserts conclusory allegations and does not explain which Neighbors O&D did what act that constitutes an abuse of control. Dkt No. 17 at ¶ 33. Defendants are left to guess as to what exactly they did that would constitute an "abuse of their ability to control or influence Eastside and Zaragoza." *Id.* at ¶ 33. Similarly, Plaintiff does not explain who abandoned or abdicated what responsibility or fiduciary duty.  *Id.* at ¶ 34. Likewise, Plaintiff does not identify which Neighbors O&D failed to conduct proper supervision and exactly how the Neighbors O&Ds wasted corporate assets.

Thus, even if Plaintiff's claims for abuse of control, gross mismanagement, and waste of corporate assets were viable under Texas law, *see infra* Section II(B), Plaintiff has not alleged sufficient facts to make such claims plausible under *Iqbal* and *Twombly*.

### 3. *Plaintiff's Fiduciary-Related Claims Are Barred by the Business-Judgment Rule.*

"The business judgment rule in Texas generally protects corporate officers and directors, who owe fiduciary duties to the corporation, from liability for acts that are within the honest exercise of their business judgment and discretion." *Sneed v. Webre*, 465 S.W.3d 169, 173 (Tex. 2015). One important outgrowth of the business judgment rule is that courts will not interfere with decisions made by a corporation's officers or directors based on allegations of mismanagement, neglect, or abuse of discretion. *Id.* at 186. Courts typically do not intervene in corporate affairs unless officers or directors commit acts that are *ultra vires*, fraudulent, or oppressive to minority shareholder rights. *Id.*

Plaintiff makes no allegations for why the decisions of the Neighbors O&Ds, made in their capacity as officers and directors, are not covered by the business-judgment rule. *See Sneed*, 465 S.W.3d at 186. Plaintiff concedes that Neighbors Health and Neighbors O&D were responsible for managing the operations and finances of Eastside and Zaragoza. Plaintiffs have failed to plead sufficient facts that the Neighbors D&Os breached their duty of care or their duty of loyalty sufficient to exempt them from the protection of the business-judgment rule. *In re Think3, Inc.*, 529 B.R. 147, 182 (Bankr. W.D. Tex. 2015) ("Although the business judgment rule is used to "defend" corporate actions, a plaintiff must plead enough factual allegations for a court to plausibly infer that the directors or officers breached their duty of care or duty of loyalty."; *see also Kaye v. Lone Star Fund v. (U.S.), LP.,* 453 B.R. 645, 680 (N.D. Tex.2011) (applying Delaware law) (requiring that a plaintiff "plead around" the business judgment rule to survive a Rule 12(b)(6) motion); *see also Reed v. Linehan (In re Soporex),* 463 B.R. 344, 376–77 (Bankr. N.D. Tex.2011) (same); *Notinger v. Costa (In re Robotic Vision Systems, Inc.),* 374 B.R. 36, 48–49 (Bankr. D.N.H. 2007) (same).

Case 18-03276   Document 24   Filed in TXSB on 02/13/19   Page 29 of 44

**D.      Plaintiff's Fraud-Based Claims Fail to Satisfy Rule 9(b).**

       **1.      *Fed. R. Civ. P. 9(b) Apply.***

Federal pleading standards, including Rule 9(b), apply to claims premised on the Texas Securities Act if the claims are asserted in federal court. *Billitteri v. Sec. Am., Inc.*, No. 3:09-CV-1568-F, 2010 WL 6785484, at *5 (N.D. Tex. July 26, 2010) ("[a] plaintiff alleging a violation of 'Texas securities fraud under the TSA,' that is, a violation of article [581-33] of the TSA, must satisfy the heightened pleading requirements of Rule 9(b), but need not plead scienter") (citing *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 344 (5th Cir. 2008)); *see also Melder v. Morris*, 27 F.3d 1097, 1100 (5th Cir. 1994) ("Rule 9(b) requires certain minimum allegations in a securities fraud case, namely the specific time, place, and contents of the false representations, along with the identity of the person making the misrepresentations and what the person obtained thereby."). FED. R. CIV. P. 9(b).  Plaintiff's other claims are also "fraud-based" because they are all intertwined with claims based upon purported misrepresentations and omissions.  Accordingly, the other claims also must meet the same rigorous particularity standard.  *In re Morrison*, 419 B.R. 314, 327 (S.D. Tex. 2009) (Isgur, J.) ("civil conspiracy claim that has a fraud-based element" must satisfy Rule 9(b)).  *In re Sharp Intern. Corp.*, 302 B.R. 760, 770 (E.D.N.Y. 2003) ("Furthermore, to the extent the underlying **breaches of fiduciary duty** are based on fraudulent conduct, the complaint must meet the heightened pleading requirements of Rule 9(b)..." (emphasis supplied)); *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 713 723 (5th Cir. 2003) (The Fifth Circuit applies heightened pleading standard when the "fraud and negligent misrepresentation claims are based upon the same set of alleged facts.")  As set out above in the discussion of Plaintiff's improper group pleading, Plaintiff's breach of fiduciary duty claims lack the required specificity.  As set out below Plaintiff's claims under the Texas Securities Act are also inadequate.

**DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT**                    P a g e | **20**

### 2. *Plaintiff's Texas Securities Act Claims Lack Rule 9(b) Specificity.*

Article 581–33(A)(2) of the Texas Securities Act "imposes liability on [a] person who offers or sells a security ... by means of an untrue statement of a material fact or an omission to state a material fact." *Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.*, 161 S.W.3d 482, 485–86 (Tex. 2005) (internal citations omitted). "An omission or misrepresentation is material if there is a substantial likelihood that proper disclosure would have been viewed by a reasonable investor as significantly altering the total mix of information made available." *Duperier v. Tex. State Bank*, 28 S.W.3d 740, 745 (Tex. App.–Corpus Christi 2000, no pet.). "In other words, the issue is whether a reasonable investor would consider the information important in deciding whether to invest." *Id.* To show that the purchase was consummated by means of untrue statements, the "plaintiff must show [that] the untrue statements were made before the sale occurred." *Pitman v. Lightfoot*, 937 S.W.2d 496, 531 (Tex. App.—San Antonio 1996, writ denied).

### i. *The Third Amended Complaint Fails to Establish the "Who" Under Rule 9(b)*

Once again, Plaintiff offers only group pleadings against the herd it calls "Neighbors O&Ds." Plaintiff must demonstrate *on a director-by-director* basis, that each director made untrue statements, before the sale occurred, that induced Plaintiff to buy securities. *Duperier*, 28 S.W.3d at 745; *Pitman*, 937 S.W.2d at 531. Plaintiff's Third Amended Complaint globally alleges that "NHS Emergency represented to the Plaintiff that the finances of Eastside and Zaragoza would be maintained separate and apart from the other series emergency centers of NHS Emergency, and so long as Eastside and Zaragoza were profitable, that the year-end profits would be distributed to Plaintiff according to its ownership interest." *Id.* at ¶ 43. That allegation cannot be actionable fraud because it is forward-looking and not a statement of an existing fact, but even if it were a statement of existing fact, it would still fail because it is not plead with sufficient particularity.

Allegations that "lump all defendants together, failing to segregate the alleged wrongdoing of one from those of another," do not satisfy the requirements of Rule 9(b). *USA ex rel. Barrett v. Johnson Controls, Inc.*, No. 3:01-CV-1641-M, 2003 WL 21500400, at *10 (N.D. Tex. Apr. 9, 2003). The allegations against the Neighbors O&Ds require additional specificity to satisfy Rule 9(b). The complaint names twelve separate defendants, including eight directors. The complaint then vaguely alleges that all Neighbors O&Ds, "represented" the finances of Eastside and Zaragoza would be maintained separately without any particularity as to who made the specific misrepresentations/omissions. *See In re Urcarco Sec. Litig.*, 148 F.R.D. 561, 569 (N.D. Tex. 1993), *aff'd sub nom. Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994) (finding that the plaintiff's "lumping together" of the "thirteen named defendants, three of which are supposed to represent a defendant class of fifty firms" simply as "defendants" failed to "segregate the alleged wrongdoing of one from those of another do not meet the requirements of Rule 9(b)").

ii.   *The Third Amended Complaint Fails to Establish the "When" or "Where" Under Rule 9(b).*

