IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| NEIGHBORS LEGACY HOLDINGS, INC., | § | CASE NO. 18-33836-H1-11 |
| | § | (Chapter 11) |
| Debtor. | § | |

| | | |
|---|---|---|
| INFINITY EMERGENCY MANAGEMENT | § | |
| GROUP, LLC, Individually and as Class B | § | |
| Non-Voting Members on Behalf of | § | |
| NHS Emergency Centers, LLC Series 114 - | § | |
| Eastside and NHS Emergency Centers, LLC | § | |
| Series 115 – Zaragoza, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | ADV. P. NO. 18-3276 |
| | § | |
| MARK SHAPIRO, Trustee of the Unsecured | § | |
| Creditors' Trust, Successor-In-Interest to | § | |
| Neighbors Health System, Inc.; | § | |
| NEIGHBORS INVESTMENT GROUP, LLC, | § | |
| SETUL G. PATEL, M.D., | § | |
| Individually and in his capacity as officer | § | |
| and director; PAUL ALLEYNE, M.D., | § | |
| Individually and in his capacity as officer and | § | |
| director; CYRIL GILLMAN, M.D., | § | |
| Individually and in his capacity as officer and | § | |
| director; MICHAEL CHANG, M.D., | § | |
| Individually and in his capacity as officer and | § | |
| director; ANDY CHEN, M.D., | § | |
| Individually and in his capacity as officer and | § | |
| director; QUANG HENDERSON, M.D., | § | |
| Individually and in his capacity as officer and | § | |
| director; HITESH PATEL, M.D., | § | |
| Individually and in his capacity as officer and | § | |
| director; AND DHARMESH PATEL, M.D., | § | |
| Individually and in his capacity as officer and | § | |
| Director, | § | |
| | § | |
| *Defendants.* | § | |

**PLAINTIFF'S FOURTH AMENDED COMPLAINT**

1

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

COMES NOW, INFINITY EMERGENCY MANAGEMENT GROUP, LLC, Individually and as Class B Non-Voting Members on behalf of NHS Emergency Centers, LLC Series 114 – Eastside and NHS Emergency Centers, LLC Series 115 – Zaragoza ("Plaintiff"), Plaintiff in the above styled adversary, and files this Plaintiff's Fourth Amended Complaint, and for cause of action would show as follows:

**I.**

**Jurisdiction and Venue**

1.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).  The claims in the adversary are "related to" claims, not "core."  Pursuant to 28 U.S.C. § 157(c)(1), the bankruptcy judge may hear the proceeding and submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matter to which any party timely objects.

**II.**

**Parties**

2.  Plaintiff Infinity Emergency Management Group, LLC is a Texas limited liability company, with its principal place of business located in El Paso, El Paso County, Texas.

3.  Defendant Mark Shapiro, Trustee of the Unsecured Creditors' Trust, is the Success-in-Interest to Neighbors Health System, Inc., has appeared as the substitute party for that debtor defendant, has intervened with claims, and may be served by and through his counsel of record, Cliff Walston, Walston Bowlin, LLP, 4299 San Felipe Street, Suite 300, Houston, Texas 77027.

4.   Defendant Neighbors Investment Group, LLC ("Neighbors Investment") is a Texas limited liability company that has answered and appeared and may be served by and through its counsel of record, Staton M. Childers, Adams and Reese, LLP, 1221 McKinney, Suite 4400, Houston, Texas 77010.

5.   Defendant Setul G. Patel, M.D., in his capacity as an officer and director, is an individual who has answered and appeared and may be served by and through his counsel of record Paul D. Flack, Pratt and Flack, LLP, 4306 Yoakum Blvd., Suite 500, Houston, Texas 77006.

6.   Defendant Paul Alleyne, M.D., in his capacity as an officer and director, is an individual who has answered and appeared and may be served by serving his counsel of record Millard A. Johnson, Johnson DeLuca Kennedy & Kurisky, P.C., 1221 Lamar, Suite 1000, Houston, Texas 77002.

7.   Defendant Cyril Gillman, M.D., in his capacity as an officer and director, is an individual who has answered and appeared and may be served by serving his counsel of record Millard A. Johnson, Johnson DeLuca Kennedy & Kurisky, P.C., 1221 Lamar, Suite 1000, Houston, Texas 77002.

8.   Defendant Michael Chang, M.D., in his capacity as an officer and director, is an individual who has answered and appeared and may be served by serving his counsel of record Jay Munisteri, Foley Gardere, 1000 Louisiana, Suite 2000, Houston, Texas 77002.

9.   Defendant Andy Chen, M.D., in his capacity as an officer and director, is an individual who has answered and appeared and may be served by serving his counsel of record Jay Munisteri, Foley Gardere, 1000 Louisiana, Suite 2000, Houston, Texas 77002.

10. Defendant Quang Henderson, M.D., in his capacity as an officer and director, is an individual who has answered and appeared and may be served by serving his counsel of record Jay Munisteri, Foley Gardere, 1000 Louisiana, Suite 2000, Houston, Texas 77002.

11. Defendant Hitesh Patel, M.D., in his capacity as an officer and director, is an individual who has answered and appeared and may be served by serving his counsel of record Jay Munisteri, Foley Gardere, 1000 Louisiana, Suite 2000, Houston, Texas 77002.

12. Defendant Dharmesh Patel, M.D., in his capacity as an officer and director, is an individual who has answered and appeared and may be served by serving his counsel of record Christina Minshew Lewis, Moyer Patton, 11767 Katy Freeway, Suite 990, Houston, Texas 77079.

