**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In Re:** | § | **Chapter 11** |
| | § | |
| **NEIGHBORS LEGACY HOLDINGS,** | § | **Case No. 18-33836** |
| **LLC,** | § | |
| | § | |
| Debtors. | § | |
| | § | |

| | | |
|---|---|---|
| **INFINITY EMERGENCY** | § | |
| **MANAGEMENT GROUP, LLC,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | **Adversary No. 18-03276** |
| **v.** | § | |
| | § | |
| **NEIGHBORS HEALTH SYSTEMS, INC.,** | § | |
| **NEIGHBORS HEALTH, LLC,** | § | |
| **NEIGHBORS INVESTMENT GROUP, LLC,** | § | |
| **NEIGHBORS GP, LLC,** | § | |
| **SETUL G. PATEL, M.D.,** | § | |
| **PAUL ALLEYNE, M.D.,** | § | |
| **MICHAEL CHANG, M.D.,** | § | |
| **ANDY CHEN, M.D.,** | § | |
| **CYRIL GILLMAN, M.D.,** | § | |
| **QUANG HENDERSON, M.D.,** | § | |
| **DHARMESH PATEL, M.D., AND** | § | |
| **HITESH PATEL, MD.,** | § | |
| | § | |
| *Defendant.* | § | |

**MOTION FOR SUMMARY JUDGMENT ON STANDING**
**FILED BY PLAINTIFF MARK SHAPIRO,**
**TRUSTEE OF THE UNSECURED CREDITOR TRUST**

1

Pursuant to Local Rule 9013:

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT HEARING.**
>
> **A HEARING HAS BEEN SET FOR MARCH 26, 2020, AT 9:00 A.M. IN COURTROOM 404, U.S. COURTHOUSE, 515 RUSK, 4TH FLOOR, HOUSTON, TEXAS 77002.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

COMES NOW, PLAINTIFF MARK SHAPIRO, TRUSTEE OF THE UNSECURED CREDITOR TRUST OF NEIGHBORS LEGACY HOLDINGS, INC. AND ITS DEBTOR AFFILIATES and files this Motion for Summary Judgment on Standing Regarding Claims Asserted by Infinity Emergency Management Group, LLC ("Infinity"), and respectfully show the Court as follows:

## I.     INTRODUCTION AND SUMMARY OF THE ARGUMENTS

As the Court is well aware, Plaintiff Infinity and the Defendants have briefed and argued the issue of Infinity's standing to bring causes of action for derivative damages allegedly done to the business of emergency clinics owned and operated by the LPs.  The Trustee will not repeat the significant briefing on the issue that has been done to date but will instead incorporate the Defendants' Joint Motion for Partial Summary Judgment on Standing, its exhibits, and subsequent responsive briefing into this Motion for the purposes of establishing the summary judgment

record.[1]  The Trustee will, however, present to the Court a two additional exhibits and his argument in support of the position that it is the Trustee that properly owns all claims for damages that relate to the business of operating the two emergency centers at issue in this matter.

The Court has characterized the question it must resolve on this issue as "who owned the emergency clinics?"  There is no genuine issue of material fact that during the three years from when these the emergency centers operated from 2015 until the 2018 filing of bankruptcy, the only entities that ever owned or operated any emergency clinics at the subject locations were NEC Eastside Emergency Center, LP and NEC Zaragoza Emergency Center, LP, both debtor entities represented by the Trustee.  The summary judgment record likewise clearly establishes that no emergency clinic was ever owned or operated by any Series LLC.

The Court has asked Infinity to articulate in its amended complaint how it was damaged separate and apart from damages to the business of operating the emergency clinic that resulted in diminished distributions to it through the Series LLC.  A review of Infinity's most recent Amended Complaint demonstrates that its claims can be broken down into two major categories by focusing on the damages alleged in each cause of action.  Those damages include (1) claims for damages done to the business of operating the emergency clinics that resulted in diminished profitability to the clinics, that in turn resulted in diminished distributions to the Series LLCs, that in turn resulted

[1] Specifically, the Trustee incorporates Docket No. 24, Motion to Dismiss, with all attached exhibits, Docket No. 62, Joint Motion for Summary Judgment, with all attached exhibits, and Docket No. 69, Joint Response to Infinity's Motion for Partial Summary Judgment, with all attached exhibits.

