## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| NEIGHBORS LEGACY HOLDINGS, INC., | § | CASE NO. 18-33836-H1-11 |
| | § | (Chapter 11) |
| Debtor. | § | |

| | | |
|---|---|---|
| INFINITY EMERGENCY MANAGEMENT | § | |
| GROUP, LLC, Individually and as Class B | § | |
| Non-Voting Members on Behalf of | § | |
| Series 114 - Eastside and Series 115 – Zaragoza, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | ADV. P. NO. 18-3276 |
| | § | |
| NEIGHBORS HEALTH SYSTEM, INC., et al, | § | |
| | § | |
| *Defendants.* | § | |

### PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT
### ON STANDING FILED BY PLAINTIFF MARK SHAPIRO,
### TRUSTEE OF THE UNSECURED CREDITOR TRUST

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

COMES NOW, INFINITY EMERGENCY MANAGEMENT GROUP, LLC,

Individually and as Class B Non-Voting Members on behalf of Series 114 – Eastside and Series

115 – Zaragoza (the "Plaintiff"), Plaintiff in the above styled adversary, and files its Plaintiff's

Response to Motion for Summary Judgment on Standing Filed by Plaintiff Mark Shapiro,

Trustee of the Unsecured Creditor Trust, and would show as follows:

## I.

## Infinity Adopts its Response to the Defendants' Motion for Summary Judgment

1.  The Trustee begins his motion by adopting the motion for partial summary judgment of the defendants and all summary judgment evidence in support of that motion. Specifically, the Trustee incorporates the Defendants' Motion to Dismiss at Docket No. 24, with all attached exhibits, the Defendants' Joint Motion for Summary Judgment at Docket No. 62, with all attached exhibits, and the Defendants' Joint Response to Infinity's Motion for Partial Summary Judgment at Docket No. 69, with all attached exhibits. Although Infinity believes this does not effectively raise those issues for the Trustee, at least not for preservation on appeal, to the extent the Court allows such an adoption, Infinity adopts its response to the defendants' motion for partial summary judgment and all of the summary judgment evidence in support of that response. Specifically, Infinity incorporates the following for purposes of the summary judgment record:

Infinity's Pleadings on Defendants' Motions to Dismiss:

- Docket No. 27 - Plaintiff's Response To Defendants, Dharmesh Patel And Neighbor's Investment Group, LLC's₁ Motion To Dismiss For Lack Of Standing, Failure To State A Claim Upon Which Relief Can Be Granted, Or In The Alternative, Motion For A More Definite Statement, with all attached exhibits.
- Docket No. 28 - Plaintiff's Response to Defendants' Motions to Dismiss, with all attached exhibits.
- Docket No. 34 - Plaintiff's Sur-Reply to Defendants' Reply to Plaintiff's Response to Defendants' Motions to Dismiss, with all attached exhibits.

Infinity's Motion for Partial Summary Judgment and Reply:

- Docket No. 59 - Plaintiff's Motion for Partial Summary Judgment on Issue of Ownership of Business, with all attached exhibits.
- Docket No. 73 - Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Partial Summary Judgment on Issue of Ownership of Business, with all attached exhibits.

Infinity's Response to Defendants' Cross-Motion for Partial Summary Judgment:

- Docket No. 68 - Plaintiff's Response to Defendants' Cross-Motion for Partial Summary Judgment on Issue of Ownership of Business, with all attached exhibits.

Infinity hereby incorporates these pleadings and their exhibits herein as if set forth at length.

## II.

### Infinity Has Standing, by the Trustee's Admissions, to Bring Derivative Claims of the Series Against Neighbors Health System, Inc. and the D&Os

2.    The motion for partial summary judgment filed by Mark Shapiro, Trustee of the Unsecured Creditor Trust (the "Trustee") should be denied, because there is a genuine issue of material fact as to whether Infinity has standing to bring derivative claims on behalf of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC (both non-debtors, collectively referred to as the "Series Entities") against Neighbors Health System, Inc. and the D&Os.  The derivative claims brought on behalf of the Series Entities are distinct and separate from the claims the Trustee is bringing on behalf of NEC Eastside Emergency Center, LP ("NEC Eastside") and NEC Zaragoza Emergency Center, LP ("NEC Zaragoza")(NEC Eastside and NEC Zaragoza collectively referred to as the "NEC Entities" or "Neighbors Debtor Entities"). This is made clear by the Trustee's First Amended Complaint, which only asserts derivative claims on behalf of Neighbors Debtor Entities, not on behalf of the Series.  In his amended complaint, the Trustee alleges:

