IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § § | Chapter 11 |
| NEIGHBORS LEGACY HOLDINGS, LLC, | § § § § | Case No. 18-33836 |
| Debtors. | § § § | |
| INFINITY EMERGENCY MANAGEMENT GROUP, LLC, | § § § § | |
| *Plaintiff*, | § § | Adversary No. 18-03276 |
| v. | § § § | |
| NEIGHBORS HEALTH SYSTEMS, INC., NEIGHBORS HEALTH, LLC, NEIGHBORS INVESTMENT GROUP, NEIGHBORS GP, LLC, SETUL G. PATEL, M.D., PAUL ALLEYNE, M.D., MICHAEL CHANG, M.D., ANDY CHEN, M.D., CYRIL GILLMAN, M.D., QUANG HENDERSON, M.D., DHARMESH PATEL, M.D., AND HITESH PATEL, MD., | § § § § § § § § § § § § § § | |
| *Defendant.* | § | |

**SUPPLEMENTAL BRIEF ON ISSUES OF STANDING
FILED BY PLAINTIFF MARK SHAPIRO,
TRUSTEE OF THE UNSECURED CREDITOR TRUST**

1

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

COMES NOW, PLAINTIFF MARK SHAPIRO, TRUSTEE OF THE UNSECURED CREDITOR TRUST OF NEIGHBORS LEGACY HOLDINGS, INC. AND ITS DEBTOR AFFILIATES and files this Supplemental Brief on Issues of Standing.

By way of its order, the Court has requested supplemental briefing on the following question:

> **Does the concept of beneficial title vs. legal title impact the Court's analysis of who has standing to bring the injury claims asserted in this case against the Directors and Officers for the mismanagement of the Zaragoza and Eastside freestanding emergency centers?**

The Trustee would respectfully answer that the concept of beneficial title does not impact the Court's analysis in this matter because the concept of beneficial title involves the notion of holding funds (or assets) for the benefit of another (such as holding funds in trust), and there is no evidence whatsoever in the record of any agreement by the LPs at issue in this matter to hold funds in trust (or otherwise) for the benefit of the Series LLCs.  By contrast, all the evidence in this matter establishes that the LPs were the entities that operated the business of running the freestanding emergency rooms and those LPs made distributions to its partners (including the Series LLCs), who then in turn made discretionary distributions to the members of the LLCs, including Infinity Emergency Management Group, LLC ("Infinity"), a class B shareholder.  As a result, there is no evidence of the LPs holding assets of the Series LLCs for their benefit of the nature that is

addressed in the Court's opinion in S*ommers v. Katy Steel Co. (In re Contr. Tech., Ltd.*). [1] Therefore, this concept is not applicable to the facts at issue in this case.

## I. ANALYSIS

What is beneficial title? As the Court addressed in S*ommers v. Katy Steel Co. (In re Contr. Tech., Ltd.*),[2] the concept of beneficial title vs. equitable title is one in which a debtor may hold only legal title in certain assets but not an equitable interest such that it created beneficial title.[3] "Property in which the debtor holds . . . only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property but not to the extent of any equitable interest in such property that the debtor does not hold."[4] For example, the Fifth Circuit applied this concept and held that "the bankruptcy estate may retain legal title over the trust, but the beneficiaries of the trust may reclaim their equitable interests in the trust fund."[5] This concept makes perfect sense. To the extent that a trust bank account is titled in a debtor's name, the account is property of the estate, but the funds in that account belong to the beneficiaries, who may reclaim them. That is the fundamental concept of any trust or escrow account.

