**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **NEIGHBORS LEGACY HOLDINGS, INC.,** | § | **CASE NO. 18-33836-H1-11** |
| | § | **(Chapter 11)** |
| Debtor. | § | |

| | | |
|---|---|---|
| **INFINITY EMERGENCY MANAGEMENT** | § | |
| **GROUP, LLC, Individually and as Class B** | § | |
| **Non-Voting Members on Behalf of** | § | |
| **NHS Emergency Centers, LLC Series 114 -** | § | |
| **Eastside and NHS Emergency Centers, LLC** | § | |
| **Series 115 – Zaragoza,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **VS.** | § | **ADV. P. NO. 18-3276** |
| | § | |
| **TENSIE AXTON, Trustee of the** | § | |
| **NLH Liquidating Trust, representative and** | § | |
| **successor-in-interest to** | § | |
| **Neighbors Health System, Inc. and** | § | |
| **NHS Emergency Centers, LLC,** | § | |
| **NEIGHBORS INVESTMENT GROUP, LLC,** | § | |
| **SETUL G. PATEL, M.D.,** | § | |
| **Individually and in his capacity as officer** | § | |
| **and director; PAUL ALLEYNE, M.D.,** | § | |
| **Individually and in his capacity as officer and** | § | |
| **director; CYRIL GILLMAN, M.D.,** | § | |
| **Individually and in his capacity as officer and** | § | |
| **director; MICHAEL CHANG, M.D.,** | § | |
| **Individually and in his capacity as officer and** | § | |
| **director; ANDY CHEN, M.D.,** | § | |
| **Individually and in his capacity as officer and** | § | |
| **director; QUANG HENDERSON, M.D.,** | § | |
| **Individually and in his capacity as officer and** | § | |
| **director; HITESH PATEL, M.D.,** | § | |
| **Individually and in his capacity as officer and** | § | |
| **director; AND DHARMESH PATEL, M.D.,** | § | |
| **Individually and in his capacity as officer and** | § | |
| **Director,** | § | |
| | § | |
| *Defendants.* | § | |

1

## PLAINTIFF'S FIFTH AMENDED COMPLAINT

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

COMES NOW, INFINITY EMERGENCY MANAGEMENT GROUP, LLC, Individually and as Class B Non-Voting Members on behalf of NHS Emergency Centers, LLC Series 114 – Eastside and NHS Emergency Centers, LLC Series 115 – Zaragoza ("Plaintiff"), Plaintiff in the above styled adversary, and files this Plaintiff's Fifth Amended Complaint, and for cause of action would show as follows:

### I.

### Jurisdiction and Venue

1.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).  The claims in the adversary are "related to" claims, not "core."  Pursuant to 28 U.S.C. § 157(c)(1), the bankruptcy judge may hear the proceeding and submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matter to which any party timely objects.

### II.

### Parties

2.  Plaintiff Infinity Emergency Management Group, LLC is a Texas limited liability company, with its principal place of business located in El Paso, El Paso County, Texas.

3.    Defendant Tensie Axton, Trustee of the NLH Liquidating Trust, is the representative and success-in-interest to Neighbors Health System, Inc. and NHS Emergency Centers, LLC,[1] and may be served at her principal place of business located at 1301 McKinney Street, Suite 3500, Houston, Texas 77010, or wherever she may be found.

4.    Defendant Neighbors Investment Group, LLC ("Neighbors Investment") is a Texas limited liability company that has answered and appeared and may be served by and through its counsel of record, Staton M. Childers, Adams and Reese, LLP, 1221 McKinney, Suite 4400, Houston, Texas 77010.

5.    Defendant Setul G. Patel, M.D., in his capacity as an officer and director, is an individual who has answered and appeared and may be served by and through his counsel of record Paul D. Flack, Pratt and Flack, LLP, 4306 Yoakum Blvd., Suite 500, Houston, Texas 77006.

6.    Defendant Paul Alleyne, M.D., in his capacity as an officer and director, is an individual who has answered and appeared and may be served by serving his counsel of record Millard A. Johnson, Johnson DeLuca Kennedy & Kurisky, P.C., 1221 Lamar, Suite 1000, Houston, Texas 77002.

7.    Defendant Cyril Gillman, M.D., in his capacity as an officer and director, is an individual who has answered and appeared and may be served by serving his counsel of record Millard A. Johnson, Johnson DeLuca Kennedy & Kurisky, P.C., 1221 Lamar, Suite 1000, Houston, Texas 77002.

---

[1]    Throughout the complaint, reference is made to Neighbors Health System, Inc. and its conduct, since the conduct was its conduct, not Tensie Axton's conduct.  Nevertheless, all reference to Neighbors Health System, Inc. is a reference to Tensie Axton as she is now the representative of the Liquidating Trust that is the success-in-interest to Neighbors Health System, Inc.

8.   Defendant Michael Chang, M.D., in his capacity as an officer and director, is an individual who has answered and appeared and may be served by serving his counsel of record Jay Munisteri, Foley Gardere, 1000 Louisiana, Suite 2000, Houston, Texas 77002.

9.   Defendant Andy Chen, M.D., in his capacity as an officer and director, is an individual who has answered and appeared and may be served by serving his counsel of record Jay Munisteri, Foley Gardere, 1000 Louisiana, Suite 2000, Houston, Texas 77002.

10.   Defendant Quang Henderson, M.D., in his capacity as an officer and director, is an individual who has answered and appeared and may be served by serving his counsel of record Jay Munisteri, Foley Gardere, 1000 Louisiana, Suite 2000, Houston, Texas 77002.

11.   Defendant Hitesh Patel, M.D., in his capacity as an officer and director, is an individual who has answered and appeared and may be served by serving his counsel of record Jay Munisteri, Foley Gardere, 1000 Louisiana, Suite 2000, Houston, Texas 77002.

12.   Defendant Dharmesh Patel, M.D., in his capacity as an officer and director, is an individual who has answered and appeared and may be served by serving his counsel of record Christina Minshew Lewis, Moyer Patton, 11767 Katy Freeway, Suite 990, Houston, Texas 77079.

13.   Dr. Paul Alleyne, Dr. Cyril Gillman, DR. Michael Chang, Dr. Andy Chen, Dr. Quang Henderson, Dr. Setul Patel, Dr. Hitesh Patel, and Dr. Dharmesh Patel are hereinafter collectively referred to as the "Neighbors O&Ds" or the "Gang of Eight."

