United States Bankruptcy Court
Southern District of Texas

**ENTERED**

September 02, 2022

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 18-33836** |
| **NEIGHBORS LEGACY HOLDINGS, INC.** | § | |
| **et al.,** | § | **CHAPTER 11** |
| | § | |
| Debtors. | § | |
| | § | |
| **INFINITY EMERGENCY MANAGEMENT** | § | |
| **GROUP, LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 18-3276** |
| | § | |
| **NEIGHBORS HEALTH SYSTEM, INC., et** | § | |
| **al.,** | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION

Infinity Emergency Management Group, LLC accuses Neighbors Health System, Inc., its former officers and directors, and its new manager of fiduciary and contract breaches, outright fraud, and other corporate malfeasance.  Infinity's accusations arise from its investment in freestanding emergency rooms set up by Neighbors Health.  In short, Infinity alleges that as Neighbors Health hurtled toward bankruptcy, it began disregarding the fiduciary and contractual duties it owed Infinity.  That disregard in turn inflicted financial damage on Infinity and deprived Infinity of the benefit of its investment.  Neighbors Health, along with its officers and directors, argue Infinity cannot maintain its suit because Infinity lacks standing, fails to adequately plead its claims, or does not state claims on which relief can be granted.

Infinity failed to establish its standing to assert a derivative fiduciary breach claim.  Relief cannot be granted on Infinity's negligence claims, fraud-based claims, civil conspiracy claim, and

aiding and abetting claim.  Infinity's Texas Securities Act claim against the Neighbors O&Ds, except for Dr. Setul Patel and Dr. Paul Alleyne, must also be dismissed.  Finally, the Creditor Trustee's fraudulent transfer claims against Infinity must be dismissed.

This lawsuit survives as to Infinity's derivative breach of contract claim against Neighbors Health, its negligent misrepresentation claim against Drs. Patel and Alleyne, and its Texas Securities Act claim against Drs. Patel and Alleyne.

## BACKGROUND

Almost five years have passed since Infinity Emergency Management Group, LLC sued Neighbors Health System, Inc., some of its affiliates, and its officers and directors in Texas state court for various corporate wrongs.  (ECF No. 1 at 2).  Soon after Infinity commenced its state court suit, Neighbors Health and its affiliate debtors[1] filed for Chapter 11 relief, which led to the suit's removal to this Court.  (ECF No. 1 at 2).  Since arriving here, Infinity has amended its Complaint five times, the parties have exchanged significant discovery and multiple rounds of dispositive briefing, and the Court has issued a lengthy Memorandum Opinion[2] addressing Infinity's derivative standing.  Now, the parties' Rule 12 motions are ripe for adjudication.

### *The Neighbors Health Network*

In 2008, a group of emergency room doctors founded the Neighbors Health Network to operate freestanding emergency centers throughout Texas.  (Case No. 18-33836, ECF No. 16 at 3).  That group included the officers and directors named in this suit: Dr. Paul Alleyne, Dr. Cyril Gillman, Dr. Michael Change, Dr. Andy Chang, Dr. Quang Henderson, Dr. Setul Patel,[3] Dr. Hitesh

---

[1] The only debtors relevant to Infinity's suit are Neighbors Health System, Inc. and NHS Emergency Centers, LLC ("NHS LLC").  (ECF No. 102 at 3).

[2] The Court's prior Memorandum Opinion provides additional background regarding this dispute.  (*See* ECF No. 98).

[3] References to "Dr. Patel" are to Dr. Setul Patel.

Patel, and Dr. Dharmesh Patel (collectively, the "Neighbors O&Ds"). (ECF No. 102 at 4). In 2011, the Neighbors Network began expanding its operations at the direction of the Neighbors O&Ds. (Case No. 18-33836, ECF No. 16 at 5). To facilitate this expansion, the Neighbors Network established a web of corporate entities to own and operate a Texas-wide network of freestanding emergency centers. (*See* Case No. 18-33836, ECF No. 16 at 5).

Generally, each freestanding emergency center was set up as a separate limited partnership. (Case No. 18-33836, ECF No. 16 at 7). Neighbors GP, LLC acted as each emergency center's general partner and separate, emergency-center-specific limited liability companies acted as limited partners. (Case No. 18-33836, ECF No. 16 at 7). The Neighbors O&Ds owned a portion of each emergency-center-specific LLC and outside investors owned the remaining interest in each specific entity. (Case No. 18-33836, ECF No. 16 at 7–8). The Neighbors Network, acting at the direction of the Neighbors O&Ds, also established entities to provide management and administrative services to each freestanding emergency center. (Case No. 18-33836, ECF No. 16 at 8). A series of written agreements enumerated the rights and duties each entity had with respect to other Neighbors Network entities. (*See* ECF No. 98 at 6).

### *Infinity's Relationship with Neighbors*

Dr. Samara Bowen and her husband, Jermaine Bowen, formed Infinity in mid-2014. The Bowens did so after two of the Neighbors O&Ds, Dr. Setul Patel and Dr. Alleyne, solicited the Bowens' investment in the Neighbors Network. (ECF No. 102 at 5). Ultimately, the Bowens, along with other emergency physicians in the area, invested in two emergency-center specific LLCs: Series 114–Eastside, LLC and Series 115–Zaragoza, LLC (together, the "Series LLCs"). (ECF No. 102 at 7–8).

Infinity purchased a 65%, non-voting interest in each of the two Series LLCs.  (ECF No. 102 at 7–8).  The brick-and-mortar emergency centers associated with the Series LLCs were NEC Eastside Emergency Center, LP and NEC Zaragoza Emergency Center, LP (together, the "Center LPs").  (ECF No. 98 at 3–4).  In line with the Neighbors Network's typical corporate structure, Neighbors GP held a 1% interest in the two LPs and NHS LLC held the remaining 99% interest. (Case No. 18-33836, ECF No. 16 at 7).  NHS LLC established the Series LLCs to operate the two Center LPs.  (ECF No. 98 at 3).  Infinity, as a Series LLC owner, was charged with providing physicians to staff the two Center LPs.  (ECF No. 98 at 4).  However, Neighbors Health, through five subsidiaries, was responsible for the two Center LPs' "management and corporate functions." (ECF No. 98 at 3).  Infinity alleges that the Neighbors O&Ds controlled Neighbors Health, thereby controlling the five management subsidiaries.  (ECF No. 102 at 8).  Because the Neighbors O&Ds controlled Neighbors Health's management subsidiaries, Infinity contends that the Neighbors O&Ds effectively controlled the two Center LPs and the two Series LLCs.  (ECF No. 102 at 8).

Under the agreements that defined Infinity's relationship with the Neighbors Network,[4] Infinity's investment entitled it to share in the two Center LPs' profits and losses.  (*See* ECF No. 98 at 20).  Essentially, the Center LPs would bill patients for services rendered, Center LP expenses would be deducted from that revenue, and the net proceeds would be transferred to NHS LLC. (ECF No. 98 at 25).  Once NHS LLC received the Center LPs' net profits, NHS LLC would allocate those profits to the appropriate Series LLCs.  (ECF No. 98 at 25).  These profits were purportedly reserved for the Series LLC owners (*i.e.,* Infinity).  (ECF No. 98 at 5).  Neighbors Health, through its managerial subsidiaries, was charged with ensuring profits reserved for the Series LLC owners made it from the Center LPs to the Series LLCs.  (*See* ECF No. 98 at 6, 8, 20).

---

[4] The Court's March 2021 Memorandum Opinion describes these agreements in detail and explains their effect on Infinity's standing to assert derivative claims on the Series LLCs' behalf.  (*See* ECF No. 98 at 6–8, 18–28).

### *Infinity's Claims Against Neighbors Health and the Neighbors O&Ds*

Infinity alleges that the Neighbors O&Ds fraudulently induced Infinity into investing in the two Series LLCs, then failed to uphold the contractual and fiduciary duties owed to Infinity. Infinity also levies its allegations against Tensie Axton, the Trustee of the NLH Liquidating Trust, because the Liquidating Trustee is the "successor-in-interest to Neighbors Health System, Inc. and NHS Emergency Centers, LLC." (ECF No. 102 at 3).[5]  Infinity asserts both direct and derivative claims based on its allegations.

Infinity asserts its derivative claims on behalf of the two Series LLCs in which Infinity held ownership interests.  Generally, Infinity contends that Neighbors Health and the Neighbors O&Ds failed to "properly maintain and protect" the two Series LLCs' property, from which Infinity's distributions were derived.  (ECF No. 102 at 14–15).  Infinity's derivative claims include:

(1) *Derivative Breach of Fiduciary Duty, Negligent and Gross Mismanagement, and Abuse of Control* against Neighbors Health and the Neighbors O&Ds for causing Series LLC property to be withheld from the Series LLCs, causing physicians fees to be withheld from the Series LLCs' net profits calculation, and "causing confusion over the ownership of limited partnership interests" in the Center LPs, (ECF No. 102 at 18–21); and

(2) *Derivative Breach of Contract* based on Neighbors Health's breach of its Management Agreement with the Series LLCs, (ECF No. 102 at 21–22).

Infinity alleges it has standing to assert its derivative claims under section 101.463 of the Texas Business Organizations Code.  (ECF No. 102 at 15).  Under section 101.463, Infinity could assert derivative standing to bring claims on behalf of closely held LLCs (*e.g.,* the Series LLCs).  (ECF No. 102 at 15).  Section 101.463 would also allow Infinity to dispense with the usual requirement of making a pre-suit demand on Series LLC management.  (*See* ECF No. 102 at 15).  Alternatively,

---

[5] Under Neighbors Health's Plan, Ms. Axton "assumed the role of representative and sole manager of" the Neighbors debtor entities.  (ECF No. 98 at 34 n.25).

Infinity maintains that any pre-suit demand to Neighbors Health or the Liquidating Trustee would be futile.  (ECF No. 102 at 16–18).