Plaintiff's Third Amended Complaint wholly fails to address "where" of "when" the misrepresentations/omissions were made. In the context of this suit, Plaintiff's Third Amended Complaint is insufficient because it does not even include a generalized place or time frame. *See U.S. ex rel. King v. Alcon Laboratories, Inc.*, 232 F.R.D. 568, 570–72 (N.D. Tex. 2005) (dismissing fraud claim under Rule 9(b) because the plaintiff "fail[ed] to identify a single specific date on which a false claim was made and, instead, claims that the fraudulent activity occurred on or before January 1, 1998, to present"). Plaintiff's Third Amended Complaint fails to provide fair notice of the "where" and "when" of the claims against the Neighbors O&Ds. *See Siragusa v. Arnold*, No. 3:12-CV-4497-M, 2014 WL 3512988, at *5 (N.D. Tex. July 16, 2014) (dismissing fraud and fraudulent inducement claims under Rule 9(b) because of Plaintiff's failure to allege

when or where misleading statements were made); *see also Atl. Cas. Ins. Co. v. Primelending, a Plainscapital Co.*, Civil Action No. 3:15-CV-1475-D, 2016 WL 1322235, at *4 (N.D. Tex. April 5, 2016) (dismissing claim under Rule 9(b) because "[a]lthough [the plaintiff] alleges that misrepresentations were made, it does not specify any of the other particulars that Rule 9(b) requires, such as when the representations were made, where the representations were made, or the specific identity of the person making the representations").

       iii.     *The Third Amended Complaint Fails to Establish the "How" Under Rule 9(b).*

Plaintiff's Third Amended Complaint fails to explain "how" the Neighbors O&Ds made the misrepresentations. The Third Amended Complaint vaguely states that the Neighbors O&Ds "represented" the finances of Eastside and Zaragoza would be maintained separately. Plaintiff does not allege whether that representation was made in writing or orally, on the telephone, in a meeting, or in person, whether it was made to the general public or just Plaintiff. To satisfy Rule 9(b), Plaintiff's Complaint should be filled with direct quotes with dates. It has none.

The lack of information of exactly who made the alleged misrepresentation, when it was made, where it was made, and how it was made fails to state a claim with the sufficient particularity required under Rule 9(b). *See DT Apartment Grp., L P v. CW Capital, LLC*, No. 3:12-CV-0437-D, 2012 WL 6693192, at *7 (N.D. Tex. Dec. 26, 2012) (dismissing collective allegations under Rule 9(b) because the complaint failed to plead specifically that "any particular defendant misrepresented any material fact," and omitted the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation"). Plaintiff's Third Amended Complaint fails to sufficiently state claims under the Texas Securities Act with particularity against the Neighbors O&D Defendants and therefore must be dismissed.

### 3.  *Plaintiff does not allege a viable control-persons claim.*

Even if the Court permitted Plaintiff to lump the Neighbors O&Ds together as "control persons," the claim is still deficient because a control-persons claim is a secondary claim dependent upon a primary violator. "Both control persons and aiders are jointly and severally liable with the primary violator 'to the same extent as if [they] were' the primary violator." *Darocy v. Abildtrup¸* 345 S.W.3d 129, 137 (Tex. App.—Dallas 2011, no pet.) (quoting *Sterling Trust Co. v. Adderley*, 168 S.W.3d 835, 839 (Tex. 2005)).  Because secondary liability is derivative liability for another person's securities violation, before a party can be held secondarily liable, there must first be a primary violation. *Id. See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1021  n.8 (5th Cir. 1996) ("Because the Plaintiffs have failed to state a claim for any predicate securities fraud offense under § 10(b), Plaintiffs have necessarily failed to state a claim against [Defendant] for 'controlling person' liability under § 20(a).").

To state a control-person claim, the allegations must demonstrate that a putative controlling person has "actual power or influence over the controlled person." *Abbott v. Equity Grp.*, 2 F.3d 613, 620 (5th Cir. 1993); *see also In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 885 (S.D. Tex. 2004) (a securities fraud plaintiff "needs to allege some facts beyond a defendant's position or title to show that the defendant had actual power or control over the controlled person."). Merely holding a position or title, without more, is insufficient to find that person liable as a controlling person." *Cameron v. Outdoor Resorts of Am., Inc.*, 608 F.2d 187, 195 (5th Cir. 1980).