13. Dr. Paul Alleyne, Dr. Cyril Gillman, DR. Michael Chang, Dr. Andy Chen, Dr. Quang Henderson, Dr. Setul Patel, Dr. Hitesh Patel, and Dr. Dharmesh Patel are hereinafter collectively referred to as the "Neighbors O&Ds" or the "Gang of Eight."

## III.

### Background Facts

14. Dr. Samara Bowen, MD is a physician specializing in emergency medicine services practicing in the El Paso, Texas area. Her husband, Jermaine Bowen, runs the financial aspects of her practice. In 2013, the Bowens leaned about a new business opportunity in Texas for emergency medicine physicians to own and operate freestanding emergency departments ("FEDs") independent of hospitals. The Bowens decided to research the FED opportunity. After researching the possibilities, they decided to move forward with opening their own FED. They discussed the opportunity with several of Dr. Bowen's physician colleagues and assembled a group of other interested emergency medicine physicians.

4

15. In mid-2014, the Bowens heard about a separate group of doctors based out of Houston who had already launched several of their own FEDs and were looking to partner with other doctors outside of Houston to launch FEDs in other cities. Dr. Paul Alleyne approached the Bowens about a possible business venture with a company he represented that he and other doctors were already running called NHS Emergency Centers, LLC.   Dr. Alleyne told the Bowens that NHS Emergency Centers, LLC already had several FEDs open and operating profitably under the "Neighbors Emergency Center" brand.

16. On July 11, 2014, Dr. Paul Alleyne and Dr. Setul Patel came to El Paso and made a presentation to the Bowens and several other emergency medicine physicians in their group at the El Paso Coronado Club about the possible business investment.   The Bowens informed Dr. Alleyne and Dr. Patel about the vast emergency medicine market in the Midland/Odessa and El Paso, Texas areas and that these would be great locations to open FEDs.   The Bowens further informed them that they were looking into opening sites in these two cities. Dr. Alleyne and Dr. Patel informed the Bowens that partnering with them would make the process of opening new FEDs easier and quicker, because they already had the experience and the working model in place from their previous four centers in Houston.   Dr. Alleyne and Dr. Patel further stated that since their group had already obtained a $30 million dollar loan, the Bowens would not have to take out personal loans and personally guarantee any of those loans in order to open FEDs on their own. They told the Bowens that once the FEDs opened, the FEDs would simply repay their portion of the funds from the Neighbors' bank loan that was used to build out the interior of the FEDs from revenue generated by the FEDs.   The FEDs would be owned and operated by series LLCs that NHS Emergency Centers, LLC would form.   The Bowens' group would own the majority percentage of the series LLCs and run the businesses, including staffing the businesses

as owners/operators. Dr. Alleyne and Dr. Patel and their fellow non-active co-owners would own a percentage of these series LLCs as well.

17. At the meeting, and following the meeting in telephone conversations, emails and texts, Dr. Paul Alleyne and Dr. Setul Patel made numerous statements and representations to the Bowens and their group of emergency physician about how the business venture would work. The represented that the series LLCs would hire an affiliate of NHS Emergency Centers, LLC named Neighbors Health System, Inc. for a negotiated monthly fee to provide all the back-office administrative support services for the FEDs.  Dr. Alleyne and Dr. Patel represented that the staff emergency physicians in the Bowens' group would be independent contractors of the businesses and the revenue from the physician services billing would go into the series LLCs.  They represented that the real property leases and improvements and equipment would be held in separate limited partnerships, the limited partnership interests of which would be owned by the series LLC entities.  The limited partnerships would hold the facility billing numbers, provide the facility billing, and return net revenue from the facility fees to the series LLC entities. Dr. Setul Patel and Dr. Paul Alleyne represented that the Bowens' group of emergency physicians would staff and run the El Paso FEDs, and NHS Emergency Centers, LLC's affiliate Neighbors Health System, Inc. would provide back-office management services for the El Paso FEDs.  They further represented that Neighbors Health System, Inc. would manage the El Paso FEDs separate and apart from all other series FEDs, keep their funds segregated, safeguard their profits, and pay the Bowens' group its share of net profits periodically as available.  Dr. Paul Alleyne and Dr. Setul Patel represented that the El Paso FEDs would break-even within 6-months and the Bowens' group would start seeing membership distribution payout at around 3-months after opening.

18. After hearing the live presentation by Dr. Paul Alleyne and Dr. Setul Patel and the numerous representations made by them after the meeting, the Bowens' group decided to move forward and partner with Dr. Alleyne and Dr. Patel's group of physicians in setting up and operating two FEDs in the El Paso area. They began negotiating the ownership split. The parties ultimately agreed on 65% for the Bowens' group for a $500,000 capital contribution investment per FED, with the contribution to be used to fund cashflow of the operation until the FED became profitable.

19. NHS Emergency Centers, LLC formed Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC to own and operate the two El Paso FEDs. The Bowens' group formed Infinity Emergency Management Group, LLC as a vehicle to own membership interests in those series LLCs. The Neighbors O&Ds formed Neighbors Investment Group, LLC as a vehicle to own membership interests in those series LLCs as well.  Relying on Dr. Paul Alleyne's and Dr. Setul Patel's representations, Infinity Emergency Management Group, LLC paid NHS Emergency Centers, LLC $500,000.00 to purchase 6,500 Class B non-voting series membership interests in Series 114 – Eastside, LLC and another $500,000.00 to purchase 6,500 Class B non-voting series membership interests in Series 115 – Zaragoza, LLC.  These interests represented a total of 65%[1] of the series interests in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC. Neighbors Investment Group, LLC paid NHS Emergency Centers, LLC a total of $35,990.00 to purchase Class A voting series membership interests in Series 114 – Eastside, LLC and Series 115 –

---

[1] The federal income tax return for Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC reflected 65.7% membership interest owned by Plaintiff and 34.3% membership interest owned by Neighbors Investment Group, LLC.