in diminished distributions to Infinity as a shareholder of the Series LLCs[2] and (2) claims for damages directly suffered by Infinity, such as its $1,000,000 investment in the two Series LLCs.[3]

As to the first category of damages, the Trustee asserts that those claims are clearly derivative because no genuine issue of material fact exists that the only entities that operated the emergency clinics were the LPs.  As a result, those claims those should be pursued by the Trustee in accordance with the Order confirming the *First Amended Joint Plan of Liquidation of Neighbors Legacy Holdings, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code*.  As to the second category of damages, without addressing the merit of any such claim, the Trustee believes that Infinity does have standing to bring claims for damages it suffered directly—as opposed to derivatively—such as its fraudulent inducement claim seeking to recover the initial $1,000,000 investment made by Infinity in the two Series LLCs.

Because there is no genuine issue of material fact on the issue of which entities operated emergency clinics were the LP, the Trustee respectfully requests that the Court dismiss all claims asserted by Infinity seeking damages done to the business of operating the emergency clinics.

## II.  ADDITIONAL SUMMARY JUDGMENT EVIDENCE

| Ex. No. | Description |
|---------|-------------|
| 26 | Zaragoza License and Application for a Freestanding Emergency Medical Care Facility |
| 27 | Eastside License and Application for a Freestanding Emergency Medical Care Facility |

---

[2]Docket No. 80, ¶¶ 34, 36, 41 (seeking damages for "loss of revenues and lost profits," "the revenue generated by the physician service billing was lost completely," "net profits from the revenue," etc.).

[3]*Id.* at ¶ 39 (seeking "actual damages in the form of the $1,000,000 paid for the membership interests [in the Series LLCs]).

### III. UNDISPUTED FACTS

Given the Court's familiarity with the issues before it, the Trustee incorporates the factual recitation and supporting exhibits as outlined in Defendants' Joint Motion for Summary Judgment on Standing.[4]   In determining which entity owned and operated the emergency clinics at Eastside and Zaragoza, the Trustee believes that the following facts and arguments conclusively demonstrate that it was the LPs and not the Series LLCs that owned and operated the emergency clinics.

### IV. ARGUMENTS AND ANALYSIS

**A.**     **There is no genuine issue of material fact that the only entities that owned and operated the emergency room clinics were the LPs.**

All freestanding emergency clinics that operate in the State of Texas must apply for and obtain a license to do so under Chapter 254 of the Health and Safety Code.  In 2015, both NEC Eastside Emergency Center, LP and NEC Zaragoza Emergency Center, LP applied for and received licenses from the State of Texas to operate the subject emergency room clinics.[5]  This license allowed the LPs to operate the clinics until their shuttering.  By contrast, neither of the Series LLCs ever applied for or obtained a license from the state.  Therefore, the Series LLCs could not—and did not—legally operate an emergency room clinic.  Because the Series LLCs could not legally operate an emergency clinic, any damages suffered by them must flow derivatively though another entity that was licensed to operate an emergency clinic, i.e. the LPs.

Taken together with the following undisputed facts as outlined in Defendants' briefing on the issue, it is clear that no genuine issue of material fact exists as to the question of "who owned the emergency clinics?"

---

[4] Docket No. 62, Joint Motion for Summary Judgment, at pp. 6-8.
[5] Exs. 26 and 27 (Licenses and Applications).

- In September 2014, Neighbors provided Infinity with an explanation of the corporate structure and provided a corporate organization chart that reflected the relationship of the series entities to the limited partnerships.   The e-mail sent to Infinity explained that "[t]he series interests represent 99% of each center, which is 99% of 'NEC El Paso Emergency Center, LP.'"   The organization chart provided also advised Infinity that "[a]ll assets are held at [the] Limited Partnership level," and that "[a]ll Lending and Debt to be held by Neighbors Health Systems with all company assets as a borrowing base."

- Thereafter, Infinity was purchased membership interests associated with Series 114-Eastside and Series 115-Zaragoza,[6] and it purchased 6,500 Class B, non-voting, interests in each series entity (65%), for $500,000 each ($1,000,000.00 total for interests in both series) in late 2015 and early 2015.[7]

- On November 4, 2014, NEC Zaragoza Emergency Center, LP was formed, via its General Partner Neighbors GP, LLC for the purpose of operating the emergency clinic.[8]

- On December 1, 2014, NEC Eastside Emergency Center, LP was formed, via its General Partner Neighbors GP, LLC for the purpose of operating the emergency clinic.[9]

- In the spring of 2015, each LP applied for and obtained a license from the State of Texas to operate a Freestanding Emergency Clinic at Eastside and Zaragoza.[10]

- Each LP also executed lease agreements for the El Paso clinics.[11] The clinics were new construction on property owned by third parties.[12]

- Each LP also had bank accounts set up in their names, which received the accounts receivables for the clinics and paid the clinics' expenses.[13]

---

[6] Docket No. 80, Infinity's Fourth Am. Complaint at ¶ 19.