### A. Derivative Allegations

67. The Unsecured Creditor Trustee brings this action on behalf of the Unsecured Creditor Trust asserting the claims assigned to the trust by the Neighbors Debtor Entities. To the extent that those claims are determined to be derivative claims brought in the right and for the benefit of the Neighbors Debtor Entities to redress injuries suffered, and to be suffered, by them as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment, as well as aiding and abetting of it, by the Neighbors Defendants and the Neighbors' O&Ds, the Neighbors Debtor

Entities are named as nominal defendants solely in a derivative capacity.

68. The Unsecured Creditor Trustee will adequately and fairly represent the interests of the Neighbors Debtor Entities in enforcing and prosecuting their rights.

(Doc. 85, pp. 14 – 15, highlighting added).  Since there is no question from the pleadings that the Trustee does not own any interest in the Series Entities, he cannot bring claims on behalf of the Series Entities.  The Trustee is not even attempting to bring claims of the Series Entities.  The only appropriate party with standing to bring claims on behalf of the Series Entities is Infinity, which owns Class B Series Interests in the Series Entities.  Based on this along, this Court should deny the Trustee's motion for summary judgment.

3.   The only question there could be is whether the nature of the claims the Trustee is alleging in his First Amended Complaint are identical to the claims that Infinity is alleging in its Fourth Amended Complaint.  If they are identical, the Court must unravel who has the standing to bring the claim.  This question is easily answered from the parties' complaints – the claims are not by their nature identical; rather, they are wholly separate and distinct.

4.   The Trustee's entire argument is centered around who "owned the business of the clinics," attaching licenses held in the name of the NEC Entities for each of the emergency clinic locations.  Although the Court initially believed that the issue of "who owned the business" may be determinative of who has the right to bring the derivative claims, it has now become apparent that this is not so.  The Trustee argues that the parties always intended for the business operations of the emergency clinics to be run by the NEC Entities and not the Series Entities.  Infinity has argued that the business operations were always intended to be run by the Series Entities.  But drilling down further into what each plaintiff contends, it is apparent that "who owned the business" goes to damages at best, not to who has standing to assert the claims, which are by their very nature separate and distinct.

5.   The Neighbors Debtor Entities and the Series Entities have each alleged claims against Neighbors Health System, Inc. and the D&Os for their negligence and breach of fiduciary duties, citing duties owed under common law and under a management and administrative services agreement.  However, each had different agreements entered on different dates.  Although the agreements read virtually the same, the businesses that Neighbors Health System, Inc. was operating under these agreements were different.  The Trustee's own amended complaint recognizes this difference. The Trustee states in the allegations in his amended complaint that the Series Entities were created to hold and distribute profits of the emergency clinics.  The Trustee's amended complaint reads:

35. To structure the operation of each of the new facilities, the Neighbors' O&Ds formed separate entities (the "NEC Entities") with respect to each emergency center they opened. Each NEC Entity was individually licensed by the State of Texas to operate the emergency center at its respective location.[5]

36. Each NEC Entity was owned 99% by NHS Emergency and 1% by Neighbors GP. However, the "profits and losses" in each of these entities was owned via membership interests in a "Series LLC" that were tied to the profits and losses of each specific emergency center. These Series LLCs did not own or operate the emergency centers. Instead, they were intended to be a mechanism to distribute the profits and losses of each center.[6]

37. These Series LLCs were co-owned by the Neighbors' O&Ds and local emergency physicians who would staff them. Typically, the Neighbors' O&Ds would own 35% of each new entity (directly or indirectly) and the local emergency physicians would own 65% (directly or

_____

[5] *See, e.g.,* Ex. A, State of Texas License for NEC Zaragoza Emergency Center, LP and NEC Eastside Emergency Center, LP.

[6] *See,* Defendants Joint Motion for Partial Summary Judgement at Cause No. 18-03276, Docket No. 62 at p. 3.

indirectly). This was supposed to be the mechanism that the profits and losses for each emergency center would be distributed to the Neighbors' O&Ds and local emergency physicians who staffed them.