However, this concept is in complete contrast to the factual scenario at issue in this matter. Infinity would have the Court believe that there was some sort of agreement for the LPs to hold funds that belonged to the Series LLC in trust for their benefit. However, there is no documentation—corporate, tax, or otherwise—that supports such a claim. Rather, the LPs were

---

[1] 343 B.R. 573 (Bankr. S.D. Tex. 2006), *aff'd Varela v. Sommers*, 2006 U.S. Dist. LEXIS 80109 (S.D. Tex., Nov. 2, 2006), aff'd 229 Fed. Appx. 294, 2007 U.S. App. LEXIS 12162 (5th Cir. 2007)(per curiam).
[2] *Id.*
[3] *Id.* at *22.
[4] *Id.* (internal emphasis removed).
[5] *Id.* (citing *In re Al Copeland Enters., Inc.*, 991 F.2d 233, 235 (5th Cir. 1993)(internal quotations omitted).

3

the sole entities that were licensed to operate a freestanding emergency room.[6] They did so by billing insurance companies, collecting revenues, paying leases, paying physician salaries, purchasing supplies, and paying other expenses.[7] As a result, they calculated the net income for the LP and allocated that income for tax purposes to its general and limited partners, including the Series LLCs.[8] The Series LLCs then at their "sole discretion, distribute[ed] to the Members the amount by which cash on hand exceed[ed] the amount necessary or appropriate to meet the current costs, expenses and liabilities of the Series . . ."[9] Thus, there is no genuine issue of material fact that there was never any agreement for the LP to hold in trust or by any other equitable means the property of the Series LLCs for their benefit. Rather, all the uncontroverted evidence clearly establishes that the business of operating a freestanding emergency center was conducted by the LPs and the Series LLCs received distributions just as in any other limited partnership context.

Likewise, the Court's holding in *In re Black Elk Energy Offshore Operations, LLC* cited by Infinity is not instructive either, because the claims at issue in that matter (failure to make tax distributions to its equity holders) was not an injury to bankrupt entity.[10] By contrast, the claims at issue in this matter—that the D&Os mismanaged and engaged in self-dealing with respect to the Debtor thereby injuring them—is an injury to the Debtors and the creditor estate itself. Infinity's argument that its claims do not involve an injury to the estate that flows through the estate to injure the creditors is belied by the simple fact that all the debt of the Debtors was cross guaranteed by all of the Debtors before the Court. Therefore, the increased profitability of the Debtors would have reduced the massive amount of debt before the Court, and claims against the

---

[6] *See* Applications and Licenses (Docket No. 88, Exs. 1-2).
[7] *See* Tax Returns (Docket No. 59, Exs. 41-44).
[8] *Id.*
[9] *See* Series Agreement at p. 6, ¶H (Docket No. 59, Ex. 8).
[10] 2016 Bankr. LEXIS 2708 at *10.

D&Os addressing those wrongdoings would benefit the creditor estate. As a result, these D&O claims are derivative claims that flow through the estate to the creditors and the Court's opinion in *In re Black Elk Energy Offshore Operations, LLC* does not support the notion that Infinity's assertion it holds "beneficial title" to the D&O claims.

## II. CONCLUSION

Because no genuine issue of material fact exists regarding which entities owned and operated the emergency clinics, Infinity has no standing to pursue any cause of action seeking damages related to the operation of the emergency clinics because NEC Eastside Emergency Center, LP and NEC Zaragoza Emergency Center, LP—both debtor entities—owned the clinics, respectively. Additionally, there is no evidence that the LPs were holding any funds or assets for the benefit of the Series LLCs of the nature involved in the concept of "beneficial title." As such, the Trustee is entitled to judgment as a matter of law, and the Court should grant the Trustee's motion.

Respectfully Submitted,

**WALSTON BOWLIN, LLP**

*/s/ Clifford H. Walston*
CLIFFORD H. WALSTON
cliff@walstonbowlin.com
State Bar No. 24037666
4299 San Felipe Street, Suite 300
Houston, Texas 77027
(713) 300-8700
(713) 583-5020 Fax
**ATTORNEY FOR PLAINTIFF MARK SHAPIRO, TRUSTEE OF THE UNSECURED CREDITOR TRUST**

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing document was filed and served electronically, via the ECF system, on the 9th of July, 2020.

*/s/ Clifford H. Walston*
Clifford H. Walston