## III.

## Background Facts

14. Dr. Samara Bowen, MD is a physician specializing in emergency medicine services practicing in the El Paso, Texas area. Her husband, Jermaine Bowen, runs the financial aspects of her practice. In 2013, the Bowens learned about a new business opportunity in Texas for emergency medicine physicians to own and operate freestanding emergency departments ("FEDs") independent of hospitals. The Bowens decided to research the FED opportunity. After researching the possibilities, they decided to move forward with opening their own FED. They discussed the opportunity with several of Dr. Bowen's physician colleagues and assembled a group of other interested emergency medicine physicians.

15. In mid-2014, the Bowens heard about a separate group of doctors based out of Houston who had already launched several of their own FEDs and were looking to partner with other doctors outside of Houston to launch FEDs in other cities. Dr. Paul Alleyne approached the Bowens about a possible business venture with a company he represented that he and other doctors were already running called NHS Emergency Centers, LLC. Dr. Alleyne told the Bowens that NHS Emergency Centers, LLC already had several FEDs open and operating profitably under the "Neighbors Emergency Center" brand.

16. On July 11, 2014, Dr. Paul Alleyne and Dr. Setul Patel came to El Paso and made a presentation to the Bowens and several other emergency medicine physicians in their group at the El Paso Coronado Club about the possible business investment. The Bowens informed Dr. Alleyne and Dr. Patel about the vast emergency medicine market in the Midland/Odessa and El Paso, Texas areas and that these would be great locations to open FEDs. The Bowens further informed them that they were looking into opening sites in these two cities. Dr. Alleyne and Dr. Patel informed

the Bowens that partnering with them would make the process of opening new FEDs easier and quicker, because they already had the experience and the working model in place from their previous four centers in Houston.  Dr. Alleyne and Dr. Patel further stated that since their group had already obtained a $30 million dollar loan, the Bowens would not have to take out personal loans and personally guarantee any of those loans in order to open FEDs on their own. They told the Bowens that once the FEDs opened, the FEDs would simply repay their portion of the funds from the Neighbors' bank loan that was used to build out the interior of the FEDs from revenue generated by the FEDs. The bank loan for the interior build out was estimated to cost approximately$2.5 million per site[2].  The FEDs would be owned and operated by series LLCs that NHS Emergency Centers, LLC would form.  The Bowens' group would own the majority percentage of the series LLCs and run the businesses, including staffing the businesses as owners/operators. Dr. Alleyne and Dr. Patel and their fellow non-active co-owners would own a percentage of these series LLCs as well.

17. At the meeting, and following the meeting in telephone conversations, emails and texts, Dr. Paul Alleyne and Dr. Setul Patel made numerous statements and representations to the Bowens and their group of emergency physicians about how the business venture would work. They represented that the series LLCs would hire an affiliate of NHS Emergency Centers, LLC named Neighbors Health System, Inc. for a negotiated monthly fee to provide all the back-office administrative support services for the FEDs.  Dr. Alleyne and Dr. Patel represented that the staff emergency physicians in the Bowens' group would be independent contractors of the Series businesses and the profits from the physician services billing would go into the series LLCs.  They

---

[2] Actual note payable to Keybank, as reported on Balance Sheet as of December 31, 2015, provided by Neighbors Health Systems, Inc. was $2,666,692.52 for Series 114 – Eastside, LLC and $2,939.642.02 for Series 115 – Zaragoza, LLC.

represented that the real property leases and improvements and equipment would be held in separate limited partnerships, the limited partnership interests of which would be owned by the series LLC entities.  The limited partnerships would hold the facility billing numbers, provide the facility billing, and return net profits from the facility fees to the series LLC entities. Dr. Setul Patel and Dr. Paul Alleyne represented that the Bowens' group of emergency physicians would staff and run the El Paso FEDs, and NHS Emergency Centers, LLC's affiliate Neighbors Health System, Inc. would provide back-office management services for the El Paso FEDs.  They further represented that Neighbors Health System, Inc. would manage the El Paso FEDs separate and apart from all other series FEDs, keep their Series Propertysegregated, safeguard their profits, and pay the Bowens' group its share of net profits periodically as available.  Dr. Paul Alleyne and Dr. Setul Patel represented that the El Paso FEDs would break-even within 6-months and the Bowens' group would start seeing membership distribution payout at around 3-months after opening.

18. After hearing the live presentation by Dr. Paul Alleyne and Dr. Setul Patel and the numerous representations made by them after the meeting, the Bowens' group decided to move forward and partner with Dr. Alleyne and Dr. Patel's group of physicians in setting up and operating two FEDs in the El Paso area. They began negotiating the ownership split. The parties ultimately agreed on 65% for the Bowens' group for a $500,000 capital contribution investment per FED, with the contribution to be used to fund cashflow of the operation until the FED became profitable.

19. NHS Emergency Centers, LLC formed Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC to own and operate the two El Paso FEDs. The Bowens' group formed Infinity Emergency Management Group, LLC as a vehicle to own membership interests in those series LLCs. The Neighbors O&Ds formed Neighbors Investment Group, LLC as a vehicle to own

membership interests in those series LLCs as well.  Relying on Dr. Paul Alleyne's and Dr. Setul
Patel's representations, Infinity Emergency Management Group, LLC paid NHS Emergency
Centers, LLC $500,000.00 to purchase 6,500 Class B non-voting series membership interests in
Series 114 – Eastside, LLC and another $500,000.00 to purchase 6,500 Class B non-voting series
membership interests in Series 115 – Zaragoza, LLC.  These interests represented a total of 65%[3]
of the series interests in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC. Neighbors
Investment Group, LLC paid NHS Emergency Centers, LLC a total of $35,990.00 to purchase
Class A voting series membership interests in Series 114 – Eastside, LLC and Series 115 –
Zaragoza, LLC representing a total of 34% of the series interests in Series 114 – Eastside, LLC
and Series 115 – Zaragoza, LLC.[4]

20. Relying on Dr. Paul Alleyne's and Dr. Setul Patel's representations, Series 114 –
Eastside, LLC and Series 115 – Zaragoza, LLC entered into Series Management and
Administrative Services Agreements with Neighbors Health System, Inc.  Relying on these
representations, Plaintiff agreed to devote its group of emergency physicians completely to staffing
the two El Paso FEDs.  The Neighbors O&Ds, in their capacity as officers and directors of
Neighbors Health System, Inc., made all decisions as manager of Series 114 – Eastside, LLC and
Series 115 – Zaragoza, LLC. Neighbors Health System, Inc., as manager of Series 114 – Eastside,
LLC and Series 115 – Zaragoza, LLC, owed a fiduciary duty to these series entities and to Plaintiff
as member of the series LLCs.