Infinity's direct claims concern the Neighbors O&Ds' solicitation of outside investors and Neighbors O&Ds' management of Neighbors Network entities.  (ECF No. 102 at 22–29).  Based on the Neighbors O&Ds' conduct, Infinity asserts claims for:

(3)     *Negligence and Gross Negligence* against the Neighbors O&Ds for failing to maintain and preserve Infinity's share of Series LLC profits, (ECF No. 102 at 22);

(4)     *Fraud and Fraudulent Inducement*:

(a)     Based on Dr. Patel's and Dr. Alleyne's false statements and representations to Infinity that induced Infinity into purchasing its interests in the Series LLCs and devoting Infinity physicians to operate the Series LLCs, (ECF No. 102 at 22–24); and

(b)     Based on the Neighbors O&Ds' knowing failure to disclose that Dr. Patel's and Dr. Alleyne's statements and representations were false, (ECF No. 102 at 24–26);

(5)     *Conspiracy and Aiding and Abetting Common Law Fraud* arising from the Neighbors O&Ds' support of Dr. Patel's and Dr. Alleyne's false pitch to Infinity, (ECF No. 102 at 26);

(6)     *Negligent Misrepresentations* based on Dr. Patel's and Dr. Alleyne's failure to exercise "care" in making statements to Infinity regarding the membership interests Infinity purchased in the Series LLCs, (ECF No. 102 at 27); and

(7)     *Violations of the Texas Securities Act* because the Neighbors O&Ds "offered and sold securities" in the Series LLCs "by means of an untrue statement [or omission] of material fact," (ECF No. 102 at 28–29).

Based on the damage Defendants allegedly caused, Infinity seeks actual damages, statutory damages, exemplary damages, attorneys' fees, costs, and pre- and post-judgment interest.  (ECF No. 102 at 30).

Infinity is not asserting its claims for the first time.  Rather, its latest Complaint is Infinity's sixth.  (*See* ECF No. 102 at 2).  The Complaint's latest iteration is the product of the parties'

summary judgment dispute over Infinity's standing to assert certain derivative claims. The Court determined that Infinity only had standing assert derivative claims based on injuries suffered by the two Series LLCs (non-debtor entities). (ECF No. 98 at 19, 27–28). Notably, Infinity does not have standing to assert derivative claims on the Series LLCs' behalf arising from the Neighbors Network's failure to make distributions to the Series LLCs. (*See* ECF No. 98 at 25–26).[6] Essentially, Infinity does not have standing to assert derivative claims arising from Center-LP-level or NHS-LLC-level "mismanagement" (both debtor entities) because such claims belong to the Debtors. (ECF No. 98 at 19). The Court allowed Infinity to replead its claims following the standing dispute's resolution.

### *The Liquidating Trustee's and Neighbors O&Ds' Motions to Dismiss*

Though Infinity's Complaint is in its sixth iteration, disagreement still exists over the sufficiency of Infinity's pleading. Dr. Patel (individually), the Neighbors O&Ds (jointly), and the Liquidating Trustee filed motions to dismiss Infinity's Complaint. (*See* ECF Nos. 125; 126; 142). These motions identify substantially the same purported infirmities in Infinity's Complaint. Primarily, Defendants argue that: (1) Infinity asserts derivative claims it lacks standing to pursue; (2) Infinity failed to comply with Federal Rules of Civil Procedure 8 and 9; (3) improperly relied on "group pleading" to assert claims against the Neighbors O&Ds; (4) Infinity asserts claims based on fiduciary and contractual duties that do not exist; and (5) the economic loss rule bars Infinity's tort claims. (*See* ECF Nos. 125 at 12–13, 15; 126 at 9–10; 142 at 8–10).[7]

Infinity and Defendants exchanged multiple responses and replies.

---

[6] Infinity could not predicate its standing on its beneficial interest in Series LLC property held by NHS LLC (a debtor entity). (*See* ECF No. 98 at 27).

[7] The Neighbors O&Ds do not challenge Infinity's negligent misrepresentation claim against Dr. Patel and Dr. Alleyne.

### *The Creditor Trustee's Claims Against Infinity*

The Creditor Trustee, Mark Shapiro, asserts his own claims, on behalf of Neighbors Health's creditors, against Infinity.[8]  Specifically, the Creditor Trustee seeks to avoid allegedly fraudulent transfers made to Infinity.  (ECF No. 85 at 20–21).  Infinity argues that the Creditor Trustee's Complaint must be dismissed because it does not plausibly allege fraudulent transfer claims.  (*See* ECF No. 105 at 3–7).

After a hearing on the parties' motions to dismiss, the Court took all pending motions to dismiss under advisement.  (*See* ECF No. 160).

## JURISDICTION

The District Court's jurisdiction over this dispute originates under 28 U.S.C. § 1334(b).  The District Court referred this proceeding to the Bankruptcy Court under General Order 2012-6 and 28 U.S.C. § 157(a).  Infinity's claims against Neighbors Health and NHS LLC are "core" matters under § 157(b)(2)(B).  The claims against the Neighbors O&Ds are not facially "core," but may give rise to other "core" matters (*e.g.,* indemnity claims against the Debtors).[9]

---

[8] Neighbors Health's Plan created two trusts, one to liquidate Neighbors Health's remaining assets (the Liquidating Trust) and one to liquidate Neighbors Health's retained causes of action (the Unsecured Creditor Trust). (Case No. 18-33836, ECF No. 772 at 28–29).  Mark Shapiro was designated as the Trustee responsible for liquidating Neighbors Health's retained causes of action.  (*See* Case No. 18-33836, ECF No. 772 at 19, 29).  In prior complaints, Infinity mistakenly named the Creditor Trustee as Neighbors Health's successor-in-interest as a defendant.  (*See* ECF No. 80 at 2).

[9] However, the Court's resolution of Defendants' motions to dismiss does not constitute a "final order" because it does not dispose of all of Infinity's claims.  *See Briargrove Shopping Ctr. Joint Venture v. Pilgrim Enters., Inc.*, 170 F.3d 536, 539 (5th Cir. 1999) (explaining that a judgment that does not "end[] the litigation on the merits" is not a "final judgment" under Rule 54(b)); *see also* FED. R. CIV. P. 54(b) ("[Absent explicit contrary intent], any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties . . . ."); *accord* FED. R. BANKR. P. 7054(a).  Hence, consistent with 28 U.S.C. § 157(c), the Court can enter a non-final order dismissing some of Infinity's claims with prejudice.  *See Lamonica v. Nexcen Brands, Inc. (In re Designer Equity Holding Co., LLC)*, No. 09-17665 JMP, 2011 WL 5443068, at *1 (Bankr. S.D.N.Y. Nov. 9, 2011) (citing § 157(c)(1)) ("[G]iven the interlocutory character of the relief being granted, the Court has the unquestioned authority to resolve the Motion by means of this non-final decision.").

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12 affords defendants relief from a plaintiff's defective complaint.  FED. R. CIV. P. 12(b); FED. R. BANKR. P. 7012(b) (applying Rule 12(b) to adversary proceedings).[10]  Defendants base their motions to dismiss on Rule 12(b)(1) and (b)(6).  (ECF Nos. 126 at 13–14; 142 at 10–12).

Rule 12(b)(1) authorizes dismissal of a complaint based on a lack of subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  At the Rule 12 stage, the plaintiff must "allege a plausible set of facts establishing jurisdiction."  *Family Rehab., Inc. v. Azar*, 886 F.3d 496, 500 (5th Cir. 2018) (citing *Physician Hosps. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012)).  A court may dismiss a party's complaint if it does not plausibly establish the court's "statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).  A court does not have the constitutional power to adjudicate a dispute involving a plaintiff that lacks constitutional standing; thus, warranting dismissal.  *See Pelletier v. Victoria Air Conditioning, Ltd.*, 780 F. App'x 136, 139 (5th Cir. 2019) (citing *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011)) ("A dismissal for lack of constitutional standing should be granted under Rule 12(b)(1) for lack of subject matter jurisdiction . . . .").

While constitutional standing's absence warrants Rule 12(b)(1) dismissal, a lack of statutory standing does not.  *See Huggins Realty*, 634 F.3d at 795 n.2 (citing *Blanchard 1986, Ltd. v. Park Plantation, LLC*, 553 F.3d 405, 409 (5th Cir. 2008)) (explaining that the absence of statutory standing implicates Rule 12(b)(6), not Rule 12(b)(1)).  Constitutional standing ensures

---

[10] Federal Rules of Civil Procedure 8, 9, and 23.1 also apply in adversary proceedings.  FED R. BANKR. P. 7008, 7009, 7023.1.

the plaintiff has suffered a cognizable injury that satisfies Article III's case or controversy requirement.  *See Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 351 (5th Cir. 2021) (quoting *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020)) ("Article III standing speaks to the power of a court to adjudicate a controversy; contractual standing speaks to a party's right to relief for breach of contract." (internal quotation marks omitted)).  In contrast, statutory standing authorizes an injured plaintiff's pursuit of a particular cause of action.  *See id.*

Rule 12(b)(1) requires dismissal in the absence of constitutional standing because a federal court cannot, under Article III, exercise jurisdiction without a case or controversy.  *Pelletier*, 780 F. App'x at 139.  On the other hand, statutory standing demands a merits inquiry into the plaintiff's ability to state a claim for relief, which implicates Rule 12(b)(6)'s grounds for dismissal.  *Simmons v. UBS Fin. Servs., Inc.*, 972 F.3d 664, 666 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1382 (2021) (quoting *Blanchard*, 553 F.3d at 409) ("[Statutory standing] asks the 'merits question' of 'whether or not a particular cause of action authorizes an injured plaintiff to sue.'").  Critically, statutory standing's merits inquiry can result in a preclusive judgment.  *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) ("Dismissal with prejudice for failure to state a claim is a decision on the merits and essentially ends the plaintiff's lawsuit, whereas a dismissal on jurisdictional grounds alone is not on the merits and permits the plaintiff to pursue his claim in the same or in another forum."); *accord Nowak*, 81 F.3d at 1188 ("[B]ecause a dismissal pursuant to Rule 12(b)(1) is not on the merits, it can have no res judicata effect."); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (recognizing that, while Rule 12(b)(1) does not require a merits determination, other Rule 12 motions bring a claim's merits into dispute).

Rule 12(b)(6) permits dismissal of complaints that "fail[] to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Surviving a Rule 12(b)(6) dismissal requires the plaintiff

to allege "sufficient factual matter, accepted as true, to state a claim to relief that is *plausible* on its face." *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted and emphasis added). This requirement ensures compliance with Federal Rule of Civil Procedure 8. *Iqbal*, 556 U.S. at 677–78.