Plaintiff has alleged no facts demonstrating that each of the Neighbors O&Ds had "actual power" to control NHS Emergency, or that any of them could control any other person or entity that is alleged to have committed an underlying securities violation. Plaintiff summarily alleges that the Neighbors O&Ds are "control persons" that controlled NHS Emergency. Plaintiff was required to plead specific facts, on a director-by-director basis,  *see Moore v. Payson Petroleum*

*Grayson, LLC*, No. 3:17-CV-1436-M-BH, 2018 WL 793800, at *5–6 (N.D. Tex. Jan. 22, 2018) (requiring Plaintiff to plead specific allegations with respect to each individual Defendant, despite the fact Plaintiff alleged Defendants were "control persons"); *SEC v. Couch*, No. 3:14-CV-1747-D, 2014 WL 7404127, at *5 (N.D. Tex. Dec. 31, 2014) (finding sufficient particularity when global allegations were made *because the one entity defendant, COG, was a corporation controlled by the one individual defendant*, and COG could only act through the individual defendant officer). *Ricupito v. Indianapolis Life Ins. Co.*, No. 3:09-CV-2389-B, 2010 WL 3855293, at *4 (N.D. Tex. Sept. 30, 2010) (requiring the plaintiffs to identify the corporate agents who allegedly made false statements, because the complaint "strongly implies that the parties communicated in-person on multiple occasions" and the plaintiffs presumably knew the identities of the speakers).

Because Plaintiff failed to plead a claim against the purported primary violator and has failed to plead facts as to how each Neighbors O&Ds "had actual power or control" over a primary violator, the control-person claims must be dismissed.

### E.  Plaintiff's Negligence-Based Claims Fail.

#### 1.  *Plaintiff's Cannot Establish an Independent Legal Duty of Reasonable Care.*

Individual liability for corporate negligence "arises only when [an] officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty." *See Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996). In Plaintiff's Third Amended Petition, Plaintiff alleges that Neighbors O&Ds breached their legal duty to Plaintiff by entering into rental and marketing agreements. Dkt. No. 17 ¶ 36. Plaintiff further alleges that "[u]nknown to Plaintiff, S. Patel, in his capacity as officer and director of Neighbors Health, caused Eastside and Zaragoza to enter into lease agreements for lease of the real property and improvements used for the emergency centers at rental rates far above the market rent rates for the areas." Dkt. No. ¶

23. Because the alleged actions taken by Defendant S. Patel were in his capacity as officer and director, Plaintiff has failed to show that Defendant S. Patel owes an independent legal duty to Plaintiff separate and apart from that of Eastside and Zaragoza.

Plaintiff's claim against the remaining Defendants is even more deficient. Plaintiff has alleged no facts that would implicate the remaining Neighbors O&Ds. Indeed, Plaintiff attempts to disguise its deficient pleadings by globally alleging that the Neighbors O&Ds failed to exercise some unspecified standard of care that would apparently include the reviewing of the individual lease of each location and analysis of whether its rate should be further negotiated. There is no such duty and, even if there was, it would be a duty owed to Eastside and Zaragoza, not to Plaintiff individually. The Court should dismiss this claim because it is not facially plausible on Plaintiff's Complaint that the O&Ds were either negligent or grossly negligent.

### 2.  Business-Judgment Rule Bars Plaintiff's Negligence and Gross Negligence Claim.

As explained above in the discussion of the fiduciary duty claims, Plaintiff offers no plausible explanation for why the decisions that the Neighbors O&Ds made in their capacity as officers and directors are not covered by the business-judgment rule. *See Sneed*, 465 S.W.3d at 186. The business judgment rule applies to negligence claims with the same force as breach of fiduciary duty claims. Accordingly, Plaintiff's negligence and gross negligence claims also fail because the decisions Plaintiff claims were negligent were also within the O&Ds business judgment.

### 3.  Plaintiff has not pleaded sufficient facts for a negligent misrepresentation claim.

As with their other claims, Plaintiff impermissibly lumps all of the Neighbors O&Ds together and fails to allege what false information each Neighbors O&D provided on a director by director basis. Plaintiff only identifies two actors who purportedly made false representations, Drs.

S. Patel and Alleyne. The allegations against those two are hopelessly vague. Plaintiff has alleged no facts ***at all*** that would support a negligent misrepresentation claim against the remaining Neighbors O&Ds.  Accordingly, the Court should, at a minimum, dismiss this claim with respect to the unidentified Neighbors O&Ds.

### F.  Plaintiff's Own Documents Defeat Plaintiff's Claims.

Plaintiff's claims in its Third Amended Complaint are belied by documents that Plaintiff signed to effectuate the very transaction on which they now claim they were defrauded.  Plaintiff attempts to avoid those documents in its Third Amended Complaint, but the law is clear that this Court can consider them.