Zaragoza, LLC representing a total of 34% of the series interests in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC.[2]

20. Relying on Dr. Paul Alleyne's and Dr. Setul Patel's representations, Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC entered into Series Management and Administrative Services Agreements with Neighbors Health System, Inc.  Relying on these representations, Plaintiff agreed to devote its group of emergency physicians completely to staffing the two El Paso FEDs.  The Neighbors O&Ds, in their capacity as officers and directors of Neighbors Health Services, Inc., made all decisions as manager of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC. Neighbors Health Services, Inc., as manager of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC, owed a fiduciary duty to these series entities and to Plaintiff as member of the series LLCs.

21. Neighbors Health System, Inc. worked with a real estate broker named Read King, Inc. to locate sites for the two El Paso FEDs.  The Plaintiff was involved in some of the real estate development conferences and assisted Read King, Inc. in locating the El Paso sites.  One site located was just off Texas Hwy. 375 at 12101 Edgemere, El Paso, Texas 79938 (the "Eastside FED"). The other site located was on N. Zaragoza Road between I-10 and Hwy. 375 at 1540 Zaragoza Road, El Paso, Texas 79936 (the "Zaragoza FED").  Since the Zaragoza FED was located first, the parties anticipated that it would be open and operating prior to Eastside FED.

22. NEC Zaragoza Emergency Center, LP was formed to serve as the vehicle to lease the real property, obtain the loan for the buildout of the improvements, and purchase and/or lease the

---

[2] Dr. Setul Patel paid $5,23.75, Dr. Dharmesh Patel paid $5,123.75, Dr. Cyril Gilman paid $5,123.75, Dr. Paul Alleyne paid $5,123.75, Dr. Andy Chen paid $5,123.75, Dr. Michael Chang paid $5,123.75, Dr. Quang Henderson paid $5,123.75, Dr. Hitesh Patel paid $5,123.75, and Neighbors GP, LLC paid $10.00.

office and medical equipment needed for the Zaragoza FED.  NEC Zaragoza Emergency Center, LP signed a long-term lease agreement for the real property at the Zaragoza FED location. Similarly, NEC Eastside Emergency Center, LP was formed to serve as the vehicle to lease the property, obtain a loan for construction of improvements, and purchase and/or lease the office and medical equipment needed for the Eastside FED.  NEC Eastside Emergency Center, LP signed a long-term lease agreement for the real property at the Eastside FED location.

23. Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC were owner/operators and were responsible for the income-generating emergency medicine physician clinical staffing of the Eastside and Zaragoza FEDs. Infinity Emergency Management Group, LLC participated in and contributed to Series 114 – Eastside, LLC's and Series 115- Zaragoza, LLC's business operations by interviewing and hiring non-medical staff personnel and participating and contributing to local sales and marketing strategies and contracts. Infinity Emergency Management Group, LLC provided the emergency room physician staffing for the Eastside and Zaragoza FEDs and oversaw all emergency medical services operations on behalf of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC.   The doctors of Infinity Emergency Management Group, LLC provided emergency medicine services to patients 24 hours a day, 7 days a week, seeing patients in need of emergency services through check-in, treatment, and discharge. Neighbors Health System, Inc. assisted Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC with their patient/insurance billing, collection of accounts receivable, payment of vendor payables, IT issues, banking and financial accounting (or so Plaintiff was led to believe by the Neighbors O&Ds and in fact did believe).

24. Neighbors Health System, Inc., as manager of these series LLCs, represented to Plaintiff that all funds over a cash reserve of $600,000 would be distributed as quarterly profits,

and under the terms of the Series Agreement and the Management Agreement, paid out the Series' net profit to the Series' membership interest owners. The Neighbors O&Ds caused Neighbors Health System, Inc. to create financial statements purporting to be from Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC reflecting income and expenses and net profit of those series entities.  The Neighbors O&Ds represented to Series 114 – Eastside, LLC Series 115 – Zaragoza, LLC and the Plaintiff, that these financial statements reflected net profit from the operation of the Eastside and Zaragoza FEDs (including revenue from physician service fees and facility fees) owned and operated by Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC. The Plaintiff relied on these representations in continuing in the business venture and in continuing to devote all of its emergency physicians to the Eastside and Zaragoza FEDs.

25. Through 2015 and 2016, the Eastside and Zaragoza FEDs operated successfully and profitably.  Neighbors Health System, Inc. provided to Plaintiff what it and the Neighbors O&Ds represented was the accounting of the net profits to the Plaintiff, and the Plaintiff received what Neighbors Health System, Inc. and the Neighbors O&Ds represented was Plaintiff's share (65%) of the net profits of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC.  The Plaintiff had no reason to think that anything was wrong with its investment in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC.  As far as the Plaintiff could tell, everything was going exactly as represented by the Neighbors O&Ds - until early 2017 - when the Neighbors O&Ds informed the Plaintiff that there would be no net profit distribution for the 4th quarter of 2016. The Plaintiff was shocked, as operations at the Eastside and Zaragoza FEDs indicated that business was good and Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC had continued to be profitable.  Neighbors Health System, Inc., through Dr. Paul Alleyne, Dr. Setul Patel, and other officers of Neighbors Health System, Inc., eventually admitted to the Plaintiff

that they had been transferring funds from Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC to other unprofitable business ventures that were losing money in order to keep those other ventures afloat.  Neighbors Health System, Inc. further revealed that it had entered a credit facility and collateralized the credit facility with the assets of all of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC.