[7] Docket No. 62, Ex. 5 (Zaragoza Series Interest Purchase Agreement); Ex. 6 (Eastside Series Interest Purchase Agreement).

[8] Docket No. 62, Ex. 7 (Cert. of Formation – NEC Zaragoza Emergency Center, LP).

[9] Docket No. 62, Ex. 8 (Cert. of Formation – NEC Eastside Emergency Center, LP).

[10] Exs. 26 and 27 (Licenses and Applications).

[11] Docket No. 62, Ex. 13 (Eastside Lease Agreement); Ex. 14 (Zaragoza Lease Agreement).

[12] *Id.*

[13] Docket No. 62, Exs. 21, 22 (bank account statements).

- Each LP had bills in their names and sent to the clinic locations.[14]

- The LPs filed their own tax returns, which claimed ownership of leasehold improvements, furniture and fixtures, and machinery and equipment.[15]

- The series entities also filed their own tax returns, which only reflect income and minimal expenses attributable to charitable contributions and excluded meals and entertainment expenses from the K-1 issued by the LPs.[16]

- The clinics operated under the LPs for several years before being put into bankruptcy along with the other Neighbors entities.

As demonstrated above, the structure of the emergency clinics being operated by the LPs was the exact structure explained to Infinity prior to its purchase of the Series LLC interests, exactly the structure utilized in all of Neighbors' other facilities, and the exact structure that actually took place in this matter, as reflected by the tax returns, bank accounts, etc. of the respective entities. Thus, it is clear from even a cursory review of the undisputed facts in this matter that it was debtor entities NEC Zaragoza Emergency Center, LP and NEC Eastside Emergency Center, LP that owned and operated the emergency clinics at issue. As a result, all claims related to damages done to the operations of emergency clinics flow through the LPs and are to be properly pursued by the Trustee.

**B.     Infinity's claims and damages clearly demonstrate they are derivative of the LPs.**

As correctly pointed out by the Defendants in their briefing, courts look to the nature of the injury for which relief is sought and consider the relationship between the debtor and the injury. *Id.*; (citing *In re E.F. Hutton Sw. Props. II, Ltd.*, 103 B.R. 808, 812 (Bankr. N.D. Tex. 1989) ("The injury characterization analysis should be considered as an inseparable component of whether an

---

[14] Docket No. 62, Ex. 19 (Eastside bills); Ex. 20 (Zaragoza bills).

[15] Docket No. 62, Ex. 15 (2016 Zaragoza, LP Partnership Return); Ex.17 (2016 Eastside, LP Partnership Return).

[16] Ex. 15 (2016 Zaragoza, LP Partnership Return); Ex.17 (2016 Eastside, LP Partnership Return).

action belongs to the [estate] or [creditor].")).  "If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate." *In re Educators Group Health Trust*, 25 F.3d at 1284 (citations omitted).  However, if the cause of action does not allege harm to the debtor, then it could not have been asserted by the debtor when the case was filed, making the cause of action not property of the estate.  *Id.*

Throughout Infinity's complaint, the actual factual allegations being asserted highlight that the damages being alleged are damages to the Series LLC that flow through the LPs and are not direct damages suffered by the Series LLCs.  For example, Infinity complains of the following:

- Entering leases of real property for Eastside and Zaragoza FEDs at above market rates.  Infinity Complaint at ¶ 34.

- Causing the limited partnership shares of [the LPs] to be wrongly collateralized.  Infinity Complaint at ¶ 34.

- Causing the facilities fees billed by [the LPs] to be held and maintained in bank accounts in the name of [the LPs] and not pushed back to the Series entities.  Infinity Complaint at ¶ 34.

However, the summary judgment evidence establishes that these are all damages that flow through the LP and are not damages suffered directly by the Series LLC:

- The LP's executed the lease agreements that were allegedly above market rates.[17]

- The LP's maintained their own deposit and expense bank accounts from which the transfers were made.[18]

---

[17] Exs. 13, 14 (Lease Agreements).