(Doc. No. 85, p. 7, highlighting added).  So taking the Trustee's allegations as true (which Infinity of course disputes in Section II below) Neighbors Health System, Inc. and the D&Os owed a fiduciary duty to the Series Entities to manage, keep separate, account for, protect, and distribute the profits from the operations of the emergency clinics to the Series Entities.  To not do so and to allow the profits to be mixed and transferred to other entities is a breach of those duties and negligent conduct to the Series Entities alone.  The Trustee does not own such claims, has no standing to assert such claims, and in fact has not asserted those claims (or any other) on behalf of the Series Entities.

6.    The Trustee admits in his amended complaint that the NEC Entities had no right to the profits of the emergency clinics, but claims that the NEC Entities owned the assets and operations of those clinics.  Assuming this is true, the Trustee's claims against Neighbors Health System, Inc. and the D&Os is for the breach of their fiduciary duties to the NEC Entities by transferring the operating funds of the NEC Entities to other Debtor entities.  The transfer breached fiduciary duties to the NEC Entities by moving their operating funds and thus depriving the NEC Entities of the use of those operating funds. Ultimately, this may have led to a diminution of the value of the assets owned by the NEC Entities.  This is separate and distinct from a breach of fiduciary duties to the Series Entities by failing to account for, segregate, and distribute the Series Entities' profits to the Series Entities.  That conduct breached fiduciary duties to the Series Entities by failing to protect the Series Entities' profits and allowing those profits to be distributed to other entities.  Ultimately, this deprived the Series Entities of the profits that only they owned.  In short, Neighbors Health System, Inc. and the D&Os owed fiduciary duties to the Series Entities that were separate and distinct from the fiduciary duties owed to the NEC Entities.  The duties owed to the Series Entities were to segregate and protect

the profits owned by the Series.  The duties owed to the NEC Entities were to maintain and manage the operating funds of the NEC Entities.  (Of course, this is assuming for argument that the Trustee is correct that the operating business was owned by the NEC Entities). These defendants wore different hats in their roles with the different entities.  There is nothing unusual about a defendant's conduct breaching duties to multiple plaintiffs, and those multiple plaintiffs each having their own claims for the defendant's breaches.  That is the case here.

7.   If the Trustee is correct that the NEC Entities "owned the businesses" of the emergency clinics, then the breach of the duties owed by the D&Os to the NEC Entities caused damages associated with this ownership, with the exception of profits, which the Trustee admits were owned by the Series Entities.  The NEC Entities' damages would be the difference in the value of the business caused by the breach.  Since the NEC Entities already sold the assets of the emergency clinics in a sale approved by this Court, the measure of damages would be the difference between the value of the assets of the businesses without the transfers of operating funds and the sales price actually obtained in the sale for those assets.  Again, if the Trustee is correct about ownership, then the breach of the duties owed by Neighbors Health System, Inc. and the D&Os to the Series Entities caused damages associated with the Series Entities' ownership of the profits.  Those damages would be the difference between the profits the Series Entities would have received over a reasonable period time if the funds had segregated and safeguarded and the profits received through 2018. These are clearly different damages resulting from the separate and distinct conduct on behalf of the NEC Entities and the Series Entities.

8.   To put this simply: The Trustee has standing to bring claims assigned to the Unsecured Creditors Trust by the Neighbors Debtors against the D&Os for their breach of duties owed to the NEC Entities that proximately caused damages to the value of the NEC Entities'

assets. (2) Infinity has standing to bring claims on behalf of the Series Entities against Neighbors Health System, Inc. and the D&Os for their breaches of duties owed to the Series Entities that proximately caused damages to the profits the Series Entities owned the rights to.  This presents a genuine issue of material fact as to who has standing to bring the claims against the defendants in this case, and this Court should deny the Trustee's motion for partial summary judgment.

9.   This is where "ownership of the businesses" may come into play – the damages that flow from the D&Os breaches of the duties owed to the NEC Entities and the Series Entities. Trial of who "owned the businesses" of these clinics only impacts which plaintiff has the right to seek damages to the value of the assets of the business.  It has no bearing or impact on which plaintiff has the right to bring claims for damages to the profits.  (Everyone in this case admits that only the Series Entities owned profits generated by the emergency centers.)  For instance, if the fact finder were to find that the NEC Entities were only created to own the buildings, the leases and the equipment in the buildings, the NEC Entities could only be awarded damages based on the difference in the value they would have received for those assets had the transfers not been made and the price they were paid in sale of those assets.  If the fact finder were to find that the NEC Entities were also created to own the operations of the clinics, the NEC Entities could be awarded damages based on the difference in the value as a going concern had the transfers not been made and the price they were paid for the sale of the assets only.  Although a business valuation would be based on profitability of these businesses, these damages models do not overlap. The Series Entities can be awarded profits they were denied that they would have earned and the NEC Entities can be awarded the overall value of the businesses they were denied.  Again, assuming that the Trustee is correct that the Series Entities only owned the profits of the businesses, had the transfers by the D&Os not occurred, the Series would have had