---

[3]   The federal income tax return for Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC reflected 65.7%
membership interest owned by Plaintiff and 34.3% membership interest owned by Neighbors Investment Group, LLC
.

[4]   Dr. Setul Patel paid $5,23.75, Dr. Dharmesh Patel paid $5,123.75, Dr. Cyril Gilman paid $5,123.75, Dr. Paul
Alleyne paid $5,123.75, Dr. Andy Chen paid $5,123.75, Dr. Michael Chang paid $5,123.75, Dr. Quang Henderson
paid $5,123.75, Dr. Hitesh Patel paid $5,123.75, and Neighbors GP, LLC paid $10.00.

21. Neighbors Health System, Inc. worked with a real estate broker named Read King, Inc. to locate sites for the two El Paso FEDs.  The Plaintiff was involved in some of the real estate development conferences and assisted Read King, Inc. in locating the El Paso sites.  One site located was just off Texas Hwy. 375 at 12101 Edgemere, El Paso, Texas 79938 (the "Eastside FED"). The other site was located on N. Zaragoza Road between I-10 and Hwy. 375 at 1540 Zaragoza Road, El Paso, Texas 79936 (the "Zaragoza FED").  Since the Zaragoza FED was located first, the parties anticipated that it would be opened and operating prior to Eastside FED.

22. NEC Zaragoza Emergency Center, LP was formed to serve as the vehicle to lease the real property, obtain the loan for the buildout of the improvements, and purchase and/or lease the office and medical equipment needed for the Zaragoza FED.  NEC Zaragoza Emergency Center, LP signed a long-term lease agreement for the real property at the Zaragoza FED location. Similarly, NEC Eastside Emergency Center, LP was formed to serve as the vehicle to lease the property, obtain a loan for construction of improvements, and purchase and/or lease the office and medical equipment needed for the Eastside FED.  NEC Eastside Emergency Center, LP signed a long-term lease agreement for the real property at the Eastside FED location.

23. Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC were owner/operators and were responsible for the income-generating emergency medicine physician clinical staffing of the Eastside and Zaragoza FEDs. Infinity Emergency Management Group, LLC participated in and contributed to Series 114 – Eastside, LLC's and Series 115- Zaragoza, LLC's business operations by interviewing and hiring non-medical staff personnel and participating and contributing to local sales and marketing strategies and contracts. Infinity Emergency Management Group, LLC provided the emergency room physician staffing for the Eastside and Zaragoza FEDs and oversaw all emergency medical services operations on behalf of Series 114 – Eastside, LLC and Series 115

– Zaragoza, LLC.   The doctors of Infinity Emergency Management Group, LLC provided emergency medicine services to patients 24 hours a day, 7 days a week, seeing patients in need of emergency services through check-in, treatment, and discharge. Neighbors Health System, Inc. assisted Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC with their patient/insurance billing, collection of accounts receivable, payment of vendor payables, IT issues, banking and financial accounting (or so Plaintiff was led to believe by the Neighbors O&Ds and in fact did believe).

24. Neighbors Health System, Inc., as manager of these series LLCs, and the Neighbors O&Ds who controlled Neighbors Health System, Inc., represented to Plaintiff that all funds over a cash reserve of $600,000 would be distributed as quarterly profits, and under the terms of the Series Agreement and the Management Agreement, paid out the Series' net profits to the Series' membership interest owners. The Neighbors O&Ds caused Neighbors Health System, Inc. to create financial statements purporting to be from Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC reflecting income and expenses and net profits of those series entities.   The Neighbors O&Ds represented to Series 114 – Eastside, LLC Series 115 – Zaragoza, LLC and the Plaintiff, that these financial statements reflected net profits from the operation of the Eastside and Zaragoza FEDs owned and operated by Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC. The Plaintiff relied on these representations in continuing in the business venture and in continuing to devote all of its emergency physicians to the Eastside and Zaragoza FEDs. An example of this is the email from the Director of Investor Relations of  Neighbors Health System, Inc. immediately after the end of the first quarter of 2016:

-------- Original Message --------
Subject: Re: IEMG El Paso site financials for distribution
From: Tricia Todd <ttodd@nec24.com>
Date: Tue, April 19, 2016 1:39 pm
To: Jermaine <jb@unyglobe.com>

Jermaine,

Since it is the first distributions, it is the ==excess cash beyond working capital needs== generated since startup. Our plan going forward is ==to access quarterly the amount of excess cash being held in the business beyond two months cash expenses and to return that to the owners==. We will release first quarter financials as soon as possible after the April 30th delivery of the 2015 audit.

Tricia Todd
Investor Relations

An example of the threshold of $600,000 cash on hand needed to make a distribution to the members of their Series Property is this email from the Director of Finance of Neighbors Health System, Inc.:

Patrick Johnson <pjohnson@neighborshealth.com>
Thu, 19 Jan 2017 09:04:36 -0800 IEMG
To "Jermaine" <jb@unyglobe.com>
Cc "Tricia Todd" <ttodd@neighborshealth.com>

Jermaine

Your region did not meet the distribution threshold for the Q4 which means ==you had less than 600K in the bank== as December 31, 2016

**Patrick Johnson, MBA**
Director of Finance

25. Through 2015 and 2016, the Eastside and Zaragoza FEDs operated successfully and profitably.  Neighbors Health System, Inc. provided to Plaintiff what it and the Neighbors O&Ds represented was the accounting of the net profits to the Plaintiff, and the Plaintiff received what Neighbors Health System, Inc. and the Neighbors O&Ds represented was Plaintiff's share (65%) of the net profits of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC.  The Plaintiff