A complaint *plausibly* states a claim for relief when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plausibility assessment requires the court to accept all *factual* allegations as true, but not accept as true a complaint's "threadbare" *legal* conclusions. *Id.* "Plausibility," at the Rule 12(b)(6) stage, does not mean "possibility." *Id.* at 679. A complaint that offers bare legal conclusions, unsupported by well-pleaded factual allegations establishing a plausible basis for relief, must be dismissed. *See id.* at 679–80 (citing *Twombly*, 550 U.S. at 551, 555, 565–67, 570) (explaining that a complaint must provide sufficient factual detail to support the legal conclusions because legal conclusions cannot be taken as true).

While the plausibility standard defines compliance with Rule 8, Rule 9 demands that and more of a plaintiff alleging fraud. FED. R. CIV. P. 9(b). Under Rule 9(b), a plaintiff's complaint must allege the "circumstances constituting" fraud "with particularity." *Id.* Pleading fraud with "particularity" means the complaint specifies the "who, what, where, when, and how of the alleged fraud." *Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.*, 972 F.3d 684, 689 (5th Cir. 2020) (internal quotation marks omitted). Absent such knowledge, a complaint may allege fraud upon "information and belief," but only if it "set[s] forth a factual basis for such belief." *Id.* (internal quotation marks omitted). Rule 9(b)'s particularity requirement does not, however, extend to allegations about a fraudster's state of mind (*i.e.,* malice, intent, or knowledge).

*Id.*  Still, such allegations must include "specific facts that support an inference of fraud."  *Id.*  A complaint that does not comply with Rule 9(b) fails to "state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6); *see also United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997) ("A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6).").

A heightened pleading standard also applies to derivative actions.  FED. R. CIV. P. 23.1(a).  Under Rule 23.1, a complaint alleging derivative claims must be verified and, relevant here, "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority; and (B) the reasons for not obtaining the action or not making the effort."  FED. R. CIV. P. 23.1(b)(3).  State law governs whether a complaint is sufficiently particular.  *Hack v. Wright*, 396 F. Supp. 3d 720, 732 (S.D. Tex. 2019) (quoting *Freuler v. Parker*, 803 F. Supp. 2d 630, 636 (S.D. Tex. 2011), *aff'd*, 517 F. App'x 227 (5th Cir. 2013)).  Notably, a complaint that does not satisfy Rule 23.1's particularity requirement may, nevertheless, survive Rule 12(b)(6) scrutiny.  *See id.* at 748 ("Even though Plaintiff's complaint may fail the heightened pleading standard under Rule 23.1, that does not mean Plaintiff otherwise fails to meet the 12(b)(6) standard.").[11]

## DISCUSSION

Infinity seeks accountability from the Neighbors Network and the Neighbors O&Ds.  According to Infinity, Defendants must be held to account because they failed to uphold their

---

[11] In a derivative action, a plaintiff's failure to plead demand, or at least demand futility, may deprive the court of subject matter jurisdiction over the suit because the plaintiff is not yet, under state law, the appropriate party to bring suit.  *See Bartlinski v. Sanchez*, 39 F. Supp. 3d 862, 865, 868 (S.D. Tex. 2014) (dismissing a derivative action under Rule 12(b)(1) because the plaintiff failed to satisfy Rule 23.1's requirement that a complaint must contain *particular* allegations about the shareholder's demand or a demand's futility).

fiduciary and contractual obligations to Infinity and plunged Neighbors Health and its affiliates into bankruptcy. At this stage, Defendants challenge the sufficiency of Infinity's claims for relief arising from Defendants' alleged failures. Defendants seek dismissal of Infinity's Complaint based on a lack of subject matter jurisdiction and a failure to state claims on which relief can be granted. Should Defendants succeed, they contend Infinity should be precluded from repleading its allegation for a *seventh* time. Additionally, Infinity moved to dismiss the Creditor Trustee's fraudulent transfer claims based on the claims being insufficiently pleaded.

Based on its Fifth Amended Complaint, Infinity can only maintain its derivative breach of contract claim against Neighbors Health, its negligent misrepresentation claim against Drs. Patel and Alleyne, and its Texas Securities Act claim against Drs. Patel and Alleyne. The Creditor Trustee fails to state fraudulent transfer claims on which relief can be granted.

## I.    INFINITY'S DERIVATIVE CLAIMS' SUFFICIENCY

Defendants maintain that Infinity lacks standing to assert its derivative claims. Infinity counters that it adequately pleaded its derivative standing under Texas law and the Court's 2021 Memorandum Opinion. Defendants also maintain that Infinity cannot maintain its derivative breach of contract claim based on the parties' Management Agreement.

### A.    Infinity Lacks Standing to Pursue its Fiduciary Breach Claim

Defendants base their standing arguments on Infinity's assertion of derivative claims that, according to Defendants, belong to debtor entities. Claims for corporate injuries must be brought, directly or derivatively, by the entity suffering the injury. *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990) (quoting *Massachusetts v. Davis*, 140 Tex. 398, 407 (1942)) ("Ordinarily, the cause of action for injury to the property of a corporation, or the impairment or destruction of its business, is vested in the corporation . . . ." (internal quotation marks omitted)). Hence, an entity's

shareholder or owner does not have direct standing to assert a claim based on an injury suffered by the entity itself. *See Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 360 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (citing *Hall v. Douglas*, 380 S.W.3d 860, 873–74 (Tex. App.—Dallas 2012, no pet.)) ("[A] limited partner does not have standing to sue for injuries to the partnership that merely diminish the value of partnership interests or a share of partnership income; such claims may be asserted only by the partnership itself."). In bankruptcy, claims arising from injuries suffered by debtor entities belong to those debtors' estates. *Schertz-Cibolo-Universal City, Indep. Sch. Dist. v. Wright (In re Educators Grp. Health Tr.)*, 25 F.3d 1281, 1284 (5th Cir. 1994) (citing *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1152 (5th Cir. 1987)). An estate's ownership of claims arising from direct harm to the debtor entity precludes shareholders from asserting derivative claims on the debtor entity's behalf. *See id.* at 1285 (explaining that claims arising from direct harm to a debtor, which only derivatively harmed a plaintiff, belong exclusively to the debtor's estate).[12]

Defendants argue that Infinity's derivative claims arise from harm suffered by the two Center LPs or NHS LLC, both debtor entities. (ECF Nos. 126 at 16; 142 at 14–15). But Infinity only has standing to assert derivative claims based on harm suffered by the two non-debtor Series LLCs. (ECF No. 98 at 27–28). Infinity alleges that Neighbors Health and the Neighbors O&Ds breached their fiduciary and contractual duties to prudently manage the assets and business of the Series LLCs by: (1) causing the "Series Property"[13] of the Series LLCs "to be withheld and not distributed to" the Series LLCs; (2) causing income generated by Infinity's physicians to be billed

---

[12] State law dictates whether an injury directly or indirectly harmed a debtor's shareholders or owners, thereby giving rise to direct or derivative standing. *See id.* at 1284 ("Whether a particular state cause of action belongs to the estate depends on whether under applicable state law the debtor could have raised the claim as of the commencement of the case.").

[13] Infinity's agreements with the Neighbors Network define "Series Property" as "the profits, losses, distributions, and other benefits received by NHS from the Center LPs." (ECF No. 98 at 7 (quotation cleaned up)).

by Neighbors Health "but not included in the net profits calculation forming the basis of the Series Property"; and (3) "causing confusion over the ownership of limited partnership interests" of the Center LPs by filing misleading tax returns. (ECF No. 102 at 18–20). These allegations can only sustain Infinity's fiduciary-breach-based derivative claim if the allegations identify "harm inflicted by the Series LLCs' managers on Series Property." (*See* ECF No. 98 at 15).

As it did before, Infinity's standing turns on the capacity in which Neighbors Health and the Neighbors O&Ds were acting when they allegedly engaged in wrongful conduct. Infinity's allegations that Defendants withheld Series Property from the two Series LLCs unequivocally accuses Neighbors Health and the Neighbors O&Ds of wrongful conducted carried out as NHS LLC's managers, not the Series LLCs'. Under its Operating Agreement, NHS LLC, through its manager Neighbors Health,[14] was charged with "allocat[ing] or attribut[ing] to [the Series LLCs] the profits, losses, distributions, and allocations associated with such [Center LP] interests." (ECF No. 59-5 at 12). Following their allocation or attribution, the profits, once "determined or received," became the Series Property of the Series LLC to which the profits were allocated or attributed. (*See* ECF No. 59-5 at 12). Series Property allocated or attributed to a specific Series LLC "belong[ed] to that Series [LLC] for all purposes and to no other Series [LLC]." (ECF No. 59-5 at 12). However, identifying the attributed or allocated profits as "Series Property" belonging to a specific Series LLC does not mean that such Series Property was within the Series LLC's control.

---

[14] NHS LLC was effectively a clearinghouse for all revenue received from operations at the brick-and-mortar freestanding emergency centers. (ECF No. 98 at 20, 25–26). Once it received revenue from the center entities, NHS LLC was then required to distribute those revenues to the appropriate series entities—the series associated with the revenue generating center limited partnership. (ECF No. 98 at 25–26). NHS LLC's manager, Neighbors Health, was responsible for distribution oversight. (ECF No. 98 at 8).

NHS LLC's Operating Agreement makes clear that NHS LLC could, at least temporarily, retain Series Property already attributed or allocated to a Series LLC. For instance, the Operating Agreement prohibits NHS LLC from "comingl[ing] the assets of one Series with the assets of any other Series." (ECF No. 59-5 at 12). This prohibition implies that NHS LLC could simultaneously hold profits allocated or attributed to multiple series entities (*i.e.,* the "Series Property" of multiple series entities). The Operating Agreement also distinguishes between Series Property that had simply been "allocate[d] or attribute[d]" and "belong[ed]" to a specific series entity and Series Property that was actually "held by" a specific series entity. (ECF No. 59-5 at 12). This possessory distinction further cements NHS LLC's ability to retain Series Property even though such property belonged to a specific Series LLC. Finally, the Operating Agreement makes clear that Series Property *retained by NHS LLC was "held by* [*NHS LLC*] *and* [*Neighbors Health*] *in trust* for the benefit of the Series Members." (ECF No. 95-5 at 12 (emphasis added)).