### a.  The Court Can, and Should, Consider the Exhibits to Plaintiff's Prior Petitions.

In considering a motion to dismiss—and ***without*** converting the motion into one for summary judgment—this Court can consider the Complaint, documents referenced in the complaint, and documents of which the Court can take judicial notice.  While courts always look at the Complaint and its exhibits, the Fifth Circuit has found that even documents not attached to the plaintiff's complaint may be considered on a motion to dismiss.  In *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007), the Fifth Circuit considered insurance contracts not attached to the complaint and explained that "because those defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to plaintiffs' claims, [the court] may consider the terms of the contracts in assessing the motions to dismiss." *Id.* at 205.

Further, the reference to the documents need not be explicit.  It is sufficient if the plaintiff alleges the transaction to which the documents relate and claim that the defendants had duties that the documents disclaim.  *Bhatia v. Dischino*, Civil Action No. 3:09-CV-1086-B, 2010 WL

1236406, at *4 (ND Tex. 2010) (finding that at motion to dismiss stage court could consider a service agreement that plaintiff "indirectly referenced" by making allegations regarding plaintiff's "reasons for hiring" and "duties they expected" from defendant).  When a plaintiff claims he relied upon a representation made by the defendant, the court may consider documents that prove no such representation was made or that plaintiff promised not to rely on any such representation. . *See Bhatia v. Dischino,* ("Dischino II") Civil Action No. 3:09-CV-1086-B, 2011 WL 3820825, at *6 (ND Tex. 2011) (considering documents not attached to plaintiffs' first amended complaint where "The [plaintiffs] repeatedly reference representations made by [the Defendants] . . . as well as their reliance upon those representations in the First Amended Complaint.").  Even implicit references will suffice.  *In re Lyondell Chemical Co.*, 491 B.R. 41, 48 (Bankr. S.D. N.Y. 2013) ("Court may consider other documents, which [plaintiff] elected not to reference expressly in its Complaint.") *affd.* 505 B.R. 409.

When documents are central to a plaintiff's claim, the plaintiff cannot avoid their consideration on a motion to dismiss, even if the plaintiff chooses not to attach them to the complaint.  As the Fifth Circuit held in *Carter v. Target Corp.,* where "issues are central to [the plaintiff's] pleadings . . . her failure to include them does not allow her to bypass [defendants'] motion to dismiss unexamined." 541 Fed.Appx. 413, 417 (5th Cir. 2013).  "[P]laintiffs cannot willfully close their eyes to documents in their possession and integral to their claims."  *In re Lyondell*, 491 B.R. at 50.  As the Fifth Circuit recognized in *Collins v. Morgan Stanley Dean Witter*, "In so attaching [such documents to its motion to dismiss], the defendant merely assists the plaintiff in establishing the basis for the suit, and the court in making the elementary determination of whether a claim has been stated."  224 F.3d 496, 499 (5th Cir. 2000).

In cases where the plaintiff claims to have been defrauded in a securities transaction (as Plaintiff does here), the Fifth Circuit has recognized that offering documents filed with the SEC can be considered.  *Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015 (1996).  The court can also consider documents of which it takes judicial notice, including filings in related litigation. *In re Lyondell*, 491 B.R. at 48.

The documents attached to this motion plainly fall well within the guidelines outlined in the cases above and therefore do not operate to convert this motion into a motion for summary judgment.  The two documents are the Series Agreements that established the entities in which Plaintiff invested and the Series Interest Purchase Agreements by which Plaintiff made that investment.  These documents could not be more central to Plaintiff's claims as without them Plaintiff would have no relationship with any defendants and no conceivable basis for bringing claims.  When Plaintiff states in its Complaint that "NHS Emergency formed NHS Emergency Centers, LLC Series 114 – Eastside ('Eastside') and NHS Emergency Centers, LLC Series 115 – Zaragoza ('Zaragoza')" (Dkt. 17 at ¶ 20), Plaintiff is referring to the fact that Plaintiff and Defendant Neighbors Health System executed the Series Agreements that are Exhibit 5 to Plaintiff's Original Petition.  Likewise, when Plaintiff claims in its Complaint that it "paid NHS Emergency $500,000.00 to purchase 6,500 Class B non-voting series membership interests . . . representing 65% of the series interest in Eastside and Zaragoza" (Complaint ¶ 20), Plaintiff is referring to the fact that Plaintiff and Neighbors Health executed the Series Interest Purchase Agreements that are Exhibits 1 and 2 to Plaintiff's Original Petition, because it is those documents that provide that "The Company hereby sells, transfers, conveys and sets over to [Plaintiff] 6500 shares of the Company's Class B Series Shares [for] the purchase price of $500,000."   Exhibits 1 and 2 § 1 to Plaintiff's Original Petition.   Plaintiff obviously recognizes how central these

documents are because Plaintiff previously attached these same documents to Plaintiff's Original