26. The Plaintiff has since, in its investigations, learned that Dr. Paul Alleyne and Dr. Setul Patel had falsely represented how the Neighbors O&Ds, through Neighbors Health System, Inc., would actually manage and operate the business of Series 114 – Eastside, LLC and Series 115 –Zaragoza, LLC.  Unknown to Plaintiff, S. Patel, in his capacity as officer and director of Neighbors Health Services, Inc., caused the Eastside and Zaragoza FEDs to be charged rental rates far above the market rent rates for the areas.  The Neighbors O&Ds, in dereliction of their fiduciary duties, created separate partnership entities with Read King, Inc. to purchase the real property and improvements being leased to the Eastside and Zaragoza FEDs.  Thus, the Neighbors O&Ds were able to profit individually from ownership of the real property and improvements and exorbitant lease fees at the expense of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC, which robbed the Plaintiff of its share of the net profits in those series LLCs.  The Neighbors O&Ds also used their positions with Neighbors Health System, Inc. to establish a business system for the Eastside and Zaragoza FEDs different than what was represented to Plaintiff.  They never opened any bank accounts in the name of Series 114 – Eastside, LLC or Series 115 – Zaragoza, LLC and instead opened bank accounts only in the name of NEC Eastside Emergency Center, LP and NEC Zaragoza Emergency Center, LP, the limited partnerships formed to own the leasehold, improvements and equipment of the Eastside and Zaragoza FEDs.

27. In addition, the Neighbors O&Ds, through their control of Neighbors Health System, Inc., caused the physician service fees of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC to be billed through a separate entity that was owned and controlled by the Gang of Eight, Neighbors Physician Group, LLC.  That entity then collected the revenue stream from those physician service fees, failed to cause those collections to be deposited back into Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC respectively, failed to calculate that revenue stream on the financial reports, and failed to distribute net profit to Plaintiff with those service fees included as revenue in the calculation of net profits. The Neighbors O&Ds also caused all facility fee billing revenue to be deposited into the bank accounts established in the names of NEC Eastside Emergency Center, LP and NEC Zaragoza Emergency Center, LP, paid all operating expenses of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC from the funds in those accounts, and determined the net profits to distribute to Plaintiff from the income and expenses in those accounts. The Neighbors O&Ds represented to the Plaintiff that all revenue generated by the operation of the Eastside and Zaragoza FEDs, the facility fees and the physician fees, would be maintained and safeguarded separately for Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC. They represented that the Plaintiff would receive its share of the net profits from these revenues.  Instead, the Neighbors O&Ds caused the revenue generated from physician service fees that were collected to be kept in Neighbors Physician Group, PLLC instead of disbursing it to Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC.  The Neighbors O&Ds caused the funds to be disbursed instead to other unprofitable business ventures that the Gang of Eight controlled.  The Neighbors O&Ds kept these funds from Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC, and the Plaintiff never received net profit distributions from those funds.  The Neighbors O&Ds then secretly transferred funds that were

generated by Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC's operation of the Eastside FED and the Zaragoza FED to their other series FEDs and other unprofitable businesses that were losing money and in need of cash infusion.  The Neighbors O&Ds failed to disclose the transfers to Plaintiff.  The Neighbors O&Ds knew that they were obligated to hold Series 114 – Eastside, LLC's and Series 115 – Zaragoza, LLC's net profits in trust for Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC so that the funds would be available for distribution to Plaintiff.  The diversion of Series 114 – Eastside, LLC's and Series 115 – Zaragoza, LLC's funds by the Neighbors O&Ds, in their capacity as officers and directors of Neighbors Health Services, Inc., continued throughout 2015, 2016, 2017, and 2018, denuding Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC of their profits, and causing Plaintiff substantial damages.

## IV.

## <u>Claims and Causes of Action</u>

28. Plaintiff brings this action in part derivatively in the right and for the benefit of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC to redress injuries suffered, and to be suffered, by Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment, as well as aiding and abetting of it, by the Neighbors O&Ds. To be clear, these claims are not the claims that Mark Shapiro, Trustee of the Unsecured Creditors' Trust, is bringing on behalf of NEC Eastside Emergency Center, LP and NEC Zaragoza Emergency Center, LP.

29. This is in part a derivative action brought by Plaintiff as a Class B non-voting member of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC on behalf of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC against the Neighbors O&Ds and Neighbors

Health System, Inc. for breach of fiduciary duty, abuse of control, grossly negligent mismanagement, waste of series assets, breach of contract and unjust enrichment, as well as aiding and abetting of it.  The Neighbors O&Ds have engaged in a pattern of neglect, failed to properly oversee both the operations and finances of Series 114 – Eastside, LLC and Series 115 - Zaragoza, LLC separately from all of the others and failed to have the basic systems in place to protect the assets of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC.  This has caused material damage to Series 114 – Eastside, LLC's and Series 115 – Zaragoza, LLC's financial position and reputation. Plaintiff has standing to bring this action under Tex. Bus. Org. Code, §101.463, which applies to Plaintiff and these claims. Both Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC are closely held series, thus no pre-suit demand is required. Further, any pre-suit demand on Neighbors Health System, Inc. or the Neighbors O&Ds would be a futile act.  They are entrenched and marred with conflicts of interest.  Their failure to keep the assets and funds of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC separate and preserved and subsequent transfer of the funds over an extended period of time is evidence that they will not take any action against themselves or their colleagues.  To remedy the Neighbors O&Ds and Neighbors Health System, Inc.'s breach of fiduciary duty, Plaintiff brings this action on behalf of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC to cause Defendants to account for the damage caused to Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC and to recover such damages for its benefit.