[18] Exs. 21, 22 (Income and expense account records); *see* Main Case ECF No. 391 at pgs. 33–34 (NEC Eastside Emergency Center, LP's Statement of Financial Affairs) (reflecting company transfers); Main Case ECF No. 447 at pg. 30 (NEC Zaragoza Emergency Center, LP's Statement of Financial Affairs) (reflecting company transfers).

- All assets were held by the LP's and all lending would be secured by all assets, including those of the LPs.[19]

Accordingly, if any damage occurred, it occurred directly to the LP and the Series LLCs were damaged as a result of reduced distributions. Because the Series LLCs only received profits derived from the revenues of the LPs, any claim based on diminished profits flowing from the LP would be derivative and belong to the Trustee. In this lawsuit, Infinity has not articulated any harm done directly to the Series LLCs. Instead, Infinity conflates the two entities—the LP and the series entity—in order to generally state harm for which it argues it has standing to sue. But, because the entities were separate and Infinity was advised of this, Infinity cannot now try to argue that the Series LLCs held or "owned" the emergency clinics. Thus, because the LP owned the clinics, the LPs are debtors, and Infinity's complaints are based on injuries allegedly sustained by the LPs, these claims properly belong to the Trustee.

**C.    The Court has previously recognized that the LPs owned the business and all the assts of the emergency clinics.**

Also as discussed at length by Defendants in their prior briefing, the Court has previously determined that the business of the emergency clinics was owned and operated by the debtors.[20] Specifically, on September 12, 2018, the Court signed and entered the "Order (A) Approving the Sale of Debtors' Assets Free and Clear of all Liens, claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Lease, and (C) Granting  Related Relief" (the "Order") (Docket No. 482).

The Order and the Asset Purchase Agreement make clear it has already been decided that NEC Eastside Emergency Center, LP owned and operated the "business" of the clinic. The Court

---

[19] Ex. 2 (Sept. 15, 2014 e-mail from Alleyne to Team El Paso) at Organization Chart attachment.

[20] *See* Docket No. 69, Joint Response to Infinity's Motion for Partial Summary Judgment at pp. 11-16.

has likewise determined that NEC Eastside Emergency Center LP, owned the assets including bank accounts, licenses and permits, books and records, and goodwill of the Eastside emergency clinic.  Considering that all of the summary judgment evidence reflects Zaragoza was set up and operated the same way, this determination necessarily implies that the same is true for Zaragoza.

Accordingly, the issue of "ownership" has already been decided and should not be relitigated.  Moreover, as a practical matter, these determinations and the sale of "Eastside" in the bankruptcy call into question what "business" Infinity now claims the series entity owned considering that "Eastside" sold in the bankruptcy as a going concern.  If Infinity truly believed that it owned the "operating business" as it claims, then what did it not object to the debtors sell in the Asset Purchase Agreement?  The answer is that it did not.  Infinity recognized that the LPs clearly owned and operated the emergency clinic.  Accordingly, it did not make any objection to the sale.

## V.  CONCLUSION

Because no genuine issue of material fact exists regarding which entities owned and operated the emergency clinics, Infinity has no standing to pursue any cause of action seeking damages related to the operation of the emergency clinics because NEC Eastside Emergency Center, LP and NEC Zaragoza Emergency Center, LP—both debtor entities—owned the clinics, respectively. Additionally, Infinity and NIG are the equity owners of the clinics as they were entitled to receive the profits derived from the clinics via their membership interest in the Series LLCs.  As such, the Trustee is entitled to judgment as a matter of law, and the Court should grant the Trustee's motion.

Respectfully Submitted,

**WALSTON BOWLIN, LLP**

*/s/ Clifford H. Walston*
CLIFFORD H. WALSTON
cliff@walstonbowlin.com
State Bar No. 24037666
4299 San Felipe Street, Suite 300
Houston, Texas 77027
(713) 300-8700
(713) 583-5020 Fax
**ATTORNEY FOR PLAINTIFF MARK SHAPIRO, TRUSTEE OF THE UNSECURED CREDITOR TRUST**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing document was filed and served electronically, via the ECF system, on the 6th of March, 2020.

*/s/ Clifford H. Walston*
Clifford H. Walston