significant profits for a reasonable number of years past 2018.  At some point, the NEC Entities may have decided, based on the profitability of the businesses, to sell the businesses as going concerns.  The sales proceeds, although based on profits, would not have been profits.  The NEC Series would have the benefit of the sales price of the businesses as a going concern.

10. Taking the Trustee's amended complaint together with the Trustee's motion for partial summary judgment, it is clear that Infinity has standing to pursue the claims owned by the Series Entity for breaches that caused damages to the profits, which only the Series Entities owned.  There is at least a genuine issue of material fact that precludes summary judgment.  This Court should deny the Trustee's motion for summary judgment.

### III.

### Infinity Has Standing to Bring All Derivative Claims As "Owner of the Businesses" Operations

11. Alternatively, this Court should deny the Trustee's motion for partial summary judgment, because there is at least a genuine issue of material fact that Infinity owns the derivative claims that the Trustee has asserted against Neighbors' Health System, Inc. and the D&Os.  The Series Entities "owned the business" of operating the freestanding emergency departments in El Paso.  The fact that the licenses for the facilities were held in the name of the NEC Entities does not mean that the NEC Entities "owned the businesses" operations.  The NEC Entities, as owners of the building and improvements, did own the facility itself and as such were the appropriate entities to hold the facility licenses.  The NEC Entities were also to bill for the facility fees for patient visits, as owners of the facility.  However, the Series Entities owned the operation of the emergency medical services provided at the facility.  Neighbors Health System, Inc., as manager, was supposed to be contracting with a medical billing company on behalf of the Series Entities to bill the physician fees, which a facility owner cannot bill for.  The

physician fees were supposed to be deposited into bank accounts owned and controlled by the Series Entities, not the NEC Entities.  Neighbors Health System, Inc. and the D&Os ignored this of course, and instead kept the physician fees and allowed them to be transferred off to other debtor entities.

12. To this end, one must as "how does the billing process work in emergency centers? According to the Centers for Medicare & Medicaid Services (CMS), the federal agency within the United States Department of Health and Human Services (HHS) responsible for healthcare billing and payments, physicians acting as independent contractors are not employees of the emergency centers. They are separate legal entities that operate in the same building with the emergency centers and therefore they are required to bill separately for their services in the emergency centers. So once a patient is seen, the patient will always receive two separate bills for their visit to the emergency center. One bill will be for "Physician Service Fees" and the other for "ER Facility Fees". The first bill, called the "Physician Service Fees", will come directly on from the physicians group entity and covers the cost of being seen by a physician during the patient's visit. The second bill, called the "ER Facility Fees" will cover overhead, labs, x-rays, CT scans and other charges, and it will come directly from the emergency center facility.

13. In this case, the NEC Entities were set up to own and hold the leasehold, improvements, and equipment of the facility.  Thus, it is no surprise that the facility license was held in the name of the NEC Entities.  It is also no surprise that the NEC Entities billed the ER Facility Fees.  Finally, it is no surprise that the NEC Entities as debtors in the case engaged in an asset sale, selling the assets of the NEC Entities.  However, the Series Entities were established to operate the business operations providing emergency physician services at the freestanding

emergency departments and bill the Physician Services Fees. Finally, as the Trustee admits in his amended complaint and his motion for partial summary judgment, ALL PROFITS generated by the operation of the emergency centers were owned by the Series Entities, including profits generated by the ER Facility Fees.  This was accomplished by the fact that the Series Entities, not Neighbors Emergency Centers, LLC, owned the 99% limited partnership interest of the NEC Entities.

14. In fact, the summary judgment record is filled with summary judgment evidence showing that the Series Entities owned all the business operations of the emergency centers, and the 99% limited interest in the NEC Entities.  Examples of the specific summary judgment evidence are:

(i)     The NEC Entities 2015 and 2016 federal income tax returns showing the Series Entities as owners of the 99% limited partnership interest of the NEC Entities. (Exhibit 41, p. LT000819; Exhibit 42, p. LT000458; Exhibit 43, p. LT000856; and Exhibit 44, p. LT000425 of Plaintiff's Motion for Summary Judgment, Docket Nos. 59-42 through 59-45).