11

had no reason to think that anything was wrong with its investment in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC.  As far as the Plaintiff could tell, everything was going exactly as represented by the Neighbors O&Ds - until early 2017 - when the Neighbors O&Ds informed the Plaintiff that there would be no net profits distribution for the 4th quarter of 2016.  The Plaintiff was shocked, as operations at the Eastside and Zaragoza FEDs indicated that business was good and Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC had continued to be profitable. Neighbors Health System, Inc., through Dr. Paul Alleyne, Dr. Setul Patel, and other officers of Neighbors Health System, Inc., eventually admitted to the Plaintiff that they had been transferring Series Property (the net profits allocated to Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC) to other entities managed and controlled by Neighbors Health Systems, Inc and the Neighbors O&Ds, that had net losses as opposed to net profits. The Neighbors O&Ds further revealed that they had entered a credit facility and collateralized the credit facility with the assets of the limited partnerships for the FEDs.  Those assets constituted the Series Business, the operation of which generated the Series Property (cash on hand, profits and loss, and operating profit).  An example of this is the memo from Setul G. Patel, Chief Executive Officer of Neighbors Health System, Inc., on August 21, 2017:

It is important to start this discussion with a general understanding of how our company is structured.  While we have individual centers with their own budgets, operations, and investors, our company is tied together with a financing package that treats the company as a *single* consolidated entity.  This financing consists of a $120 million loan package obtained in the fall of 2015.  This loan package refinanced our existing debt, and fueled our 2016 growth into all the new markets we entered that year. Our loan package requires certain financial ratios to be maintained to ensure financial health of the company.  These ratios are calculated on the entire company, as opposed to any one of our centers.  Therefore, the performance of every center is important when assessing the health of the entire company.

While the majority of our centers are profitable and sustainable, we have several other markets that are currently at risk for closure due to continued underperformance.  These markets include Tyler, San Angelo, Amarillo South, Texas City, Wichita Falls, and Orange.  To minimize further center closures, we as a company have to pivot our strategy from a growth machine into a maintenance machine.  As 2016 progressed, we continued to position the company for further expansion with personnel and infrastructure dedicated to that cause.  As the market changed,

26. The Plaintiff has since, in its investigations, learned that Dr. Paul Alleyne and Dr. Setul Patel had falsely represented how the Neighbors O&Ds, through Neighbors Health System, Inc., would actually manage and operate the business of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC. The Neighbors O&Ds used their positions with Neighbors Health System, Inc. to establish a business system for the Eastside and Zaragoza FEDs different than what was represented to Plaintiff. They never opened any bank accounts in the name of Series 114 – Eastside, LLC or Series 115 – Zaragoza, LLC and instead opened bank accounts only in the name of NEC Eastside Emergency Center, LP and NEC Zaragoza Emergency Center, LP, the limited partnerships formed to own the leasehold, improvements and equipment of the Eastside and Zaragoza FEDs. In addition, the Neighbors O&Ds, through their control of Neighbors Health System, Inc., caused the physician service fees from operations of the Eastside and Zaragoza FEDs to be billed through Neighbors Physician Group, LLC but failed to cause those collections to be included in calculation of the net profits allocated to Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC. The Neighbors O&Ds also caused the net profits of the Eastside and Zaragoza FEDs that had been determined, allocated, and attributed as Series Property of Series 114 – Eastside, LLC and Series 115 – Zaragoza, not to be distributed and to be used to pay to and/or for the benefit of other entities. The Neighbors O&Ds represented to the Plaintiff that all net profits from operation of the Eastside and Zaragoza FEDs determined, allocated, and attributed as Series Property of Series 114 – Eastside, LLC and Series 115 – Zaragoza and be maintained and safeguarded separately for Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC and distributed only to their members. Neighbors O&Ds represented to the Plaintiff that Infinity Emergency Management Group, LLC would receive its share of the Series Property generated from all sources of income of the Eastside and Zaragoza FEDs. Instead, the Neighbors O&Ds and

Neighbors Health System, Inc., through their negligence and breach of fiduciary duty, failed to include all sources of income, including the physician service fees income generated by the billing of the Plaintiff's doctors in the Series Property, into the determination of the profits allocated and attributed to Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC. The Neighbors O&Ds and Neighbors Health System, Inc. also, through their negligence and breach of fiduciary duty, failed to hold and securely maintain Series 114 – Eastside, LLC's and Series 115 – Zaragoza, LLC's Series Property and failed to distribute the Series Property once determined, allocated and attributed. The Neighbors O&Ds and Neighbors Health System, Inc. also, through their negligence and breach of fiduciary duty, caused the Series Property of Series 114 – Eastside, LLC's and Series 115 – Zaragoza, LLC's to be used by other entities throughout 2015, 2016, 2017, and 2018, denying Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC of their Series Property, the net profits determined, allocated, and attributedto them, and causing the Plaintiff substantial damages. The Defendants did not stop this use of the Series Property for other entities until ordered to stop by the Bankruptcy Court. (See Case No. 18-33836, Doc. No. 221, p. 6).

## IV.

## <u>Claims and Causes of Action</u>

27. This is in part a derivative action brought by Plaintiff as a Class B non-voting member of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC on behalf of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC against the Neighbors O&Ds and Neighbors Health System, Inc. for breach of fiduciary duty, abuse of control, grossly negligent mismanagement, waste of series assets, breach of contract and unjust enrichment, as well as aiding and abetting of it. The Neighbors O&Ds and Neighbors Health System, Inc. have engaged in a pattern of neglect, and injured the Series by failing to properly maintain and protect the Series Property of Series 114 –

Eastside, LLC and Series 115 - Zaragoza, LLC separately from all of the others and failed to have the basic systems in place to protect the Series Property of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC.  This has caused material damage to Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC by depriving them of their Series Property, the net profits determined, allocated, and attributed to them.

28. Plaintiff has standing to bring this action under Tex. Bus. Org. Code, §101.463, which applies to Plaintiff and these claims. Both Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC are closely held series, thus no pre-suit demand is required.  Further, any pre-suit demand on Tensie Axton[5], Trustee of the NLH Liquidating Trust, successor to Neighbors Health System, Inc., or the Neighbors O&Ds would be a futile act.  They are entrenched and marred with conflicts of interest.  They would be bringing suit by Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC against themselves, which they would not do and if they did could not be trusted to pursue the claims zealously and impartially.   To remedy the Neighbors O&Ds and Neighbors Health System, Inc.'s breach of fiduciary duty, Plaintiff brings this action on behalf of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC to cause Defendants to account for the damage caused to Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC and to recover such damages for their benefit.

29. Plaintiff will adequately and fairly represent the interests of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC in enforcing and prosecuting their rights.

30. Plaintiff is and was an owner of the Class B non-voting membership interests in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC during times relevant to the wrongful conduct alleged here, and remains a member of Series 114 – Eastside, LLC and Series 115 –

---

[5]  Ms. Axton is the former Neighbors Health System, Inc. Chief Financial Officer.