Against this backdrop, Infinity's allegation that Neighbors Health and the Neighbors O&Ds, in their managerial capacities, impeded distributions of Series Property to the Series LLCs identifies harm caused by mismanagement of NHS LLC. A claim for harm to NHS LLC caused by NHS LLC's managers belongs to NHS LLC—or, in this case, NHS LLC's estate. *Cf. Educators Grp. Health*, 25 F.3d at 1284–85 (recognizing that allegations that management caused a trust's insolvency, thereby depriving beneficiaries of distributions, identified a direct harm to the trust and an indirect harm to its beneficiaries); *see also In re Black Elk Energy Offshore Operations, LLC*, No. 15-34287, 2016 WL 4055044, at *2 (Bankr. S.D. Tex. July 26, 2016) ("To allow an [entity's] injured owner's recovery on her investment [through a derivative action] to bypass the recovery of an injured creditor's claim would reverse the equities of an insolvency case."). If, as Infinity alleges, Neighbors Health's and the Neighbors O&Ds' mismanagement of NHS LLC

prevented the Series LLCs from receiving distributions to which they were entitled, it is entirely plausible that Defendants' mismanagement prevented other series entities from realizing their distributions.  Allowing Infinity, through a derivative action, to prioritize its right to recover for Defendants' mismanagement over similarly situated creditors would subvert bankruptcy's established priority scheme.  *See Black Elk Energy*, 2016 WL 4055044, at *2 ("[Requiring the estate's fiduciary to pursue claims based on the debtor's injuries] ensures that interests are aligned to reflect the priority scheme established by the Bankruptcy Code.").  The Creditor Trustee, not Infinity, has standing to pursue claims based on Neighbors Health's and the Neighbors O&Ds' fiduciary breaches that caused NHS LLC to withhold profits from the Series LLCs.

Similarly, Infinity fails to plead its standing to assert a fiduciary breach claim based on Defendants' failure to include physician services fees billed by Neighbors Health in the Series LLCs' "net profits calculation forming the basis of the Series Property."  (ECF No. 102 at 20). NHS LLC's Operating Agreement unequivocally obligated NHS LLC to "allocate or attribute to [the Series LLCs] the profits, losses, distributions, and allocations associated with [the Center LPs]."  (ECF No. 59-5 at 12; *see also* ECF No. 59-5 at 19).  These allocations made up the "basis" of the Series Property.  (*See* ECF No. 59-5 at 12).  Infinity's allegations identify negligence at the NHS LLC level, not at the Series LLC level, that caused deficiencies in the Series LLCs' net profits calculations.[15]  Consequently, NHS LLC (specifically, NHS LLC's estate) is the appropriate party to seek redress for Neighbors Health's and the Neighbors O&Ds' failure to properly allocate physician services fees among the Neighbors series entities.  *See Black Elk Energy*, 2016 WL

---

[15] Notably, nothing in the Series Agreements suggests the Series LLCs' manager was responsible for including physician services fees billed by Neighbors Health in a specific Series LLC's net-profits calculation.  (*See generally* ECF No. 59-8).  Nor does the Series Agreement provide that physician services fees were to be funneled from Neighbors Health directly to the Series LLCs.  (*See generally* ECF No. 59-8).  Rather, the Series Agreement makes clear that the Series LLCs derived their property (*i.e.,* Series Property) exclusively from "profits, losses, distributions, and other benefits *received by* [*NHS LLC*] from the [Center LPs]."  (ECF No. 59-8 at 10 (emphasis added)).  Infinity does not plausibly allege that physician services fees bypassed the NHS LLC clearinghouse.

4055044, at *2 ("In bankruptcy, it is the estate's fiduciary (ordinarily, a trustee or debtor-in-possession) that pursues derivative claims for the benefit of the estate.").

Finally, Infinity's pleading insufficiently alleges standing to assert a derivative fiduciary breach claim based on confusion caused by Defendants' preparation of tax returns for certain Neighbors Network entities.  Specifically, Infinity alleges that Defendants prepared tax returns erroneously indicating that the Series LLCs, rather than NHS LLC, held 99% limited partnership interests in the Center LPs.  (ECF No. 102 at 20).  The Series LLCs', the Center LPs', and NHS LLC's Management Agreements charged Neighbors Health with the "supervis[ion] and manage[ment of] all accounting, including tax compliance and tax return preparation."  (ECF Nos. 59-10 at 2; 61-14 at 2; 62-24 at 2).  Hence, Neighbors Health prepared tax returns for the Center LPs, the Series LLCs, and NHS LLC.  However, Infinity's Complaint does not identify which entity's tax returns contained incorrect information about the Center LPs' ownership.  (*See* ECF No. 102 at 20).  To sustain its derivative claim, Infinity had to allege Neighbors Health (or the Neighbors O&Ds) incorrectly prepared the Series LLCs' tax returns while acting as the Series LLCs' manager.  *See Black Elk Energy*, 2016 WL 4055044, at *2.  In contrast, Infinity could not sustain a derivative claim based on the NHS LLC's or the Center LPs' tax returns containing erroneous or confusing information, since NHS LLC and the Center LPs are debtor entities.  *Educators Grp. Health.*, 25 F.3d at 1284.  Infinity fails to state a plausible derivative claim for relief based on erroneous tax returns.

Infinity's derivative claim for "Breach of Fiduciary Duty, Negligent and Gross Mismanagement, and Abuse of Control" is dismissed under Rule 12(b)(6).  *See Simmons*, 972 F.3d at 666 (explaining that a lack of statutory standing warrants dismissal under Rule 12(b)(6)).

**B.      Infinity Sufficiently Alleges its Derivative Breach of Contract Claim**

Infinity asserts a derivative breach of contract claim on the Series LLCs' behalf based on contractual duties Neighbors Health owed the Series LLCs.  Specifically, Infinity alleges that Neighbors Health breached its obligation, under the Management Agreement, to properly manage the Series LLCs' finances.  (*See* ECF No. 102 at 21–22).  That breach, according to Infinity, "caused the loss of Series Property . . . that should have been recognized from the profits derived from physician service billing income at the [Center LPs], which was lost completely, because [Neighbors Health] excluded it from the Series [LLCs'] financial reports." (ECF No. 102 at 21–22).

Neighbors Health argues that Infinity's Complaint fails to state a derivative breach of contract claim.  Based on Neighbors Health's reading, the Management Agreement does not impose a duty on Neighbors Health, acting as the Series LLCs' manager, "to determine or control the amount of funds distributed to the Series LLCs." (ECF No. 142 at 22–23).  The Neighbors O&Ds also argue that Infinity failed to establish its standing to assert a derivative breach of contract claim because Infinity did not make a pre-suit demand on the Series LLCs' managers. (ECF No.  126 at 22–23).[16]

Neighbor Health's challenge to Infinity's breach of contract claim is premature.  Neighbors Health maintains that "nothing in [the Management Agreement] authorizes or empowers Neighbors Health to determine or control" the distribution of net profits to the Series LLCs.  (ECF No. 142 at 22).  Neighbors Health's response misconstrues Infinity's allegations.  All Infinity alleges is that Neighbors Health failed to fulfill its financial management obligations under the

---

[16] Infinity's Complaint does not explicitly assert a derivative breach of contract claim against the Neighbors O&Ds.  The Complaint does allege that the Neighbors O&Ds, as officers and directors of Neighbors Health, made all Series LLC management decisions.  (ECF No. 102 at 8).

Management Agreement, and that Neighbors Health's failure prevented the Series LLCs from receiving distributions to which they were entitled.

The Management Agreement required Neighbors Health to "supervise and manage all accounting, including . . . accounts payable administration, billing and collection services." (ECF No. 59-10 at 2). The Management Agreement also required Neighbors Health to "maintain bank accounts." (ECF No. 59-10 at 2). Taking Infinity's allegation that Neighbors Health failed to fulfill these duties as true, it is plausible that Neighbors Health's failure led to the Series LLCs' loss of Series Property to which they were entitled. *See Iqbal*, 556 U.S. at 678. For instance, Neighbors Health's mismanagement of the Series LLCs' finances could have could have prevented the Series LLCs from informing NHS LLC or the Center LPs that the Series LLCs had not received a distribution to which they were entitled.

In any event, Neighbors Health does not actually complain about the sufficiency of Infinity's contractual breach pleading, but instead argues about the duties imposed by a contract. Yet Neighbors Health offers no legal authority foreclosing the existence of such duties based on analogous contractual language. *Contra Cruz v. CitiMortgage, Inc.*, No. 3:11-CV-2871-L, 2012 WL 1836095, at *2 (N.D. Tex. May 21, 2012) (citing *Reinhardt v. Wal-Mart Stores, Inc.*, 547 F. Supp. 2d 346, 353 (S.D.N.Y. 2008)) ("Because contract construction is generally decided as a matter of law, interpretation of a contract is generally suitable for disposition on a motion to dismiss . . . ."). Neighbors Health simply disagrees with Infinity's interpretation of the Management Agreement. It is inappropriate to resolve such disagreements at the Rule 12 stage. See *Transtelco, Inc. v. Zayo Grp., LLC*, No. EP-20-CV-00008-DCG, 2021 WL 2470367, at *4 (W.D. Tex. Apr. 5, 2021) (citing *Galderma Labs., L.P. v. Dimensional Healthcare, Inc.*, No. CIV.A.4:06CV822-Y, 2007 WL 1703445, at *4 (N.D. Tex. June 13, 2007)) ("[The] motion [to

dismiss] presents issues of contract interpretation, contractual ambiguity, parole evidence . . . . [T]hese issues are more appropriately addressed on a motion for summary judgment . . . ."); *accord Gerdau Ameristeel US Inc. v. Ameron Intern. Corp.*, No. 13 CIV. 07169 LGS, 2014 WL 3639176, at *3 (S.D.N.Y. July 22, 2014) (quoting *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 56 (2d Cir. 2012)) ("If a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state [a] claim." (internal quotation marks omitted)).

The Neighbors O&Ds also argues that Infinity failed to plead its derivative standing to pursue a contractual breach claim without first making a pre-suit demand on the Series LLCs. Infinity responds that it was either not required to make a pre-suit demand or that a pre-suit demand would have been "futile."