Petition, First Amended Petition, and Second Amended Petition.  Plaintiff's strategic decision to

omit them from its latest Complaint is Plaintiff simply trying to "bypass [defendants'] motion to

dismiss unexamined" (*see Carter v. Target Corp.* at 417) and "willfully close their eyes to

documents in their possession and integral to their claims" (*see In re Lyondell* at 50).  Because the

documents are central to this case, are referenced in the Third Amended Complaint, and are part

of the record from being previously attached to the state court petitions, this Court has the authority

to consider the documents under a 12(b) analysis.

### b.  The Series Interest Purchase Agreements Belie Plaintiff's Claims that it Relied on Some Alleged Oral Representations.

Plaintiff claims that NHS Emergency misrepresented that "the finances of Eastside and

Zaragoza would be maintained separate and apart from the other series emergency centers of NHS

Emergency." Dkt. 17 at  ¶ 37.  All of Plaintiff's claims are based primarily on these same factual

allegations.   But the documents show that Plaintiff cannot possibly recover on any such

representation.

The Series Interest Purchase Agreements (Exhibits 1 and 2 to Plaintiff's Original Petition)

contain no such representations and by execution of the agreements, Plaintiff disclaimed any

reliance of such alleged representations.   Specifically, in those agreements, the Plaintiff

represented and warranted that Plaintiff's "decision to purchase [the interests] is not based on any

representation, statement, financial statement or projection or other inducement of any nature,

written or oral, whatsoever except the statements, representations and warranties made herein."

(Exhibits 1 and 2 to Plaintiff's Original Petition at § 4).  In the same documents, Plaintiffs also

agreed that "[t]here are no verbal understandings or agreements of any nature whatsoever between

the Company and [Plaintiff] relating to any matter, including the purchase and sale of the Shares."

Exhibits 1 and 2 to Plaintiff's Original Petition at § 8.  Plaintiff simply cannot recover on any

alleged representation that is not in the Series Interest Purchase Agreements it signed.

> **c.  The Series Agreements also Belie Plaintiff's Claim that It Thought Its Series Finances Would be Separate and Not Pledged as Collateral.**

Plaintiff claims that Defendants somehow acted improperly when "unbeknownst to Plaintiff"

they "obtain[ed] additional financing secured by essentially all of the assets of all of the series

companies of NHS Emergency, including Eastside and Zaragoza" (Complaint ¶ 25).  The Series

Agreements attached as Exhibits 1 and 2 to Plaintiff's Original Petition show that that financing

was not "unbeknownst to Plaintiff."  Quite the contrary, when Plaintiff entered into Exhibits 1 and

2, NHS Emergency explicitly told them, in writing, in those agreements that "NHS Emergency

Centers, LLC and/or the Series may from time to time enter into credit, guaranty or similar loan

agreements with one or more commercial lenders (collectively the 'Loan Agreements')."  (Exhibits

1 and 2 to Plaintiff's Original Petition at § 1H).  But it did not stop there, because in the next

sentence of those same documents that Plaintiff signed the "Members" (of whom Plaintiff was

one) acknowledged that they "hereby consent to the imposition of liens, security interests,

mortgages or other encumbrances upon the Series Property (as defined in Section 5 of this

Agreement) pursuant to the terms of the Loan Agreements."  (Exhibits 1 and 2 to Plaintiff's

Original Petition at § 1H).  But, it did not even stop there, because in the next sentence the Plaintiff

also acknowledged that such loans might not benefit Plaintiff's series at all:  "The Members [one

of whom was Plaintiff] hereby waive the right to challenge the making or enforceability of any

guaranty by NHS Emergency Centers, LLC or by the Series on the grounds that such guaranty

cannot reasonably be expected to benefit NHS Emergency Centers, LLC or the Series."  (Exhibits

1 and 2 to Plaintiff's Original Petition at § 1H).  The Plaintiff knew their series' assets would

secure financing provided to all of the series.  If Neighbors did not pay its lenders, Plaintiff's

series' assets could be seized regardless of how profitable their centers might (or, in fact, in the case of the Zaragoza center, which Neighbors decided to close in October 2017[6], might ***not***) be. If one center was unprofitable, funds from other Series had to be used to pay that series "share" under the Loan Agreements, because all of the series' assets were pledged to the same Loan Agreements.