30. Plaintiff will adequately and fairly represent the interests of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC in enforcing and prosecuting its rights.

31. Plaintiff is and was an owner of the Class B non-voting membership interests in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC during times relevant to the

wrongful conduct alleged here, and remains a member of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC which were not debtors in the Neighbors Chapter 11 bankruptcy cases.  In this case, justice requires that the Court treat this derivative action as a direct action brought by Plaintiff, as member, for its own benefit, and that the recoveries be paid directly to Plaintiff. Tex. Bus. Org. Code, § 101.463.

32. The manager of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC was Neighbors Health Services, Inc., which was in turn controlled by the Neighbors O&Ds. Plaintiff has not made any demand on Neighbors Health System, Inc. or the Neighbors O&Ds to institute this action because such a demand would be futile, wasteful, and useless. Demand would be futile for the following reasons:

    a. As a result of their access to and review of internal corporate documents; conversations and connections with corporate officers, employees, and directors; and attendance at management and Board meetings, each of the defendants knew the adverse non-public information regarding the false and misleading financial statements;

    b. The Neighbors debtors and Neighbors O&Ds have received substantial monetary compensation and other benefits. Accordingly, they are legally incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action;

    c. The Neighbors O&Ds are insider directors of the manager of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC and their principal professional occupation was their employment with the Neighbors debtors, pursuant to which they have received substantial monetary compensation and other benefits. Accordingly, the Neighbors O&Ds are legally incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action;

    d. The Defendants are entrenched and have multiple conflicts of interest and entangling business relationships that preclude them from being disinterested and vigorously prosecuting the wrongdoing alleged in this complaint;

    e. The Neighbors O&Ds are not disinterested or independent and served on the Board of Series 114 – Eastside, LLC's and Series 115 – Zaragoza, LLC's manager during the time of the wrongdoing and participated in the wrongs

complained of here. Pursuant to their specific duties as Board members, each was charged with directing the management of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC and their business affairs. Each breached the fiduciary duties that they owed to Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC and its members in that they failed to properly supervise Series 114 – Eastside, LLC's and Series 115 – Zaragoza, LLC's finances and operations, failed to protect and preserve the funds of Series 114 – Eastside, LLC and Series 115 - Zaragoza, LLC and transferred or allowed the transfer of the funds of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC. The majority of the directors have served on the Board for several years and are, therefore, well aware of Series 114 – Eastside, LLC's and Series 115 – Zaragoza, LLC's finances and operations and the transfers and decisions to transfer funds. Yet, the Neighbors O&Ds either knew and caused the transfers of funds to be made or ignored the fact that the transfers were being made. Further, the Neighbors O&Ds either knew of the inflated operations expenses paid to affiliate companies or ignored the fact that the payments were being made. Because they abdicated their oversight responsibilities, these directors are personally liable for the conduct alleged here. Series 114 – Eastside, LLC and Series 115 - Zaragoza, LLC, therefore, cannot exercise independent objective judgment in deciding whether to bring this action, or whether to vigorously prosecute this action, because its members are interested personally in the outcome, as it is their actions that have denuded Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC of millions of dollars in funds and assets.

f.   Each of the Neighbors O&Ds knew or directly benefited from the wrongdoing alleged in this complaint;

g.   The Neighbors O&Ds participated in efforts to conceal or disguise these wrongs from Series 114 – Eastside, LLC's and Series 115 – Zaragoza, LLC's members or recklessly or negligently disregarded the wrongs alleged in this complaint and are, therefore, not disinterested parties;

h.   In order to bring this suit, all of the directors of the manager of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC and the voting member Neighbors Investment would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thus excusing demand;

i.   The acts alleged in this complaint constitute violations of the fiduciary duties owed by Series 114 – Eastside, LLC's and Series 115 – Zaragoza, LLC's manager's officers and directors, and these acts are incapable of ratification;

j.   Each of the Neighbors O&Ds authorized or permitted the issuance and making of various of the false and misleading statements, and are principal beneficiaries of the wrongdoing alleged here, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them.

33. The Neighbors O&Ds and Neighbors Health Services, Inc. have failed and refused to seek to recover for Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC for any of the wrongdoing alleged by Plaintiff even though the Neighbors O&Ds and Neighbors Health System, Inc. knew of the claims and causes of action raised in this complaint.

### A.  Derivative Claim of Breach of Fiduciary Duty, Negligent and Gross Mismanagement, and Abuse of Control

34. By their actions alleged above, the Neighbors O&Ds and Neighbors Health Services, Inc. abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC in a manner consistent with the operations of a closely held company.  They assumed the contractual fiduciary duty to Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC under the Management Agreements entered with those entities.  As such they had the duties agreed to in those Management Agreements, including human resources functions, accounting supervision and management including tax return preparation, financial planning and forecasting, cash management, banking and treasury, insurance administration, executive operations management, marketing, branding, information technology, facilities management, policies and procedure, licensure, and compliance. The Neighbors O&Ds and Neighbors Health System, Inc. failed to perform any of these functions for Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC. Instead, they acted in dereliction of their duties by the following conduct:

- entering leases of real property for the Eastside and Zaragoza FEDs at above market rates,

- causing the funds of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC to be held in bank accounts in the names of NEC Eastside Emergency Center, LP and NEC Zaragoza Emergency Center, LP,

- causing the limited partnership shares of NEC Eastside Emergency Center, LP and NEC Zaragoza Emergency Center, LP owned by Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC to be wrongly collateralized by falsely stating to the lenders of the credit facility that they were owned by NHS Emergency Centers, LLC or the Gang of Eight as opposed to Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC,

- causing the facility fees billed by NEC Eastside Emergency Center, LP and NEC Zaragoza Emergency Center, LP to be held and maintained in bank accounts in the names of NEC Eastside Emergency Center, LP and NEC Zaragoza Emergency Center, LP, and never pushed back to the possession and control of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC,

- causing the physician fees billed by Neighbors Physician Group, PLLC for the emergency physician services performed by the physicians at Eastside FED and Zaragoza FED to be held and distributed to entities other than Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC,

- causing funds belonging to Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC to be transferred to other unprofitable series entities.