(ii)    The marketing material used by Neighbors Emergency Centers, LLC evidencing the Series Entities and their doctor investors as owners of the emergency center businesses. (Exhibit 31 of Plaintiff's Motion for Partial Summary Judgment, Docket No. 59-32; Exhibit 37, pp. 6 and 14 of Plaintiff's Motion for Partial Summary Judgment, Docket No. 59-38; Exhibit 2 of Plaintiff's Response to Defendants' Joint Motion for Partial Summary Judgment, Docket No. 68-2, pp. 36 and 56 of 74; Exhibit 3 of Plaintiff's Response to Defendants' Joint Motion for Partial Summary Judgment, Docket No. 68-3, p. 2 of 6).

11

(iii)     The financial statements Neighbors Health System, Inc. provided to Infinity showing the Series Entities' income and expenses from operations. (Exhibit 35 of Plaintiff's Motion for Partial Summary Judgment, Docket No. 59).

(iv)     The emails of Neighbors Health System, Inc. and the D&Os admitting that the Series Entities owned the emergency center businesses. (See Exhibit 38, p. LT017452 (from Director Paul Alleyne copying other directors); Exhibit 39, p. LT033050 (from John Decker, CFO of Neighbors Health System, Inc.) of Plaintiff's Motion for Summary Judgment, Docket No. 59-39 and Exhibit 7 of Plaintiff's Response to Defendants' Joint Motion for Partial Summary Judgment, Docket No. 68-7 (from Tom Gruenert, General Counsel, copying Setul Patel)).

The Series Entities "owned the businesses" of the emergency centers.  ER Facility Fees were billed by the NEC Entities which owned physical assets and Physician Fees were billed by a physician group entity, but the ownership of the business operations was in the Series Entities, and all profits were, by the very structure established, pushed out of the NEC Entities into the Series Entities which owned those profits.

15. Infinity's summary judgment evidence creates a genuine issue of material fact on this issue that precludes summary judgment for the Trustee.  The summary judgment evidence at least establishes a genuine issue of material fact as the whether the NEC Entities or the Series Entities "owned the businesses."  This Court should deny the Trustee's motion for partial summary judgment.

Respectfully submitted,

**WAUSON | PROBUS**

By:    /s/ Matthew B. Probus
        **Matthew B. Probus**
        TBA# 16341200
        Fed. I.D. # 10915
        **John Wesley Wauson**
        TBA # 20988200
        Fed. I.D. # 1866

One Sugar Creek Center Blvd., Suite 880
Sugar Land, Texas 77478
(281) 242-0303 telephone
(281) 242-0306 facsimile

*ATTORNEYS FOR PLAINTIFF,*
*INFINITY MANAGEMENT GROUP, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been forwarded by electronic delivery through the ECF/PACER system and via United States regular mail, first class postage prepaid, to the parties listed below on this the 23rd day of March 2020:

Staton M Childers
Adams and Reese, LLP
LyondellBasell Tower
1221 McKinney, Suite 4400
Houston, Texas 77010
Staton.childers@arlaw.com

Paul D Flack
Pratt and Flack LLP
1331 Lamar Street, Suite 1250
Houston, TX 77010
pflack@prattflack.com

Jarrod B. Martin
McDowell Hetherington LLP
1001 Fannin Street Suite 2700
Houston, TX 77002
Jarrod.Martin@mhllp.com

13

Millard A Johnson
Johnson DeLuca Kennedy & Kurisky, P.C.
1221 Lamar, Suite 1000
Houston, TX 77010
mjohnson@jdkglaw.com

James G Munisteri
Foley Gardere
1000 Louisiana, Suite 2000
Houston, TX 77002
jmunisteri@foley.com

Christina Minshew Lewis
Moyer Patton
11767 Katy Freeway, Suite 990
Houston, TX 77079
clewis@moyerpatton.com

Felice R. Yudkin
Warren Usatine
Cole Schotz, P.C.
25 Main Street
Hackensack, NJ 07601
fyudkin@coleschotz.com
wusatine@coleschotz.com

Clifford Walston
WALSTON BOWLIN, LLP
4299 San Felipe Street, Suite 300
Houston, Texas 77027
cliff@walstonbowlin.com

                                    */s/ Matthew Probus*
                                    Matthew Probus

14