Zaragoza, LLC which were not debtors in the Neighbors Chapter 11 bankruptcy cases.  In this case, justice requires that the Court treat this derivative action as a direct action brought by Plaintiff, as member, for its own benefit, and that the recoveries be paid directly to Plaintiff.  Tex. Bus. Org. Code, § 101.463.

31. The manager of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC was Neighbors Health System, Inc., which was in turn controlled by the Neighbors O&Ds. Plaintiff has not made any demand on Neighbors Health System, Inc. or the Neighbors O&Ds to institute this action because such a demand would be futile, wasteful, and useless. Similarly, the Plaintiff has not made any demand on Tensie Axton, Trustee of the Liquidating Trust, because such a demand would be futile, wasteful, and useless.  Neighbors Health System, Inc. was liquidated in the consolidated plan of the Debtors, and Tensie Axton was appointed to serve as the Trustee of the Liquidating Trust.  Demand would be futile for the following reasons:

  a. As a result of their access to and review of internal corporate documents; conversations and connections with corporate officers, employees, and directors; and attendance at management and Board meetings, each of the defendants knew the adverse non-public information regarding the false and misleading financial statements and as successor to Neighbors Health System, Inc., Ms. Axton has access to this same information;

  b. The Neighbors debtors and Neighbors O&Ds have received substantial monetary compensation and other benefits. Accordingly, they are legally incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action;

  c. The Neighbors O&Ds are insider directors of the manager of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC and their principal professional occupation was their employment with the Neighbors debtors, pursuant to which they have received substantial monetary compensation and other benefits. Accordingly, the Neighbors O&Ds are legally incapable of disinterestedly and independently considering a demand to commence and vigorously prosecute this action;

  d. The Defendants are entrenched and have multiple conflicts of interest and entangling business relationships that preclude them from being disinterested and vigorously prosecuting the wrongdoing alleged in this complaint.  Tensi Axton, as

Trustee of the Liquidating Trust, has similar entrenchment and conflicts of interest as the successor to the Liquidating Trust. Any of the derivative claims would be not only against the Neighbors O&Ds but against the Liquidating Trust itself;

e.  The Neighbors O&Ds are not disinterested or independent and served on the Board of Series 114 – Eastside, LLC's and Series 115 – Zaragoza, LLC's manager during the time of the wrongdoing and participated in the wrongs complained of here. Pursuant to their specific duties as Board members, each was charged with directing the management of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC and their business affairs. Each breached the fiduciary duties that they owed to Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC and its members in that they failed to properly supervise Series 114 – Eastside, LLC's and Series 115 – Zaragoza, LLC's finances and operations, failed to protect and preserve the Series Property of Series 114 – Eastside, LLC and Series 115 - Zaragoza, LLC and transferred or allowed the transfer of the Series Property of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC. The majority of the directors have served on the Board for several years and are, therefore, well aware of Series 114 – Eastside, LLC's and Series 115 – Zaragoza, LLC's finances and operations and the transfers and decisions to transfer Series Property. Yet, the Neighbors O&Ds either knew and caused the transfers of Series Property to be made or ignored the fact that the transfers were being made. Further, the Neighbors O&Ds either knew of the inflated operations expenses paid to affiliate companies or ignored the fact that the payments were being made.   Because they abdicated their oversight responsibilities, these directors are personally liable for the conduct alleged here. Series 114 – Eastside, LLC and Series 115 - Zaragoza, LLC, therefore, cannot exercise independent objective judgment in deciding whether to bring this action, or whether to vigorously prosecute this action, because its members are interested personally in the outcome, as it is their actions that have denuded Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC of millions of dollars in Series property.

f.  Each of the Neighbors O&Ds knew or directly benefited from the wrongdoing alleged in this complaint;

g.  The Neighbors O&Ds participated in efforts to conceal or disguise these wrongs from Series 114 – Eastside, LLC's and Series 115 – Zaragoza, LLC's members or recklessly or negligently disregarded the wrongs alleged in this complaint and are, therefore, not disinterested parties;

h.  In order to bring this suit, all of the directors of the manager of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC and the voting member Neighbors Investment would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thus excusing demand.   Similarly, Tensie Axton, Trustee of the Liquidating Trust, would be forced to sue herself and the Neighbors O&Ds who she has been working

17

with as the former Chief Financial Officer and Trustee in liquidating assets of the various estates;

    i.  The acts alleged in this complaint constitute violations of the fiduciary duties owed by Series 114 – Eastside, LLC's and Series 115 – Zaragoza, LLC's manager's officers and directors, and these acts are incapable of ratification;

    j.  Each of the Neighbors O&Ds authorized or permitted the issuance and making of various of the false and misleading statements, and are principal beneficiaries of the wrongdoing alleged here, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them.  Although Tensie Axton is just the Trustee of the Liquidating Trust and certainly had no part in wrongdoing, she represents the trust which was a beneficiary of the wrongdoing, and thus also could not fairly and fully prosecute such a suit even if she instituted one.

32. The Neighbors O&Ds, Neighbors Health System, Inc., and Axton have failed and refused to seek to recover for Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC for any of the wrongdoing alleged by Plaintiff even though they knew of the claims and causes of action raised in this complaint.

## A.  Derivative Claim of Breach of Fiduciary Duty, Negligent and Gross Mismanagement, and Abuse of Control

33. By their actions alleged above, the Neighbors O&Ds and Neighbors Health System, Inc. abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC in a manner consistent with the operations of a closely held company.  They assumed the contractual fiduciary duty to Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC under the Management Agreements entered with those entities.  As such they had the duties agreed to in those Management Agreements, including human resources functions, accounting supervision and management including tax return preparation, financial planning and forecasting, cash management, banking and treasury, insurance administration, executive operations management, marketing, branding, information technology, facilities management, policies and procedure,

licensure, and compliance. The Neighbors O&Ds and Neighbors Health System, Inc. failed to perform any of these functions for Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC. Instead, they acted in dereliction of their duties by the following conduct:

- Negligently and in breach of their contractual and common law fiduciary duties, causing the Series Property, consisting of determined, allocated, and attributed net profits, to be withheld from and not distributed to Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC, and also to be distributed to other persons or entities. In 2015, 2016, 2017, and 2018, NEC Eastside Emergency Center, LP and NEC Zaragoza Emergency Center, LP recognized profits from Series 114 – Eastside, LLC's and Series 115 – Zaragoza, LLC's operation of the Eastside and Zaragoza FEDs. During those years, NEC Eastside Emergency Center, LP and NEC Zaragoza Emergency Center, LP determined the net profits attributable to NHS Emergency Centers, LLC for 99% of that net profit, and NHS Emergency Centers, LLC in turn allocated or attributed those net profits to Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC as their Series Property. The Neighbors O&Ds and Neighbors Health System, Inc. provided to Plaintiff an accounting of those net profits allocated or attributed as their Series Property but neglected to distribute the Series Property through their negligent disregard of their management duties and also paid that Series Property to themselves and others instead.