Infinity's standing to pursue its derivative breach of contract claim depends on Infinity's exception from the general obligation to make a pre-suit demand on the Series LLCs. Section 101.453(a) of the Texas Business Organizations Code imposes this pre-suit demand requirement on shareholders seeking to assert derivative causes of action. TEX. BUS. ORGS. CODE. ANN. § 101.453(a) (West 2019). However, section 101.463(b) excuses members of closely held LLCs from compliance with section 101.453(a)'s demand requirement. § 101.463(a), (b). To avail itself of section 101.463(b)'s procedural benefits, Infinity had to assert its claims "against a governing person, member, or officer." § 101.463(b).

The Neighbors D&Os offer no argument establishing that Infinity cannot avail itself of section 101.463(b)'s procedural benefits. (*See generally* ECF Nos. 125; 126). Nevertheless, section 101.463(b) offers procedural benefits only in actions asserted against claims "against a governing person, member, or officer." BUS. ORGS. § 101.463(b). Infinity no longer asserts its

derivative contractual breach claim against a "governing person, member, or officer." (*See* ECF No. 98 at 35 ("Whether Defendants' changes in status divested Infinity of its ability to rely on section 101.463 is a question that is not yet ripe.")). Neither side offered authority addressing whether Defendants' change in status divested Infinity of derivative standing based on section 101.463(b).

Unlike derivative standing itself, Texas's pre-suit demand requirement is not based on historical or equitable practices. *See Sneed v. Webre*, 465 S.W.3d 169, 184 (Tex. 2015) (quoting *In re Schmitz*, 285 S.W.3d 451, 455 (Tex. 2009)) ("Unlike Texas law for a century before, the new provision requires presuit demand in all cases . . . ." (internal quotation marks omitted)). The pre-suit "demand requirement implements 'the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders.'" *Id.* (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 101 (1991)). By excusing members of closely held companies from the demand requirement, the Texas Legislature authorized members "to pursue corporate causes of action derivatively without interference from the board of directors." *Id.* at 185 (interpreting a statute analogous to section 101.463(b)).

This relief from corporate interference extends to a member's continued prosecution of corporate causes of action following a change in management or installation of independent directors. Section 101.463(b) also relieves members of closely held LLCs from section 101.458, which requires the mandatory dismissal of a derivative action based on an independent director's assessment that the action's continuation is not in the LLC's "best interests." Bus. Orgs. § 101.458(a); *see also* § 101.454 (identifying "independent and disinterested governing persons" as the appropriate persons to assess a member's pre-suit demand). By making section 101.458(a)

inapplicable, section 101.463(b) effectively removed an LLC's ability to derail a member's derivative action through the appointment of new management. *Cf. Sneed*, 465 S.W.3d at 185 ("[B]y removing the mandatory dismissal requirement with respect to closely held corporations, the Legislature removed the ability for disinterested and independent directors or a special investigation committee to decide whether continuing the derivative proceeding is in the best interest of the corporation."). Under section 101.463(b), once a closely held LLC's member initiates a derivative action (consistent with section 101.463), the LLC is effectively powerless to stop the action on standing grounds.

If the Series LLCs wanted to prevent Infinity from initiating a derivative action, the Series LLCs should have initiated their own action against Neighbors Health. The Series LLCs did not, so Infinity initiated its own action against the Series LLCs' "governing person[s], member[s], or officer[s]." BUS. ORGS. § 101.463(b); (ECF No. 1-17 at 1–2, 9–10). Infinity had standing to assert its breach of contract claim without serving a pre-suit demand on the Series LLCs. BUS. ORGS. § 101.463(b). And section 101.463(b) protects Infinity's ability to continue its derivative breach of contract claim. *See id.*

## II.   INFINITY'S DIRECT CLAIMS' SUFFICIENCY

Defendants seek dismissal of Infinity's claims for negligence, gross negligence, fraud, civil conspiracy, aiding and abetting fraud, and violations of the Texas Securities Act. Primarily, Defendants argue these claims are insufficiently pleaded or fail as a matter of law. Infinity cannot maintain its negligence claims as a matter of law and fails to fulfill its obligations to sufficiently plead the remaining direct claims against the Neighbors D&Os other than Drs. Patel and Alleyne. However, Infinity can maintain its Securities Act claim against Dr. Patel and Dr. Alleyne.

## A.      Relief Cannot be Granted on Infinity's Negligence Claims

Infinity asserts negligence and gross negligence claims against the Neighbors O&Ds as Neighbors Health's officers and directors.  The Neighbors O&Ds allegedly failed "to exercise reasonable care in performing their duties in maintaining and preserving [Infinity's] share of the Series Property." (ECF No. 102 at 22).  Defendants argue that no such legal duties existed between the Neighbors O&Ds and Infinity.  (*See, e.g.,* ECF No. 126 at 31–32).

At the pleading stage, Infinity's Complaint was required to supply sufficient factual detail to state plausible claims for negligence and gross negligence under Texas law.  *Iqbal*, 556 U.S. at 678.  Negligence requires a plaintiff to establish (1) the existence of a legal duty, (2) a breach of that duty, and (3) damages that proximately resulted from the breach.  *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022).  Gross negligence requires proof that the defendant (1) disregarded an "extreme degree of risk, considering the probability and magnitude of the potential harm," and (2) that the defendant, with knowledge of that risk, "proceeded with conscious indifference to the rights, safety, and welfare of others."  *U-Haul Intern., Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012) (citing TEX. CIV. PRAC. & REM. CODE § 41.001(11) (West 2011)).  A plaintiff cannot establish gross negligence without establishing ordinary negligence.  *See Shell Oil Co. v. Humphrey*, 880 S.W.2d 170, 174 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (citing *Trevino v. Lightning Laydown, Inc.*, 782 S.W.2d 946, 949 (Tex. App.—Austin 1990, writ denied)) ("With ordinary negligence, the actor fails to use ordinary care.  Gross negligence, on the other hand, involves a more extreme departure from ordinary care . . . ." (internal citation omitted)).

Defendants specifically attack Infinity's allegation that the Neighbors O&Ds owed Infinity a duty of care.  To maintain its negligence and gross negligence claims, Infinity had to establish

the existence of the Neighbors O&Ds' duty of care.  *See Elephant Ins.*, 644 S.W.3d at 145 ("The threshold inquiry in a negligence case is duty.  This inquiry encompasses several questions of law: the existence, scope, and elements of a duty." (quotation cleaned up)); *see also Hess Corp. v. Schlumberger Tech. Corp.*, No. CV H-16-3415, 2017 WL 2829697, at *3 (S.D. Tex. June 29, 2017) (quoting *Neitzke v. Williams*, 490 U.S. 319, 328 (1989)) ("Dismissal under Rule 12(b)(6) is appropriate when a plaintiff's legal theory is incorrect: 'When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate.'").  Infinity claims the Neighbors O&Ds' duty of care to *Infinity—not the Series LLCs—*arose from their roles as "officers and directors of Neighbors Health," the Series LLCs' managers.  (ECF No. 102 at 22).  Infinity's conclusion—that a company's officers and directors owe the company's individual shareholders a duty of care—is squarely foreclosed by Texas law.  *In re Estate of Poe*, No. 20-0178, 2022 WL 2183306, at *7 (Tex. June 17, 2022) (citing *Gearhart Indus., Inc. v. Smith Intern., Inc.*, 741 F.2d 707, 721 (5th Cir. 1984)) ("[T]he business and affairs of a corporation are managed through a board of directors. . . .  A director's fiduciary status creates three broad duties: duties of obedience, loyalty, and due care.  These fiduciary duties *run to the corporation, not to individual shareholders* or even to a majority of shareholders." (quotation cleaned up and emphasis added)).  Still, Texas law recognizes other duties of care based on: "(1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy considerations."  *Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 34 (Tex. 2002).  However, nothing in Infinity's Complaint suggests the Neighbors O&Ds owed Infinity, individually, a previously unrecognized duty of care based on the *Texas Home Management* factors.

Infinity does not plausibly allege that the Neighbors O&Ds owed Infinity, individually, a duty of care.  Absent a requisite duty of care, Infinity cannot state a legally cognizable claim for negligence.  *Cf. Carrion v. Ethicon Endo-Surgery, Inc.*, No. CIV.A. C-11-19, 2011 WL 649596, at *4 (S.D. Tex. Feb. 11, 2011) (dismissing a negligence claim because, under Texas law, the defendant owed no legal duty to the plaintiff); *Morrow v. Wyeth*, No. CIV.A. B-05-209, 2005 WL 2621555, at *4 (S.D. Tex. Oct. 13, 2005) (explaining that a defendant could not be liable for negligence because the defendant owed no legal duty to the plaintiff).  Because Infinity cannot state a plausible claim for negligence, Infinity cannot state a claim for gross negligence.  *See Humphrey*, 880 S.W.2d at 174 ("Although gross negligence refers to a different character of conduct, a party's conduct cannot be gross negligence without being negligent.").

### B.    Infinity Insufficiently Pleads its Fraud Claims

Infinity alleges Dr. Patel and Dr. Alleyne committed "common law fraud" by making "false statements and representations" about the Neighbors Network's structure to Infinity.  (ECF No. 102 at 22–23).   Dr. Patel maintains that Infinity's agreements with the Neighbors Network foreclose Infinity's fraud-based claims.  (ECF No. 125 at 10–13).   Infinity also claims that the Neighbors O&Ds committed fraud by omission by failing to disclose the falsity of Dr. Patel's and Dr. Alleyne's statements to Infinity.  (ECF No. 102 at 24–25).  The Neighbors O&Ds contend Infinity failed to plead its fraud-based claims with the "particularity" Rule 9 demands.  (ECF Nos. 125 at 3; 126 at 26–27).

Rule 9 required Infinity to plead *particular* details about the fraud the Neighbors O&Ds perpetrated.  The Neighbors O&Ds target Infinity's "fraud by omission" claim on "particularity" grounds, arguing that Infinity improperly pleaded a fraud-based claim against a *group*, rather than specific defendants.   Infinity maintains that "group pleading" is permissible when wrongful

conduct was obviously carried out by a group of defendants.  *See Katchadurian v. NGP Energy Capital Mgmt., LLC (In re Northstar Offshore Grp., LLC)*, 616 B.R. 695, 723 (Bankr. S.D. Tex. 2020) (quoting *Wilson v. Deutsche Bank Tr. Co.*, No. 3:18-CV-0854-D, 2019 WL 175078, at *7 (N.D. Tex. Jan. 10, 2019)) ("Where more than one defendant allegedly committed the same act together, a complaint is not defective for the reason that it asserts that all defendants committed the same act, without identifying each individual defendant." (internal quotation marks omitted)). Infinity's position is in tension with Rule 9(b)'s general requirement that a complaint for fraud must specify the "who, what, where, when, and how of the alleged fraud." *Colonial Oaks*, 972 F.3d at 689.