### G.  The Records of the Neighbors Bankruptcy Also Belie Plaintiff's Claim of an Above-Market Lease.

Plaintiff also claims that "S. Patel, in his capacity as officer and director of Neighbors Health, caused Eastside and Zaragoza to enter into lease agreements for lease of the real property and improvements used for the emergency centers at rental rates for above the market rent rates for the areas." Dkt. No. 17 at ¶ 23. Plaintiff fails to plausible plead why Dr. S. Patel, who was also a Member of Series 114 and Series 115, would want those Series to enter into above-market leases and, again, documents already before the Court belie Plaintiff's claim.  After the Neighbors bankruptcy was filed, however, the debtor had the right to reject any lease it felt was "above the market rent rates for the area."  Here, the debtor did not reject the lease for Eastside and Tenet—which bought Eastside assets—did not want it rejected either.[7]  To the contrary, the documents in the bankruptcy record show that Tenet wanted to keep that lease:  "Desired 365 Contract Status – NEC Eastside Emergency Center, LP – Lease Agreement - **Yes. Keep**. Note: Real Property Lease for Subject Location."  Dkt. 516-5 at p. 37 of 38 (emphasis supplied); see also Dkt. E 626.

### H.  The Court Should Dismiss the Third Amended Complaint with Prejudice.

The Third Amended Complaint currently before this Court is Plaintiff's fourth attempt to state a claim. And while most plaintiffs get no discovery until after they have stated a claim, the

---

[6] See Plaintiff's Original Petition ¶ 85 ("Defendants have served notice that the free-standing emergency center linked to Zaragoza will be closed down effective November 6, 2017.")
[7] As Zaragoza was closed prior to bankruptcy, there was no longer a lease to reject.

Plaintiff here received over 5,000 pages from Neighbors, as well as interrogatory responses from other defendants before this case was removed to this Court.  Still, Plaintiff has not come close to properly pleading a viable claim.  While courts generally favor granting leave to replead, "leave to amend is by no means automatic" and courts have not hesitated to declare enough is enough in circumstances where the has been "repeated failure to cure deficiencies by amendments previously allowed."  *In re Dynegy, Inc. Securities Litig.*, 339 F. Supp.2d 804, 921 (S.D. Tex. 2004 (J. Lake)); *Goldstein v. MCI WorldCom*, 340 F.2d 238, 254–55 (5th Cir. 2003); *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) ("district court acted well within its discretion in concluding that plaintiffs should not be afforded yet another opportunity to replead."). Additionally, re-pleading these claims is futile because no manner of re-pleading will grant Plaintiff standing to assert the derivative claims for the reasons stated above.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's Complaint must be dismissed.

Dated this 13th day of February, 2019.

/s/ James G. Munisteri

James G Munisteri
Foley Gardere
Foley & Lardner, LLP
1000 Louisiana
Ste 2000
Houston, TX 77002
713-276-5500
Email: jmunisteri@foley.com

Counsel for Michael Chang, M.D., Andy
Chen, M.D., Quang Henderson, M.D. and
Hitesh Patel, M.D.

/s/ Millard A. Johnson

Millard A Johnson
Johnson DeLuca Kennedy & Kurisky,
P.C.
1221 Lamar
Ste 1000
Houston, TX 77010
713-652-2525
Fax : 713-652-5130
Email: mjohnson@jdkglaw.com

Counsel for Paul Alleyne, M.D. and Cyril
Gillman, M.D.

Paul D. Flack

Paul D Flack
Pratt and Flack LLP
1331 Lamar Street
Suite 1250
Houston, TX 77010
713-705-3087
Email: pflack@prattflack.com

Counsel for Setul G. Patel, M.D.

**Certificate of Service**

The undersigned hereby certifies that all Parties of record were duly served with this Motion via

ECF/CMF delivery on February 13, 2019.


*/s/ James G. Munisteri*
James G Munisteri