The Neighbors O&Ds' and Neighbors Health System, Inc.'s misconduct alleged above constituted an abuse of their ability to control and influence Series 114 – Eastside, LLC and Series 115 - Zaragoza, LLC for which they are legally responsible.  They diverted the revenue

derived from physician billing for Series 114 – Eastside, LLC's and Series 115 – Zaragoza, LLC's emergency physicians away from Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC. They caused all cash of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC to be held by NEC Eastside Emergency Center, LP and NEC Zaragoza Emergency Center, LP and further caused the revenue to be transferred away to other unprofitable business ventures controlled by the Gang of Eight. They caused the Eastside and Zaragoza FEDs to pay rent for the emergency center facilities far above the market rate and profited by the above market lease individually.

35. As a result of the misconduct alleged here, the Neighbors O&Ds and Neighbors Health System, Inc. are liable to Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC. As a direct and proximate result of Neighbors Health System, Inc.'s and the Neighbors O&Ds' conduct, Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC have sustained significant actual and consequential damages, including, but not limited to loss of revenues and lost profits. Their conduct involved malice and rose to the level of gross negligence and therefore the Plaintiff on behalf of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC is entitled to an award of punitive and/or exemplary damages.

### B. Derivative Claim of Breach of Contract

36. Neighbors Health System, Inc. had an existing contract with Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC in the form of the Management Agreements. Neighbors Health System, Inc. failed to perform its duties and obligations under the Management Agreements. Those breaches of the Management Agreements were the direct and proximate cause of damages to Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC. In particular, by failing to properly manage the finances of Series 114 – Eastside, LLC and Series 115 –

Zaragoza, LLC, Neighbors Health System, Inc. caused the loss of revenue and profits to Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC.  The revenue generated by physician service billing was lost completely.  The revenue generally was transferred out of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC and into other series business that were not profitable.  This claim forms a basis, in part, for the proof of claim that has been consolidated with this adversary proceeding.

### C.  Direct Claim of Negligence and Gross Negligence

37. The Neighbors O&Ds had a duty to the Plaintiff, as officers and directors of Neighbors Health System, Inc., to exercise reasonable care in performing their duties in maintaining and preserving the Plaintiff's share of profits of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC for distribution and making those distributions to the Plaintiff. The Neighbors O&Ds breached that duty by failing to segregate, maintain, and preserve the Plaintiff's share of profits, transferring Series 114 – Eastside, LLC's and Series 115 – Zaragoza, LLC's revenues to other entities, and allowing all of the physician service fees generated by Plaintiff to be pocketed by the Gang of Eight.  Their breach of their duty of care owed to the Plaintiff was the proximate direct and consequential cause of harm to the Plaintiff.  In particular, the Plaintiff was damaged by the loss of its initial $1,000,000 investment in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC.  Additionally or alternatively, the Plaintiff suffered loss of its 65% share of net profits of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC calculated on all revenue sources including physician service fees and facility fees.  Further, their misconduct rose to the level of gross negligence. Plaintiff, therefore, seeks recovery of exemplary and punitive damages.

**D.  Direct Claim of Fraud and Fraudulent Inducement**

38. The conduct of Dr. Setul Patel and Dr. Paul Alleyne constitutes common law fraud. Dr. Setul Patel and Dr. Paul Alleyne made false statements and representations to the Plaintiff knowing that the statements and representations were false at the time they made those statements and representations.  In particular, these defendants represented:

- The business, operations, and finances of the series entities the Plaintiff was investing in would be maintained separate from other series established by NHS Emergency Centers, LLC.

- The business, operations, and finances of the series entities the Plaintiff was investing in would be managed by Neighbors Health System, Inc. under a management and administrative services agreement.

- The leasehold, improvements, and equipment of the El Paso FEDs would be maintained in limited partnerships and 99% of the limited partnership interests in those limited partnerships would be issued to the series entities the Plaintiff was investing in.

- The revenue generated from facility fees would be billed by the manager but the revenue from those facility fees would be pushed into the series through the series' ownership of those limited partnerships, and the Plaintiff's share of net profits of the series would be calculated including those facility fee revenues.

- The revenue generated from physician service fees would be billed by the manager and the revenue from the physician service fees would be pushed into the series that the Plaintiff was investing in, and the Plaintiff's share of net profits

of the series would be calculated including those revenues generated from the physician service fee.

- The funds of the series the Plaintiff was investing in would be maintained separately and safeguarded, and the Plaintiff's share of these net profits would be calculated from net revenues generated from physician service fee billing and facility fee billing and distributed to Plaintiff.

Dr. Paul Alleyne and Dr. Setul Patel made these statements knowing that they were false.  They made the false statements and representations for the purpose of inducing the Plaintiff into purchasing Class B membership interests in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC and devoting all its physician members to operation of the Eastside and Zaragoza FEDs.  The Plaintiff relied on these false statements and representations to its detriment and as a direct and proximate result suffered damages, which the Plaintiff now seeks to recover.