- Negligently and in breach of their contractual and common law fiduciary duties, causing the physician fees income for the emergency physician services performed by the physicians that were provided exclusively by the Plaintiff's physicians, in

accordance with their purchase agreement[6], at Eastside FED and Zaragoza FED to be billed by Neighbors Health System, Inc. but not included in the net profits calculation forming the basis of the Series Property of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC.

- Negligently and in breach of their contractual and common law fiduciary duties, causing confusion over the ownership of limited partnership interests of NEC Eastside Emergency Center, LP and NEC Zaragoza Emergency Center, LP. IRS Federal Income Tax returns, provided to Plaintiff, for the years 2015, 2016, 2017 that were prepared and filed under penalties of perjury, Neighbors Health System, Inc. and Neighbors O&Ds declared and signed that they examined the returns and that they were true, correct and complete, indicated that 99% of the limited partnership interest of NEC Eastside Emergency Center, LP was owned by Series 114 – Eastside, LLC and 99% of the limited partnership interest of NEC Zaragoza Emergency Center, LP was owned by Series 115 – Zaragoza, LLC.  The Neighbors O&Ds and Neighbors Health System, Inc. concurrently created other documents reflecting that NHS Emergency Centers, LLC also owned the 99% limited partnership interest of these LPs at the same time. This confusion prevented the proper management and administration of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC  and the proper supervision, management, and administration of all their accounting, including tax compliance and tax return preparation, accounts payable, and billing and collection services of these Series.

---

[6] Section 5.(ii) of the Series Interest Purchase Agreement provides that the Purchaser Equity Owners must provide clinical shift coverage at the Series Business and section 5.(iii) requires a Purchaser Equity Owner to be on duty at the Series Business whenever reasonably possible.

The Neighbors O&Ds' and Neighbors Health System, Inc.'s neglect and negligent conduct alleged above constituted an abuse of their ability to control and influence Series 114 – Eastside, LLC and Series 115 - Zaragoza, LLC for which they are legally responsible.

34. As a result of the conduct alleged here, the Neighbors O&Ds and Neighbors Health System, Inc. are liable to Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC.  As a direct and proximate result of Neighbors Health System, Inc.'s and the Neighbors O&Ds' conduct, Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC have sustained significant actual and consequential damages, including, but not limited to loss of Series Property.  Their conduct involved malice and rose to the level of gross negligence and therefore the Plaintiff on behalf of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC is entitled to an award of punitive and/or exemplary damages.

## B.  Derivative Claim of Breach of Contract

35. Neighbors Health System, Inc. had an existing contract with Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC in the form of the Management Agreements.  Neighbors Health System, Inc. failed to perform its duties and obligations under the Management Agreements.  Those breaches of the Management Agreements were the direct and proximate cause of damages to Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC.  In particular, by failing to properly manage the finances of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC, Neighbors Health System, Inc. caused the loss of Series Property to Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC, including the Series Property that should have been recognized from the profits derived from physician service billing income at the Eastside and Zaragoza FEDs, which was lost completely, because the Manager excluded it from the Series

financial reports.  This claim forms a basis, in part, for the proof of claim that has been consolidated with this adversary proceeding.

### C.  Direct Claim of Negligence and Gross Negligence

36. The Neighbors O&Ds had a duty to the Plaintiff, as officers and directors of Neighbors Health System, Inc., to exercise reasonable care in performing their duties in maintaining and preserving the Plaintiff's share of Series Property of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC for distribution and making those distributions to the Plaintiff. The Neighbors O&Ds breached that duty by failing to segregate, maintain, and preserve the Plaintiff's share of profits, transferring Series 114 – Eastside, LLC's and Series 115 – Zaragoza, LLC's Series Property to other entities, and failing to include the physician service fees income generated in operation of the Eastside and Zaragoza FEDs in the calculation of the Series Property.  Their breach of their duty of care owed to the Plaintiff was the proximate direct and consequential cause of harm to the Plaintiff.  In particular, the Plaintiff was damaged by the loss of its initial $1,000,000 investment in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC.  Additionally or alternatively, the Plaintiff suffered loss of its 65% share of net profits of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC.  Further, their conduct rose to the level of gross negligence. Plaintiff, therefore, seeks recovery of exemplary and punitive damages.

### D.  Direct Claim of Fraud and Fraudulent Inducement

37. The conduct of Dr. Setul Patel and Dr. Paul Alleyne constitutes common law fraud. Dr. Setul Patel and Dr. Paul Alleyne made false statements and representations to the Plaintiff knowing that the statements and representations were false at the time they made those statements and representations.  In particular, these defendants represented:

- The business, operations, and finances of the series entities the Plaintiff was investing in would be maintained separate from other series established by NHS Emergency Centers, LLC.

- The business, operations, and finances of the series entities the Plaintiff was investing in would be managed by Neighbors Health System, Inc. under a management and administrative services agreement.

- The leasehold, improvements, and equipment of the El Paso FEDs would be maintained in limited partnerships and 99% of the limited partnership interests in those limited partnerships would be issued to the series entities the Plaintiff was investing in.

- The revenue generated from facility fees would be billed by the manager but the revenue from those facility fees would be pushed into the series through the series' ownership of those limited partnerships, and the Plaintiff's share of net profits of the series would be calculated including those facility service fee revenues.

- The revenue generated from physician service fees would be billed by the manager and the revenue from the physician service fees would be pushed into the series that the Plaintiff was investing in, and the Plaintiff's share of net profits of the series would be calculated including those physician service fee revenues.

- The funds of the series the Plaintiff was investing in would be maintained separately and safeguarded, and the Plaintiff's share of these net profits would be calculated from net profit generated from physician service fee billing and facility fee billing and distributed to Plaintiff.