The Neighbors O&Ds rely on the Fifth Circuit's pronouncement that it "has rejected the group pleading doctrine." *Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015).  However, the Fifth Circuit rejected group pleading based on the Private Securities Litigation Reform Act's statutory language.  *See Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 364 (5th Cir. 2004) (quoting 15 U.S.C. § 78u-4(b)) ("Even if this court were to conclude that the 'group pleading' doctrine existed . . . , it cannot withstand the PSLRA's specific requirement that the untrue statements or omissions be set forth with particularity as to 'the defendant' . . . .").  But outside the PSLRA context, group pleading has found acceptance.  *See, e.g., Northstar Offshore*, 616 B.R. at 723 (citing *Wilson*, 2019 WL 175078, at *7) (finding group pleading acceptable under Rule 8).  Nevertheless, group pleading's sufficiency appears to depend on the claims alleged and the complained of conduct.  *Compare Estate of Joseph v. Bartlett*, 981 F.3d 319, 325 (5th Cir. 2020) (citing *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 731 (5th Cir. 2018)) (requiring § 1983 claims to differentiate between the conduct of individual defendants), *and Timberlake v. Synthes Spine Co., L.P.*, No. CIV.A. V-08-4, 2009 WL 926990, at *7 (S.D. Tex. Mar. 31, 2009)

(citing *Southland*, 365 F.3d at 365) (dismissing fraud and misrepresentation claims under Rule 9 because the claims failed to distinguish between the conduct of different defendants), *with Gammon v. J.W. Steel & Supply, Inc.*, No. CIV A H-02-0647, 2006 WL 2505631, at *1 (S.D. Tex. Aug. 28, 2006) (citing *Melder v. Morris*, 27 F.3d 1097, 1100–04 (5th Cir. 1994)) ("There is no prohibition against group pleading.   [But] group pleading is often disfavored in fraud claims . . . .").

Infinity essentially asserts a fraud-by-non-disclosure claim against the Neighbors O&Ds. (ECF No. 102 at 24–25).  Specifically, Infinity contends that the Neighbors O&Ds failed to inform Infinity that the "pitch" made by Drs. Patel and Alleyne was materially false.  (ECF No. 102 at 24).  Fraud by non-disclosure occurs when:

> (1) a defendant deliberately failed to disclose material facts; (2) the defendant had a duty to disclose such facts to the plaintiff; (3) the plaintiff was ignorant of the facts and did not have an equal opportunity to discover them; (4) the defendant intended the plaintiff to act or refrain from acting based on the nondisclosure; and (5) the plaintiff relied on the non-disclosure, which resulted in injury.

*Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019).  Hence, Infinity asserts a fraud-based claim, subject to Rule 9's pleading standard, based on each Neighbors O&D's failure to fulfill an individual duty to disclose material facts to Infinity. Rule 9(b) thus required Infinity to differentiate between each individual Neighbors O&D's conduct *vis à vis* Infinity.  Infinity had to allege that each individual Neighbors O&D had a duty to disclose material facts to Infinity.  *Timberlake*, 2009 WL 926990, at *3 (citing *Union Pac. Res. Grp., Inc. v. Rhone-Poulenc, Inc.*, 247 F.3d 574, 586 (5th Cir. 2001)).  Yet Infinity's Complaint lacks any particularity on this point beyond general allegations that the Neighbors O&Ds, collectively, owed fiduciary duties to Infinity.  (ECF No. 102 at 8, 24–26).

The recognized circumstances in which an affirmative duty to disclose arises underscore Infinity's insufficient pleading.  For instance, an affinitive duty to disclose arises "when the parties have a confidential or fiduciary relationship," "when one party [receives] new information that the party is aware makes [a prior] representation misleading or untrue," or "when one party makes a partial disclosure and conveys a false impression." *Ginn v. NCI Bldg. Sys., Inc.*, 472 S.W.3d 802, 836 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *Gares Corp. v. S & D Invs., L.L.C.*, No. 04-05-00050-CV, 2006 WL 2056108, at *7 (Tex. App.—San Antonio July 26, 2006, pet. dism'd). First, no fiduciary or confidential relationship existed between the Neighbors O&Ds and Infinity at the time Infinity alleges the Neighbors O&Ds failed to disclose material facts.  (*See* ECF No. 102 at 24–26).  Second, nothing in Infinity's Complaint suggests that the Neighbors O&Ds, other than Drs. Patel and Alleyne, received information that made Drs. Patel's and Alleyne's pitch misleading or untrue.  The Complaint does allege that the other Neighbors O&Ds "knew" Drs. Patel and Alleyne failed to disclose material information to Infinity.  (ECF No. 102 at 26, 24).  But the Complaint provides no details as to "how" or "when" each individual Neighbors O&D came to know Drs. Patel's and Alleyne's pitch to Infinity was misleading or untrue.  *See Colonial Oaks*, 972 F.3d at 689 (enumerating Rule 9(b)'s particularity requirements).  Finally, Infinity fails to provide specifics about "how" or "when" the Neighbors O&Ds came to know the Infinity pitch "covey[ed] a false impression." *Ginn*, 472 S.W.3d at 836.  Infinity's Complaint provides virtually no detail about each Neighbors O&D's (excluding Drs. Patel and Alleyne) knowledge of or involvement in the Infinity pitch.  Rule 9(b) requires such particularity when a fraud claim's viability turns on a defendant's affirmative duty to disclose material information.  *See Timberlake*, 2009 WL 926990, at *3–4 (quoting *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006)) ("Rule 9(b) imposes an additional obligation on plaintiffs claiming fraud by nondisclosure

to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading." (internal quotation marks omitted)).

While Infinity's fraud and fraud-by-non-disclosure claims against Drs. Patel and Alleyne meet Rule 9(b)'s particularity requirement, they are foreclosed by the parties' agreements. Dr. Patel argues that the Series Interest Purchase Agreement forecloses Infinity's fraud claims against Drs. Patel and Alleyne.  Infinity counters that the agreement is not specific enough to preclude Infinity's assertion of fraud based on Drs. Patel's and Alleyne's allegedly false pitch.

Texas law permits contracting parties "to disclaim reliance on [pre-contractual] representations." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co.*, 341 S.W.3d 323, 332 (Tex. 2011) (quoting *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179 (Tex. 1997)).  A party's disclaimer precludes that party from establishing an essential element of fraud—detrimental reliance. *Id.* at 333, 335.  To foreclose fraud claims, the disclaimer must be "clear and unequivocal." *Id.* at 333 (quoting *Schlumberger*, 959 S.W.2d at 179) (internal quotation marks omitted).  Established canons of contract construction define whether a disclaimer is "clear and unequivocal." *Id.*

A "clear and unequivocal" disclaimer of reliance depends on the parties' intent to disclaim reliance. *Id.*  An agreement's plain language, absent some ambiguity, expresses the parties' intent. *Id.* (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)).  Ambiguity only exists if the agreement is subject to "two or more reasonable interpretations." *Id.* (quoting *J.M. Davidson*, 128 S.W.3d at 229).  An unambiguous agreement's terms must be enforced.  *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (per curiam).

The preclusion of Infinity's fraud claims turns on the warranties Infinity made to NHS LLC.  Dr. Patel argues Infinity disclaimed its reliance on pre-contractual representations by warranting that:

> Purchaser *has not relied on the Company's evaluation of the Shares*[17] and Purchaser's decision to purchase same on the terms and conditions set forth herein *is not based on any representation, statement, financial statement or projection or other inducement* of any nature, *written or oral*, whatsoever except the statements, representations and warranties made herein.

(ECF No. 59-9 at 3 (emphasis added)).[18]

Infinity's fraud claims are based on Drs. Patel's and Alleyne's investment pitch to Infinity. According to Infinity, the pitch, as well as other conversations with Drs. Patel and Alleyne, convinced Infinity to invest in the Neighbors Network.  (ECF No. 102 at 7–8; 22–24).  Infinity claims that the Neighbors Network did not operate as Drs. Patel and Alleyne represented.  (ECF No. 102 at 13–14).  And Infinity alleges it relied on these statements to its detriment.  (ECF No. 102 at 24).  Nevertheless, Infinity signed an agreement warranting that it had "not relied on the Company's evaluation of the [interest in the Series LLCs]" and that its "decision to purchase [an interest in the Series LLCs was] not based on any representation, statement, financial statement or projection."  (ECF No. 59-9 at 3).

Infinity does not suggest that this disclaimer is ambiguous.  (*See, e.g.,* ECF No. 163 at 3; *see generally* ECF Nos. 132; 133).  Infinity only argues that it is a standard merger clause that, under Texas law, cannot operate as a disclaimer of pre-contractual reliance.  (ECF No. 163 at 3 (quoting *Italian Cowboy*, 341 S.W.3d at 334)).  Yet the disclaimer makes an unequivocal

---

[17] "Shares" refers to the 6500 Class B shares Infinity purchased in each Series LLC.  (*See* ECF No. 59-9 at 1).

[18] Infinity also warranted that it was a "sophisticated investor."  (ECF No. 59-9 at 3).  Infinity makes no argument to the contrary here.

representation that Infinity had not "relied" on NHS LLC's evaluation of the Series LLC shares and that Infinity's decision to purchase the shares was not influenced by anything Infinity was told. To the contrary, Infinity warranted that it was "capable of evaluating the risks of [its] purchase" itself. (ECF No. 59-9 at 3). Essentially, Infinity represented to NHS LLC that its decision to invest in the Neighbors Network was based only on Infinity's judgment after it reviewed the parties' agreements. Such warranties "clearly express[] the parties' intent to waive fraudulent inducement claims, or . . . reliance on representations about specific matters in dispute." *E.g.*, *Schlumberger*, 959 S.W.2d at 180–81 ("Each of us [the Plaintiffs] expressly warrants and represents . . . that no promise or agreement which is not herein expressed has been made to him or her in executing this release, and that *none of us is relying upon any statement or representation of any agent of the parties* being released hereby." (quotation cleaned up and emphasis added)); *see also, e.g.*, *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 54 n.4 (Tex. 2008) ("Defendants expressly represent and warrant . . . that no promise or agreement which is not herein expressed has been made to them in executing the releases contained in this Agreement, and that *they are not relying upon any statement or representation of any of the parties* being released hereby." (emphasis added)); *contra Italian Cowboy*, 341 S.W.3d at 337 (explaining that a release providing that "Tenant acknowledges that neither Landlord nor Landlord's agents, employees or contractors have made any representations or promises" did not clearly and unequivocally disclaim reliance).