39. The Plaintiff suffered actual damages in the form of the $1,000,000 paid for the membership interests in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC. Additionally or alternatively, the Plaintiff also suffered actual damages in the form of 65% of the net profits of those series.  The Plaintiff is entitled to recover "benefit of the bargain" damages, or what the Plaintiff would have received if the venture had been as represented.  The benefit of the bargain as represented would have produced a share of 65% of the net profits from the revenue generated by physician service fee billing and facility fee billing at the Eastside and Zaragoza FEDs. Additionally or alternatively, the Plaintiff seeks as damages its lost opportunity to have engaged and profited from its own FEDs.  Finally, the Plaintiff seeks exemplary and/or punitive damages, as this conduct was fraudulent and with malice.

40. Each of the Neighbors O&Ds are liable to the Plaintiff for fraud by omission. Each of the Neighbors O&Ds omitted to disclose material information and facts to the Plaintiff knowing that the omitted information was material at the time it was omitted. In particular, the Neighbors O&Ds knew, and failed to disclose to the Plaintiff:

- that the business, operations, and finances of the series entities the Plaintiff was investing in would not be maintained separate from other series established by NHS Emergency Centers, LLC.

- that the business, operations, and finances of the series entities the Plaintiff was investing in would not actually be managed by Neighbors Health System, Inc. despite the existence of a management and administrative services agreement.

- that the leasehold, improvements, and equipment of the El Paso FEDs would be maintained in limited partnerships, but that their 99% ownership of the limited partnership interests in those limited partnerships would later, unbeknownst to the Plaintiff, be reassigned to NHS Emergency Centers, LLC (in order to secure the credit facility) as opposed to the series entities the Plaintiff was investing in.

- that the revenue generated from physician service fees and facility fees would not be maintained in a bank account in the names of the series entities the Plaintiff was investing in and would never be maintained separately and safeguarded for the series entities.

- that the revenue generated by the physician service fees billed through Neighbors Health System, Inc. would not be distributed to the series entities the Plaintiff was investing in and would never be included in the calculation of the Plaintiff's share of net profit of the series it was investing in.

- that the funds of the series entities the Plaintiff was investing in would be transferred to other series entities at the discretion of the Neighbors O&Ds and for the sole benefit of the Neighbors O&Ds to shore up other businesses whose operations were losing money and not profitable.

41. The Neighbors O&Ds omitted the material facts in order to induce the Plaintiff into investing in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC and into devoting all of its physician investors' work and time into providing emergency physician services at the Eastside and Zaragoza FEDs.   The Plaintiff relied on the information as presented with omissions to its detriment and as a direct and proximate result suffered harm, which it now seeks to recover.   The Plaintiff suffered actual damages in the form of the $1,000,000 paid for the membership interests in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC. Additionally or alternatively, the Plaintiff suffered actual damages in the form of 65% of the net profits of those series.   The Plaintiff is entitled to recover "benefit of the bargain" damages, or what the Plaintiff would have received if the venture had been as represented.   The benefit of the bargain as represented would have produced a share of 65% of the net profits from the revenue generated by physician billing and facility billing at the Eastside and Zaragoza FEDs. Additionally or alternatively, the Plaintiff seeks as damages its lost opportunity to have engaged in its own FEDs and the profits it would have made in such opportunity.   Finally, the Plaintiff seeks exemplary and/or punitive damages, as this conduct was fraudulent and with malice.

### E.  Direct Claims for Conspiracy and Aiding and Abetting Common Law Fraud

42. The  conduct  of  the  Neighbors  O&D  constitutes  a  conspiracy  and/or  aiding  and abetting common law and fraud.   The Defendants all reached an agreement to assist with the fraud. All the Neighbors O&Ds knew the pitch of false representations that Dr. Setul Patel and

Dr. Paul Alleyne were making to Plaintiff in order to induce Plaintiff into investing as a Class B member of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC.  The Neighbors O&Ds agreed to support and assist with this pitch of false representations. The damage suffered by Plaintiff are the same as those alleged above from fraud and fraud by omission.

### F. Direct Claims for Negligent Misrepresentations

43.  Dr. Setul Patel and Dr. Paul Alleyne, in their capacity as officers and directors, had a duty to exercise reasonable care in making their statements and representations and in having their agents make their statements and representations to Plaintiff in connection with the sale of the membership interests of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC to Plaintiff and in connection with maintaining and preserving the Plaintiff's share of profits in those entities. Dr. Setul Patel and Dr. Paul Alleyne failed to exercise that care in making statements and representations that were false or misleading when they knew or should have known that Plaintiff was relying on these statements and representations.  They made representations to the Plaintiff that they knew or had reason to know were false and/or misleading.  In particular, Dr. Setul Patel and Dr. Paul Alleyne represented to the Plaintiff that the finances of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC would be maintained separate and apart from the other series, and so long as Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC were profitable, that profits would be distributed quarterly to Plaintiff according to its ownership interest.  Dr. Setul Patel and Dr. Paul Alleyne knew that the assets of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC would be pledged as collateral to secure the credit facility and that they would cause funds of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC to be transferred to the unprofitable business ventures controlled by the Neighbors O&Ds. They also knew that they would never cause Neighbors Health System,

25

Inc. to exercise its management duties for Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC and knew that it would not include the revenue generated from the physician service fees in the calculation of Plaintiff's share of net profits from the operation of the Eastside and Zaragoza FEDs.