Dr. Paul Alleyne and Dr. Setul Patel made these statements knowing that they were false.  They made the false statements and representations for the purpose of inducing the Plaintiff into purchasing Class B membership interests in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC and devoting all its physician members to operation of the Eastside and Zaragoza FEDs.  The Plaintiff relied on these false statements and representations to its detriment and as a direct and proximate result suffered damages, which the Plaintiff now seeks to recover.

38. The Plaintiff suffered actual damages in the form of the $1,000,000 paid for the membership interests in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC.  Additionally or alternatively, the Plaintiff also suffered actual damages in the form of 65% of the net profits of those series.  The Plaintiff is entitled to recover "benefit of the bargain" damages, or what the Plaintiff would have received if the venture had been as represented.  The benefit of the bargain as represented would have produced a share of 65% of the net profits from the revenue generated by physician and facility service fee billing at the Eastside and Zaragoza FEDs. Additionally or alternatively, the Plaintiff seeks as damages its lost opportunity to have engaged and profited from its own FEDs.  Finally, the Plaintiff seeks exemplary and/or punitive damages, as this conduct was fraudulent and with malice.

39. Each of the Neighbors O&Ds are liable to the Plaintiff for fraud by omission.  Each of the Neighbors O&Ds omitted to disclose material information and facts to the Plaintiff knowing that the omitted information was material at the time it was omitted.  In particular, the Neighbors O&Ds knew, and failed to disclose to the Plaintiff:

- that the business, operations, and finances of the series entities the Plaintiff was investing in would not be maintained separate from other series established by NHS Emergency Centers, LLC.

- that the business, operations, and finances of the series entities the Plaintiff was investing in would not actually be managed by Neighbors Health System, Inc. despite the existence of a management and administrative services agreement.

- that the leasehold, improvements, and equipment of the El Paso FEDs would be maintained in limited partnerships, but that their 99% ownership of the limited partnership interests in those limited partnerships would later, unbeknownst to the Plaintiff, be reassigned to NHS Emergency Centers, LLC (in order to secure the credit facility) as opposed to the series entities the Plaintiff was investing in.

- that the profits generated from physician and facility service fee billing  would not be maintained in a bank account in the names of the series entities the Plaintiff was investing in and would never be maintained separately and safeguarded for the series entities.

- that the profits generated by the physician service fees billed through Neighbors Health System, Inc. would not be distributed to the series entities the Plaintiff was investing in and would never be included in the calculation of the Plaintiff's share of net profits of the series it was investing in.

- that the Series Property of the series entities the Plaintiff was investing in would be transferred to other entities managed and controlled by Neighbors Health Systems, Inc and the Neighbors O&Ds, at the discretion of the Neighbors O&Ds and for the sole benefit of the Neighbors O&Ds to shore up other businesses whose operations were losing money and not profitable.

40. The Neighbors O&Ds omitted the material facts in order to induce the Plaintiff into investing in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC and into devoting all of

its physician investors' work and time into providing emergency physician services at the Eastside and Zaragoza FEDs.  The Plaintiff relied on the information as presented with omissions to its detriment and as a direct and proximate result suffered harm, which it now seeks to recover.  The Plaintiff suffered actual damages in the form of the $1,000,000 paid for the membership interests in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC.  Additionally or alternatively, the Plaintiff suffered actual damages in the form of 65% of the net profits of those series.  The Plaintiff is entitled to recover "benefit of the bargain" damages, or what the Plaintiff would have received if the venture had been as represented.  The benefit of the bargain as represented would have produced a share of 65% of the net profits from the revenue generated by physician and facility service fee billing at the Eastside and Zaragoza FEDs. Additionally or alternatively, the Plaintiff seeks as damages its lost opportunity to have engaged in its own FEDs and the profits it would have made in such opportunity.  Finally, the Plaintiff seeks exemplary and/or punitive damages, as this conduct was fraudulent and with malice.

### E.  Direct Claims for Conspiracy and Aiding and Abetting Common Law Fraud

41. The conduct of the Neighbors O&D constitutes a conspiracy and/or aiding and abetting common law and fraud.  The Defendants all reached an agreement to assist with the fraud. All the Neighbors O&Ds knew the pitch of false representations that Dr. Setul Patel and Dr. Paul Alleyne were making to Plaintiff in order to induce Plaintiff into investing as a Class B member of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC.  The Neighbors O&Ds agreed to support and assist with this pitch of false representations. The damage suffered by Plaintiff are the same as those alleged above from fraud and fraud by omission.

### F.  Direct Claims for Negligent Misrepresentations

42.  Dr. Setul Patel and Dr. Paul Alleyne, in their capacity as officers and directors, had a duty to exercise reasonable care in making their statements and representations and in having their agents make their statements and representations to Plaintiff in connection with the sale of the membership interests of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC to Plaintiff and in connection with maintaining and preserving the Plaintiff's share of profits in those entities. Dr. Setul Patel and Dr. Paul Alleyne failed to exercise that care in making statements and representations that were false or misleading when they knew or should have known that Plaintiff was relying on these statements and representations.  They made representations to the Plaintiff that they knew or had reason to know were false and/or misleading.  In particular, Dr. Setul Patel and Dr. Paul Alleyne represented to the Plaintiff that the finances of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC would be maintained separate and apart from the other series, and so long as Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC were profitable, that profits would be distributed quarterly to Plaintiff according to its ownership interest.  Dr. Setul Patel and Dr. Paul Alleyne knew that they would cause Series Property of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC to be transferred to other entities managed and controlled by Neighbors Health Systems, Inc and the Neighbors O&Ds,. They also knew that they would never cause Neighbors Health System, Inc. to exercise its management duties for Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC as represented and knew that they would not include the revenue generated from the physician service fees in the calculation of Plaintiff's share of net profits from the operation of the Eastside and Zaragoza FEDs.

27

43. As a direct consequence and proximate result of the acts of Dr. Setul Patel and Dr. Paul Alleyne, the Plaintiff has been damaged.   The Plaintiff paid a total of $1,000,000 for their membership interests in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC, which they would not have paid but for the misrepresentations and false statements by these defendants. Further, Plaintiff devoted its physician members to the venture as a result of the misrepresentations and false statements.   Had Plaintiff not done so, Plaintiff could have entered into another emergency center venture and derived the profits from another venture.   Finally, the Plaintiff lost its 65% share of net profits from the operation of the Eastside and Zaragoza FEDs.   Their conduct also rises to the level of gross negligence.   Therefore, Plaintiff seeks recovery of exemplary and punitive damages.