Legally foreclosed from establishing an essential element of both its fraudulent inducement and fraud-by-non-disclosure claims, Infinity cannot state a claim on which relief can be granted. *See Schlumberger*, 959 S.W.2d at 181 (affirming that a disclaimer of reliance precludes both fraudulent inducement and fraud-by-non-disclosure claims arising from the same alleged fraud); *see also Carrion*, 2011 WL 649596, at *4 (dismissing a claim because the plaintiff could not

establish the claim as a matter of law); *accord Gerdau Ameristeel*, 2014 WL 3639176, at *3 (citing

*Crane Co. v. Coltec Indus., Inc.*, 171 F.3d 733, 737 (2d Cir. 1999)) ("A court may dismiss a claim

for breach of contract on a Rule 12(b)(6) motion where the contract is clear and unambiguous.").

### C.   Infinity Cannot Maintain its Participatory Claims

Infinity asserts civil conspiracy and aiding and abetting claims against the Neighbors

O&Ds (excluding Drs. Patel and Alleyne) for their roles in assisting Drs. Patel'sf and Alleyne's

fraud on Infinity.  Because it alleges fraud-based participatory claims, Infinity's Complaint must

satisfy Rule 9(b).  *Castillo v. First City Bancorporation of Tex., Inc.*, 43 F.3d 953, 961 (5th Cir.

1994) (reviewing a district court's dismissal of fraud-based civil conspiracy claims under Rule

9(b)).  The Neighbors O&Ds argue that Infinity fails to satisfy Rule 9's requirements.  (ECF No.

126 at 32–33).

A civil conspiracy exists where (1) at least two people, (2) agree to achieve an unlawful

objective or achieve a lawful objective through unlawful acts, (3) take one or more overt actions

to achieve the objective, and (4) proximately cause damages.  *W. Fork Advisors, LLC v. SunGard*

*Consulting Servs., LLC*, 437 S.W.3d 917, 920 (Tex. App.—Dallas 2014, pet. denied) (citing *Tilton*

*v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)).[19]  Aiding and abetting requires an "actor, with an

unlawful intent, [to provide] substantial assistance and encouragement to a wrongdoer in a tortious

act."  *W. Fork Advisors*, 437 S.W.3d at 921 (citing *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex.

1996)).[20]

---

[19] See also *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019) ("[T]he elements of civil conspiracy [are]: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.") (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983))

[20] It is unclear whether Texas law recognizes a claim for aiding and abetting apart from a civil conspiracy claim.  *Id.* at 921 n.3 (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 (Tex. 2001)).

Infinity failed to plead its conspiracy claim with particularity. The Complaint barely provides a boilerplate recitation of conspiracy's elements. Infinity offers no details about the alleged agreement between the Neighbors O&Ds—not where it happened, when it happened, how it happened, nothing. Likewise, the Complaint does not attempt to identify overt actions taken by the Neighbors O&Ds to support Dr. Patel's and Dr. Alleyne's alleged fraud. Infinity's conspiracy claim does not meet Rule 9(b)'s heightened pleading standard. *In re Enron Corp. Sec., Derivative & Erisa Litig.*, 762 F. Supp. 2d 942, 1004 (S.D. Tex. 2010) (citing *Melder*, 27 F.3d at 1103) (dismissing a fraud claim supported by only boilerplate allegations).

Infinity's aiding and abetting claim is also insufficiently pleaded. Based on the Complaint, it is not possible to determine *what* the Neighbors O&Ds did to provide or *how* they provided "substantial assistance and encouragement" to Drs. Patel and Alleyne. *W. Fork Advisors*, 437 S.W.3d at 921. Further, the Complaint does not provide "specific facts that support an inference" that the Neighbors O&Ds possessed an unlawful intent to aid and abet Drs. Patel's and Alleyne's alleged fraud. *Colonial Oaks*, 972 F.3d at 689. All the Complaint provides are general allegations that the Neighbors O&Ds, as a group, must have known the Infinity pitch was fraudulent or untrue. Infinity's aiding and abetting claim does not pass Rule 9(b) scrutiny. *See Enron*, 762 F. Supp. 2d at 1004.

### D.   Infinity's Texas Securities Act Claim

Infinity alleges that the Neighbors O&Ds, as "control persons" of NHS LLC, violated the Texas Securities Act. (ECF No. 102 at 28–30).[21] The Neighbors O&Ds and the Liquidating

---

[21] Infinity bases its Securities Act claim on "Tex. Rev. Civ. Stat. Ann., § 581-33A(2)." (ECF No. 102 at 28). The Texas Securities Act is no longer housed in the Revised Civil Statutes. 2019 Tex. Sess. Law Serv. Ch. 491 (West). The Securities Act's private rights of action are now contained in the Texas Government Code. *See* TEX. GOV'T CODE ANN. §§ 4008.001 *et seq.* (West 2019).

Trustee contend that Infinity fails to sufficiently allege that the Neighbors O&Ds were "control persons" of NHS LLC.  (ECF Nos. 126 at 33–35; 142 at 24–27).[22]

A person offering or selling securities violates the Texas Securities Act if securities are sold or offered "by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements . . . not misleading." TEX. GOV'T CODE ANN. § 4008.052.   Under the Securities Act, a "person" includes "a company."   GOV'T § 4001.064(a)(1)(C).  The Securities Act also imposes "control person" liability on persons that "directly or indirectly control[] a seller . . . or issuer of a security." GOV'T § 4008.055(a).  "Control persons" have "actual power or influence over the controlled person and . . . induced or participated in the alleged violation." *Tex. Capital Sec. Mgmt., Inc. v. Sandefer*, 80 S.W.3d 260, 268 (Tex. App.—Texarkana 2002, pet. struck) (citing *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 509 (5th Cir. 1990)).[23]  That "power or influence" must extend to "the specific transaction or activity [giving] rise to the underlying violation." *Fernea v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 559 S.W.3d 537, 555 (Tex. App.—Austin 2011, pet. dism'd) (citing *Barnes v. SWS Fin. Servs., Inc.*, 97 S.W.3d 759, 764 (Tex. App.—Dallas 2003, no pet.)).  A title intimating control is not enough to establish that a person had "actual control or influence." *Sandefer*, 80 S.W.3d at 268.

Like its fraud claims, Infinity's allegation that NHS LLC violated the Texas Securities Act is subject to Rule 9's particularity standard. *Wesolek v. Layton*, 871 F. Supp. 2d 620, 635 (S.D.

---

[22] The Liquidating Trustee also argues that Infinity's Securities Act claims should be dismissed because "it is unclear whether Infinity even seeks to recover against Neighbors Health . . . . Infinity only contends that 'the Neighbors O&Ds are liable.'" (ECF No. 142 at 27).  It appears that the Liquidating Trustee lacks standing to challenge Infinity's Securities Act claim as Infinity alleges only that the Neighbors O&Ds are liable under the Act.  *Cf. Summers v. WellTech, Inc.*, 935 S.W.2d 228, 231 (Tex. App.—Houston [1st Dist.] 1996, no writ) (authorizing a plaintiff to pursue Texas Securities Act violations against a control person without joining the controlled entity).

[23] Texas courts rely on federal securities law to define "control person." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 567 (S.D. Tex. 2002).

Tex. 2012).   However, federal law does not require a control-person claim to be alleged with particularity once the "plaintiff sufficiently pleads an underlying" Securities Exchange Act violation, which is subject to Rule 9(b).   *In re Venator Materials PLC Sec. Litig.*, 547 F. Supp. 3d 624, 652 (S.D. Tex. 2021) (citing *Trendsetter Invs., LLC v. Hyperdynamics Corp.*, No. CIV.A.H-06-0746, 2007 WL 172627, at *15 (S.D. Tex. Jan. 18, 2007)).   Rule 9(b) does not apply because fraud and scienter are not essential elements of control-person liability under the Exchange Act.   *Trendsetter Invs.*, 2007 WL 172627, at *15.   Texas's Securities Act tracks the Exchange Act's control-person liability provision.   *Compare* GOV'T § 4008.055(a) (permitting control-person liability without proof of scienter or additional allegations of fraud), *with* 15 U.S.C. § 78t(a) (same).   Hence, Infinity must plead NHS LLC's Securities Act violation with particularity, but need only plausibly allege that the Neighbors O&Ds controlled NHS LLC.   *See Venator*, 547 F. Supp. 3d at 652 (quoting *Trendsetter Invs.*, 2007 WL 172627, at *15) ("[T]he plaintiff only needs to plead its control-person claims in accordance with Rule 8(a) . . . ." (internal quotation marks omitted)); *accord Sandefer*, 80 S.W.3d at 267 ("The comments to the [Texas Securities Act] state, control is used in the same broad sense as in federal securities law." (internal quotation marks omitted)).

None of Infinity's allegations suggest that the Neighbors O&Ds (excluding Drs. Patel and Alleyne) were "control persons."   The Complaint does not differentiate between the form of control each Neighbors O&D exercised over NHS LLC.   Instead, the Complaint baldly states that the Neighbors O&Ds were the officers and directors of NHS LLC.   (ECF No. 102 at 28).   The Neighbors O&Ds' alleged titles do not establish that they "had actual power or influence over [NHS LLC]."   *Sandefer*, 80 S.W.3d at 268.   Infinity's allegation of the Neighbors O&Ds' titles does not satisfy Rule 8's plausibility requirement.   *See Iqbal*, 556 U.S. at 679 (quoting FED. R.

CIV. P. 8(a)(2)) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." (internal quotation marks omitted)).  That is, Infinity offers a bare legal conclusion—that the Neighbors O&Ds were "control persons" because they were officers and directors—which the Court is not required to accept as true.  *Id.* at 678.