44. As a direct consequence and proximate result of the acts of Dr. Setul Patel and Dr. Paul Alleyne, the Plaintiff has been damaged.  The Plaintiff paid a total of $1,000,000 for their membership interests in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC, which they would not have paid but for the misrepresentations and false statements by these defendants. Further, Plaintiff devoted its physician members to the venture as a result of the misrepresentations and false statements.  Had Plaintiff not done so, Plaintiff could have entered into another emergency center venture and derived the profit from another venture.  Finally, the Plaintiff lost its 65% share of net profits from the operation of the Eastside and Zaragoza FEDs. Their conduct also rises to the level of gross negligence.  Therefore, Plaintiff seeks recovery of exemplary and punitive damages.

**F.  Direct Claim of Violations of Securities Act**

45. The Neighbors O&Ds are liable as control persons of NHS Emergency Centers, LLC for violations of Tex. Rev. Civ. Stat. Ann., § 581-33A(2).  The Neighbors O&Ds were all persons who controlled NHS Emergency Centers, LLC, which was the seller of the securities in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC to Plaintiff.   NHS Emergency Centers, LLC and the Neighbors O&Ds, in their capacity as officers and directors of Neighbors Health System, Inc., the member and manager of NHS Emergency Centers, LLC, offered and sold securities of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC to Plaintiff by means of an untrue statement of a material fact or an omission to state a material fact necessary

in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

46. In particular, NHS Emergency represented to the Plaintiff that the finances of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC would be maintained separate and apart from the other series emergency centers of NHS Emergency Centers, LLC, and so long as Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC were profitable, that the quarterly profits would be distributed to Plaintiff according to its ownership interest.  NHS Emergency Centers, LLC knew that NHS Emergency Centers, LLC, through its control by way of the Neighbors O&Ds, in their capacity as officers and directors of NHS Emergency Centers, LLC and Neighbors Health Service, Inc., would cause operating funds of Series 114 - Eastside and Series 115 - Zaragoza to be transferred to the unprofitable business ventures. NHS Emergency Centers, LLC failed to state to Plaintiff that Neighbors Health System, Inc. would transfer funds from Series 114 – Eastside, LLC and/or Series 115 – Zaragoza, LLC to other unprofitable business ventures in order to keep them from failing as businesses.  Further, they represented to the Plaintiff that Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC would own 99% of the limited partnership interests of NEC Eastside Emergency Center, LP and NEC Emergency Center Zaragoza, LP, which would own the leasehold, improvements and equipment and generate revenues from the facility fees which would in turn be distributed to Plaintiff as an owner of membership interests in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC. These were material facts that were necessary in order to make the statements made, in the light of the circumstances under which they were made by NHS Emergency Centers, LLC, not misleading.

47. The Neighbors O&Ds are liable for this violation of the Texas Securities Act, section 33A(2), as control persons of NHS Emergency Centers, LLC under section 33F.  As actual damages under section 33D of the Texas Securities Act, the Plaintiff is entitled to, and now seeks, the $1,000,000 consideration it paid for the securities plus interest at the lawful rate.

**V.**

**<u>Jury Demand</u>**

48. The Plaintiff demands a trial by jury as to all issues in this case.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, INFINITY EMERGENCY MANAGEMENT GROUP, LLC, Individually and as Class B Non-Voting Members on behalf of NHS Emergency Centers, LLC Series 114 – Eastside and NHS Emergency Centers, LLC Series 115 – Zaragoza, prays that after trial it be awarded judgment as follows:

1. Actual damages, including direct and consequential damages and "benefit of the bargain" damages;

2. Statutory damages;

3. Exemplary or punitive damages;

4. Reasonable and necessary attorney's fees;

5. Prejudgment and post-judgment interest as allowed by law; and

6. Costs of court.

Respectfully submitted,

**WAUSON | PROBUS**

By:    /s/ Matthew B. Probus
        **Matthew B. Probus**
        TBA# 16341200
        Fed. I.D. # 10915
        mbprobus@w-plaw.com
        **John Wesley Wauson**
        TBA # 20988200
        Fed. I.D. # 1866
        jwwauson@w-plaw.com

One Sugar Creek Center Blvd., Suite 880
Sugar Land, Texas 77478
(281) 242-0303 (Telephone)
(281) 242-0306 (Facsimile)

*ATTORNEYS FOR PLAINTIFF,*
*INFINITY EMERGENCY MANAGEMENT*
*GROUP, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been forwarded by electronic delivery through the ECF/PACER system and via United States regular mail, first class postage prepaid, to the parties listed below on this the 17th day of February, 2020:

Cliff Walston
Walston Bowlin, LLP
4299 San Felipe Street, Suite 300
Houston, Texas 77027
cliff@walstonbowlin.com

Staton M Childers
Adams and Reese, LLP
LyondellBasell Tower
1221 McKinney, Suite 4400
Houston, Texas  77010
Staton.childers@arlaw.com

Paul D Flack
Pratt and Flack LLP
1331 Lamar Street, Suite 1250
Houston, TX 77010
pflack@prattflack.com

Jarrod Martin
McDowell Hetherington LLP
1001 Fannin Street Suite 2700
Houston, TX 77002
Jarrod.Martin@mhllp.com

Millard A Johnson
Johnson DeLuca Kennedy & Kurisky, P.C.
1221 Lamar, Suite 1000
Houston, TX 77010
mjohnson@jdkglaw.com

James G Munisteri
Foley Gardere
1000 Louisiana, Suite 2000
Houston, TX 77002
jmunisteri@foley.com

Christina Minshew Lewis
Moyer Patton
11767 Katy Freeway, Suite 990
Houston, TX 77079
clewis@moyerpatton.com

                                        *__/s/ Matthew Probus_____*
                                          Matthew Probus