### G.  Direct Claim of Violations of Securities Act

44. The Neighbors O&Ds are liable as control persons of NHS Emergency Centers, LLC for violations of Tex. Rev. Civ. Stat. Ann., § 581-33A(2).  The Neighbors O&Ds were all persons who controlled NHS Emergency Centers, LLC, which was the seller of the securities in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC to Plaintiff.   NHS Emergency Centers, LLC and the Neighbors O&Ds, in their capacity as officers and directors of Neighbors Health System, Inc., the member and manager of NHS Emergency Centers, LLC, offered and sold securities of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC to Plaintiff by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

45. In particular, NHS Emergency represented to the Plaintiff that the finances of Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC would be maintained separate and apart from the other series emergency centers of NHS Emergency Centers, LLC, and so long as Series

114 – Eastside, LLC and Series 115 – Zaragoza, LLC were profitable, that the quarterly profits would be distributed to Plaintiff according to its ownership interest.  NHS Emergency Centers, LLC knew that NHS Emergency Centers, LLC, through its control by way of the Neighbors O&Ds, in their capacity as officers and directors of NHS Emergency Centers, LLC and Neighbors Health System, Inc., would cause the net profits allocated or attributed to Series 114 - Eastside and Series 115 - Zaragoza to be transferred to itself and other  unprofitable entities managed and controlled by Neighbors Health Systems, Inc and the Neighbors O&Ds,. NHS Emergency Centers, LLC failed to state to Plaintiff that Neighbors Health System, Inc. would transfer the determined, allocated, and attributed Series Property from Series 114 – Eastside, LLC and/or Series 115 – Zaragoza, LLC to other unprofitable business ventures in order to keep them from failing as businesses.  Further, they represented to the Plaintiff that Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC would own 99% of the limited partnership interests of NEC Eastside Emergency Center, LP and NEC Emergency Center Zaragoza, LP, which would own the leasehold, improvements and equipment and generate revenues from the physician and facility service fee billing , which the net profits would in turn be distributed to Plaintiff as an owner of membership interests in Series 114 – Eastside, LLC and Series 115 – Zaragoza, LLC.  These were material facts that were necessary in order to make the statements made, in the light of the circumstances under which they were made by NHS Emergency Centers, LLC, not misleading.

46. The Neighbors O&Ds are liable for this violation of the Texas Securities Act, section 33A(2), as control persons of NHS Emergency Centers, LLC under section 33F.  As actual damages under section 33D of the Texas Securities Act, the Plaintiff is entitled to, and now seeks, the $1,000,000 consideration it paid for the securities plus interest at the lawful rate.

## V.

## Jury Demand

47. The Plaintiff demands a trial by jury as to all issues in this case.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, INFINITY EMERGENCY MANAGEMENT GROUP, LLC, Individually and as Class B Non-Voting Members on behalf of NHS Emergency Centers, LLC Series 114 – Eastside and NHS Emergency Centers, LLC Series 115 – Zaragoza, prays that after trial it be awarded judgment as follows:

1. Actual damages, including direct and consequential damages and "benefit of the bargain" damages;

2. Statutory damages;

3. Exemplary or punitive damages;

4. Reasonable and necessary attorney's fees;

5. Prejudgment and post-judgment interest as allowed by law; and

6. Costs of court.

Respectfully submitted,

**WAUSON | PROBUS**

By: ___/s/ Matthew B. Probus___
      **Matthew B. Probus**
      TBA# 16341200
      Fed. I.D. # 10915
      mbprobus@w-plaw.com

One Sugar Creek Center Blvd., Suite 880
Sugar Land, Texas 77478
(281) 242-0303 (Telephone)
(281) 242-0306 (Facsimile)

*ATTORNEYS FOR PLAINTIFF,*
*INFINITY EMERGENCY MANAGEMENT*
*GROUP, LLC*

30

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded by electronic delivery through the ECF/PACER system and via United States regular mail, first class postage prepaid, to the parties listed below on this the 13th day of April, 2020:

Cliff Walston
Walston Bowlin, LLP
4299 San Felipe Street, Suite 300
Houston, Texas 77027
cliff@walstonbowlin.com

Staton M Childers
Adams and Reese, LLP
LyondellBasell Tower
1221 McKinney, Suite 4400
Houston, Texas  77010
Staton.childers@arlaw.com

Paul D Flack
Pratt and Flack LLP
1331 Lamar Street, Suite 1250
Houston, TX 77010
pflack@prattflack.com

Jarrod Martin
McDowell Hetherington LLP
1001 Fannin Street Suite 2700
Houston, TX 77002
Jarrod.Martin@mhllp.com

Millard A Johnson
Johnson DeLuca Kennedy & Kurisky, P.C.
1221 Lamar, Suite 1000
Houston, TX 77010
mjohnson@jdkglaw.com

James G Munisteri
Foley Gardere
1000 Louisiana, Suite 2000
Houston, TX 77002
jmunisteri@foley.com

Christina Minshew Lewis
Moyer Patton
11767 Katy Freeway, Suite 990
Houston, TX 77079
clewis@moyerpatton.com

_ /s/ Matthew Probus____
Matthew Probus

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **NEIGHBORS LEGACY HOLDINGS, INC.,** | § | **CASE NO. 18-33836-H1-11** |
| | § | **(Chapter 11)** |
| Debtor. | § | |

| | | |
|---|---|---|
| **INFINITY EMERGENCY MANAGEMENT** | § | |
| **GROUP, LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **ADV. P. NO. 18-3276** |
| | § | |
| **SETUL G. PATEL, M.D., et al.,** | § | |
| | § | |
| *Defendants.* | § | |

## <u>VERIFICATION</u>

I, Jermain Bowen, hereby declare pursuant to 28 U.S.C. § 1746 as follows:

1. "My name is Jermaine Bowen. I am over eighteen (18) years of age. I am of sound mind, capable, competent and authorized to make this Declaration, all of which facts are true and correct unless otherwise stated."

2. "I am the Manager of Infinity Emergency Management Group, LLC, the Plaintiff in this adversary proceeding. I have read the Plaintiff's Fifth Amended Complaint and the allegations contained in it are true and correct."

3. "I declare under penalty of perjury that the foregoing is true and correct."

Executed on April 13, 2020, in El Paso, El Paso County, Texas.

_____
Jermaine Bowen, Manager of
Infinity Emergency Management Group, LLC