Likewise, the Complaint's general allegations that the Neighbors O&Ds, as a group, had control over the Neighbors Network's finances and revenue are insufficient to establish that the Neighbors O&Ds (other than Drs. Patel and Alleyne) were "control persons."  (*See, e.g.,* ECF No. 102 at 13–14).  Such allegations do not plausibly suggest that the other Neighbors O&Ds had "power or influence" over "the specific transaction or activity [giving] rise to the underlying violation."  *Fernea*, 559 S.W.3d at 555.  Indeed, nothing in the Complaint evidences the other Neighbors O&Ds' control over the sale or marketing of NHS LLC securities, or that the other Neighbors O&Ds were "in a position to prevent the [Securities Act] violation."  *Id.* (internal quotation marks omitted).  Without factual allegations plausibly suggesting the other Neighbors O&Ds could have "prevent[ed] the [Securities Act] violation," Infinity's Complaint does not satisfy Rule 8.  *See Iqbal*, 556 U.S. at 678–79.

Infinity does counter Defendants' accusations of insufficient pleading as to Drs. Patel and Alleyne.  (ECF Nos. 133 at 18–19; 146 at 23–24).  According to Infinity, the (allegedly) false statements Drs. Patel and Alleyne made to Infinity, along with the Doctors' positions as officers and directors, establish that Drs. Patel and Alleyne were "control persons."  (ECF Nos. 133 at 18; 146 at 23).  While titles alone do not establish "control," a title coupled with an ability "to prevent the [Securities Act] violation" can establish "control."  *See Fernea*, 559 S.W.3d at 555 ("Depending on the circumstances, *a control person might include . . . an officer or director . . . .*

The rationale for control person liability is that *a control person is in a position to prevent the violation* . . . ." (internal quotation marks omitted and emphasis added)).   Taking Infinity's allegations as true, that Drs. Patel and Alleyne controlled NHS LLC as its managers and directors and that they were the Neighbors O&Ds pitching potential NHS LLC investors, it is plausible that Drs. Patel and Alleyne were "control persons."  *Cf. id.* at 557–58 (denying summary judgment on a control-person liability claim based on the alleged control person's relation to the seller's sale practices).   Infinity's Securities Act claim satisfies Rule 8 with respect to Dr. Patel's and Dr. Alleyne's roles as "control persons."  *See Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)).[24]

## III.   DISMISSAL OF INFINITY'S CLAIMS WITH PREJUDICE

Infinity may not amend its Complaint again.   Federal Rule of Civil Procedure 15 gives courts discretion to authorize the liberal amendment of pleadings.  FED. R. CIV. P. 15(a).  However, courts need not automatically utilize Rule 15's liberality.  *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003).  A court may deny a request to amend based on a plaintiff's "undue delay" or "repeated failure to cure deficiencies by [prior] amendments."  *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 125 (5th Cir. 2019) (*Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 591 (5th Cir. 2016)).

Here, Infinity makes no request to amend its Complaint should the Court dismiss its claims.  (*See* ECF Nos. 132; 133; 146; 163).  Infinity failed to request such relief in the face of Defendants' arguments that leave to amend should be denied.  (ECF Nos. 126 at 25; 142 at 28–29).  Moreover,

---

[24] Defendants do not challenge the pleading sufficiency of the underlying Securities Act violation. Furthermore, Infinity's inability to plead claims for relief based on fraud does not preclude Infinity from establishing a Texas Securities Act violation.  *See Hendricks v. Thornton*, 973 S.W.2d 348, 360 (Tex. App.—Beaumont 1998, pet. denied) ("[R]eliance is not an element of . . . violations of the Texas Securities Act . . . .").

this case has been pending for almost five years, the parties have exchanged significant discovery, Defendants have filed numerous dispositive motions identifying Infinity's claims' infirmities, and Infinity has had six opportunities to adequately plead its claims. The time for Infinity to move forward on its viable claims has come. *See Goldstein*, 340 F.3d at 254 (affirming a denial of leave to amend because the plaintiffs already had "ample opportunity to plead their case" (internal quotation marks omitted)).

## IV.   THE CREDITOR TRUSTEE'S CLAIMS AGAINST INFINITY

Infinity seeks dismissal of the Creditor Trustee's fraudulent transfer claims. Specifically, Infinity argues that the Creditor Trustee failed satisfy Rule 8 in alleging Infinity received fraudulent transfers from the Neighbors Network.

The Creditor Trustee asserts constructive fraudulent transfer claims under both the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act. (ECF No. 85 at 20). Under the Bankruptcy Code, a trustee may recover any transfer "of an interest of the debtor in property" (1) "made or incurred on or within 2 years before" the petition date, (2) for which the debtor "received less than a reasonably equivalent value," and (3) the debtor "was insolvent on the date such transfer was made." 11 U.S.C. § 548(a)(1)(B). The Creditor Trustee relies on § 544 to assert a TUFTA claim against Infinity. *See* § 544(b). A TUFTA claim based on constructive fraud requires proof that:

> (1) [A] debtor-creditor relationship exist[ed] between the parties; and (2) the debtor [made a transfer or] incurred an obligation . . . . [(3)] without receiving reasonably equivalent value in exchange for the transfer [or obligation], engaged in a transaction for which its remaining assets were unreasonably small or it intended to incur debts beyond its ability to pay as they came due.

*Fawaz v. Byers*, No. CIV.A. H-13-0897, 2014 WL 6473272, at *4 (S.D. Tex. Nov. 17, 2014) (citing TEX. BUS. & COM. CODE ANN. § 24.005(a)(2) (West 2013)).

Infinity identifies purported deficiencies in each of the Creditor Trustee's attempts to plead facts supporting its fraudulent transfer claims. (ECF No. 105 at 5–7). Critically, Infinity identifies the Creditor Trustee's failure to plausibly allege the Neighbors Network entities' insolvency. The Creditor Trustee's insolvency allegations do not satisfy Rule 8's plausibility requirement. *See Iqbal*, 556 U.S. at 678.

First, the Creditor Trustee does not identify which specific transferors were insolvent at the time of the allegedly fraudulent transfers. Instead, the Creditor Trustee generally alleges that the "Neighbors Debtor Entities were insolvent when it made the Transfers." (ECF No. 85 at 21). Rule 8 generally prohibits group pleading. *See Northstar Offshore*, 616 B.R. at 723 ("The Complaint does not violate Federal Rule of Procedure 8(a)'s prohibition against group pleading."). Group pleading is acceptable if the plaintiff "intend[s] to allege that each defendant committed the alleged acts" and the acts could have been committed by more than one defendant. *Id.* (quoting *Clapper v. Am. Realty Invs., Inc.*, No. 3:14-CV-2970-D, 2015 WL 3504856, at *4 (N.D. Tex. June 3, 2015)) (internal quotation marks omitted). Here, the Creditor Trustee identifies individual Neighbors Entities as transferors, but only alleges insolvency on a group basis. (ECF No. 123 at 2). Based on the Creditor Trustee's allegations, the transfers identified "inherently could have been committed by only one defendant." *Id.* (citing *Wilson*, 2019 WL 175078, at *7). Rule 8's group pleading exception does not encompass such allegations.

Second, the Creditor Trustee's Complaint does not plausibly allege that the transferors were insolvent. A plaintiff plausibly alleges insolvency with "specific reference to [the transferor's] financial condition at the time" of the transfer. *Tow v. Bulmahn (In re ATP Oil & Gas Corp.)*, 711 F. App'x 216, 223 (5th Cir. 2017). The Creditor Trustee's general allegation that "[t]he Neighbors Debtor Entities were insolvent . . . as the fair market value of their assets

exceeded their liabilities" is not a "specific reference to [each relevant Neighbors Debtor Entity's] financial condition." *Id.*; (ECF No. 85 at 21). Rather, the allegation baldly recites the Bankruptcy Code's definition of insolvency. *See* 11 U.S.C. § 101(32)(A). The Creditor Trustee effectively provides no factual support for its legal conclusion that the Neighbors transferors were insolvent. *Cf. Iqbal*, 556 U.S. at 677–79.

As support for his TUFTA claims, the Creditor Trustee similarly offers bare legal conclusions that the Neighbors transferors were: (1) "[E]ngaged in business or transactions for which any property remaining after the Transfer was an unreasonably small capital"; and (2) "could not make payments on its debts as they became due." (ECF No. 85 at 21). The allegations, which provide only "formulaic recitation[s] of the elements of a cause of action," do not satisfy Rule 8's demands. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Creditor Trustee fails to state fraudulent transfer claims against Infinity on which relief can be granted. FED. R. CIV. P. 12(b)(6). These claims are dismissed. The Creditor Trustee is granted leave to amend his Complaint.[25]

## CONCLUSION

Infinity does not have standing to maintain its derivative fiduciary breach claim. Infinity's negligence and fraud-based claims are foreclosed as a matter of Texas law. Infinity's fraud claim against the Neighbors D&Os also fails to satisfy Rule 9(b). Similarly, Infinity's civil conspiracy and aiding and abetting claims do not satisfy Rule 9(b). Infinity's Securities Act claim against the

---

[25] Infinity seeks dismissal with prejudice but offers no argument as to why leave to amend should be denied. (ECF No. 105 at 7). The Creditor Trustee requests leave to amend because amendment would not prejudice Infinity. (ECF No. 113 at 7). Because Infinity does not identify any specific prejudice it will suffer (or any other reason to deny leave), the Creditor Trustee may amend his Complaint. *See* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.")

Neighbors O&Ds (other than Drs. Patel and Alleyne) does not satisfy Rule 8.  Infinity's following claims are dismissed with prejudice:

(1)   Derivative Breach of Fiduciary Duty, Negligent and Gross Mismanagement, and Abuse of Control;

(2)   Negligence and Gross Negligence;

(3)   Fraud and Fraudulent Inducement;

(4)   Conspiracy and Aiding and Abetting Common Law Fraud; and

(5)   Violations of the Texas Securities Act against the Neighbors O&Ds other than Dr. Setul Patel and Dr. Paul Alleyne.

The Creditor Trustee's Complaint does not satisfy Rule 8's pleading requirements.  The Creditor Trustee's fraudulent transfer claims are dismissed without prejudice.  The Trustee is granted leave to amend.

A separate Order will be issued.

SIGNED 09/02/2022

Marvin Isgur
United States Bankruptcy Judge